1 | **LEWIS BRISBOIS BISGAARD & SMITH LLP**
DONALD M. GINDY, SB# 45228
2 | E-Mail: Donald.Gindy@lewisbrisbois.com
221 North Figueroa Street, Suite 1200
3 | Los Angeles, California 90012
Telephone: 213.250.1800
4 | Facsimile: 213.250.7900

5 | Attorneys for VBConversions LLC

6

7

8 | **UNITED STATES DISTRICT COURT**

9 | **CENTRAL DISTRICT OF CALIFORNIA- WEST REGION**

10

| | |
|---|---|
| VBCONVERSIONS LLC, A CALIFORNIA LIMITED LIABILITY COMPANY, | CASE NO. |
| Plaintiff, | **COMPLAINT** |
| vs. | **1. COPYRIGHT INFRINGEMENT;**<br>**2. CONTRIBUTORY COPYRIGHT INFRINGEMENT;** |
| EXIDA, LLC., A PENNSYLVANIA LIMITED LIABILITY COMPANY;  JOHN CHRISTMAN, AN INDIVIDUAL; DOES 1-10, INCLUSIVE, | **3. VICARIOUS COPYRIGHT INFRINGEMENT;**<br>**4. VIOLATION OF THE DIGITAL MILLENNIUM COPYRIGHT ACT, §1201(a);** |
| Defendant. | **5. REQUEST FOR INJUNCTIVE RELIEF.** |
| | *Demand for jury trial* |

COMES NOW, Plaintiff, VBConversions LLC, a California limited liability company, which alleges that Defendants Exida LLC, a Pennsylvania limited liability company, John Christman, an individual, are liable to it for copyright infringement, contributory copyright infringement, vicarious copyright infringement and violation of the Digital Millennium Copyright Act, §1201(a) in connection with Plaintiffs copyrighted software entitled VB.Net to C# Converter. ("C#" is pronounced "C

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

Sharp".) This action is based upon a federal question and seeks damages and injunctive relief upon Defendants' unauthorized access, copying and usage of Plaintiff's copyrighted software.

## JURISDICTION AND VENUE

1.     This action arises under the Copyright Act of the United States 17 U.S.C. §101 and §501, et seq. and the Digital Millennium Copyright Act, 17 U.S.C. §1201(a). This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1338(a). Jurisdiction is further founded upon the Defendants' acceptance of a licensing agreement in connection with use of VB.Net to C# Converter, whereby the parties agree to subject themselves to the personal jurisdiction of the courts of the State of California.

2.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(3) & §1400(a). Venue is also proper as the result the Defendants' acceptance of the above-mentioned licensing agreement's forum-selection clause which designates the County of Los Angeles, State of California, as the location for hearing any dispute arising in relation to use of the program.

## PARTIES

3.     VBConversions LLC (hereinafter "VBC") is a California limited liability company, with its principal place of business located in Santa Monica, California. VBC is a software developer and engages in the licensing of its software products on the Internet.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4. Plaintiff is informed and believes and thereon alleges that Exida LLC ("Exida") is a Pennsylvania limited liability company with its principal place of business located at 64 North Main Street, Sellersville, PA 18960. On information and belief, Plaintiff alleges that Exida is a consultant and provider of safety solutions for business.

5. Plaintiff is informed and believes and thereon alleges that all relevant times, John Christman, was an employee of Exida acting within the course of his employment with the title of computer programmer.

6. Plaintiff is informed and believes and thereon alleges that at all times mentioned herein Defendants, and each of them, have engaged in and continue to engage in the purchase and/or sale of goods and services within the County of Los Angeles, State of California and have generally directed their activities at California.

7. Plaintiff is unaware of the names and true capacities of Defendants, whether individual, corporate and/or partnership entities, named herein as DOES I through 10, inclusive, and therefore sues them by their fictitious names. Plaintiff will seek leave to amend this complaint when their true names and capacities are ascertained. Plaintiff is informed and believes and thereon alleges that all of the Defendants, known and unknown, are in some manner responsible for the wrongs alleged herein and that at all times mentioned herein were the agents and servants or joint venturers/ partners-in-concert of the other Defendants, and acted within the

4832-6100-3798.1

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  course and scope of said agency and employment or within the parameter of their

2  agreement.

3      8.      Plaintiff is informed and believes and thereon alleges that at all times

4  relevant hereto, Defendants and DOES 1-10, inclusive, knew or reasonably should

5  have known of the acts and behavior alleged herein and the damages caused thereby,

6

7  and by their inaction ratified and encouraged such acts and behavior.

8

## GENERAL ALLEGATIONS

9

## Background

10

11      9.      Visual Basic (VB) is a computer programming language developed and

12  sold by Microsoft Corporation since as early as 1991. Historically, it has been

13  among the most popular programming languages for use in business programming

14

15  and has long had one of the largest user bases of any programming language. There

16  is, therefore, a vast amount of software that has been developed over the years in

17  VB. Many of these VB programs are of significant complexity and size.

18

19      10.      In or around 2001, Microsoft Corporation introduced an "evolved"

20  version of Visual Basic called Visual Basic .Net (VBN) oriented towards modern,

21  Internet programming tasks.

22

23      11.      Since 2000, however, the language C#, also developed by Microsoft

24  Corporation (but adopted as an international standard) has taken the place of VB for

25  much business programming, particularly that oriented toward the Internet. C# is

26

27  intended to be a simple, modern, general-purpose, programming language. The

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

language is intended for use in developing software components suitable for deployment in many different environments. For instance, while VB and VBN are largely limited to the Windows operating system, C# compilers exist for most major computer operating systems, including Mac OS, Linux, Windows, Solaris, etc. C# is suitable for writing applications for both hosted and embedded systems.

**The Copyrighted Software**

12.     Because of the large body of legacy software existing in VB and VBN, companies seeking to modernize their software often find that it is most practical to undertake a process of converting their existing VBNBN code to C#. Paying a programmer to make the conversion line-by-line by hand can be extremely costly.

13.     In particular, Plaintiff is informed and believes and thereon alleges that a skilled computer programmer having substantial familiarity with both VB/VBN and C# and working purely by hand, could, at best, convert 100 lines per hour from VB/VBN to C#.

14.     In light of this challenge, plaintiff has developed the Program, VB.Net to C# Converter, to automate the conversion process.  The program is designed to enable converting from VB to C# at a significantly lower cost and much more rapidly.

15.     Version 2.0, of VB.Net to C# Converter ("the Copyrighted Software.") was registered with the Register of Copyrights in 2006, and was assigned

4832-6100-3798.1

registration TX 0006425720. A true and correct copy of the registration certificate is attached hereto as *Exhibit* "A," and is incorporated by reference.

### The Licensing of the Copyrighted Software

16.     VBC licenses the Copyrighted Software online at the Internet web site vbconversions.com.

17.     When the Copyrighted Software is downloaded and run, the user must affirm an End User Licensing Agreement ("EULA") before the program can be used. A true and correct copy of the EULA is attached hereto as *Exhibit* "B," and is incorporated by reference.

18.     In spite of the complexity of the system, the Copyrighted Software is licensed under extremely reasonable terms. VBC employs the so-called shareware model, whereby an interested user is permitted to download a time and line limited version of the Copyrighted Software in order to test it to see if it is suitable for his or her needs.

19.     As initially downloaded, the Copyrighted Software may be used for up to fifteen (15) days. When this time limit is reached, the Copyrighted Software is disabled and ceases to function. Further, before it is unlocked, the Copyrighted Software will only function to convert VB/VBN projects consisting of up to two-thousand (2,000) lines of code. It will not process larger projects. (Shareware programs offered in such time or function limited forms are often referred to as "trialware" or "demoware.") (See *37 C.F.R. § 201.26*)

4832-6100-3798.1
COMPLAINT

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

20.    If the user is satisfied with the Copyrighted Software and wishes to continue to use it beyond the time and scope limitations applied to free use, the EULA requires the user to apply for a full-use license by paying the standard market fee. At that point, the user is provided an "unlock code" (or key) that removes the restrictions in the Copyrighted Software.

**Cracking and Warez Sites and Unlicensed Use**

21.    Unfortunately, a broad array of so-called "cracking sites" have appeared on the internet that are capable of generating and providing users with unauthorized unlock codes for the Copyrighted Software and many other programs offered in the trialware/demoware model. These sites supply the decryption of registration keys to developers' software and enable fraudulent registration codes to be used in order to gain unlicensed unlimited access to the subject program.

22.    A similar number of so-called "warez sites" have sprung up offering already-cracked copies of copyrighted programs for download and use.

23.    Despite its best efforts, VBC has not been able to stem the tide of unscrupulous users who have used these means to gain unauthorized, unlicensed and unlimited access to the Copyrighted Software.

24.    Such users have used the Copyrighted Software without license (and without any payment to VBC) to quickly convert vast amounts of VB/VBN code to the more modern and desirable C#. Such users thereby obtain significant financial benefit through their illicit, unlicensed infringing use.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4832-6100-3798.1

**Collection of Information Concerning Infringement**

25.     In self-defense, VBC has adopted a tracking system whereby the Copyrighted Software reports its use to VBC's servers and to servers maintained by a third-party registration-tracking company, Hitek Software LLC of Goleta, CA ("Hitek").

26.     VBC is, thereby, able to identify the date and time of the unlicensed use, the public and private IP address of the computer on which the unlicensed use occurs, the false key used to unlock the software, the identity of the user of that computer, the owner or organization responsible for operating the computer, and other data which is integral to proof of infringement.

27.     The collection of this usage data by the Copyrighted Software and its transmission to VBC and Hitek is acknowledged and affirmed by the user as part of the EULA when the Copyrighted Software is first used.

28.     Notwithstanding the tracking system, there are almost 400,000 entries in the VBC logs, which is far more than can be reviewed manually.  Despite reviewing logs on a daily basis,  reliance must be placed on automated scans of certain reliable fields, such as Internet Service Provider (ISP) Names, User Names, and Unlock Codes, among others.

29.     The primary piece of information which identified Exida as an infringer was an email address detected on the users' computers. In this case, the ISP Name

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

was Verizon, the user names were "jchristman" and "administrator", and the codes were all issued to legitimate customers. However, this information alone did not alert VBC that Exida bore liability to it.

30.    The acts of infringement are spread among between four different Internet Protocol addresses and three different computers. It was only after VBC created a novel process for data mining that the logs were developed and the data was combined that the infringement was discovered. A manual review of the logs and normal automated scans would not have revealed Exida's presence.

31.    Multiple email addresses were detected on the computers, including for example, *rebelzoo75@gmail.com*. The new data mining process combined all of the email addresses into one field in the VBC logs. The new process parses out the multiple email addresses per line and groups them by the Second Level Domain Name of the email address, i.e., that portion after the @, such as *exida*.com or *gmail*.com.* It was only after the new process was enacted that the Exida case was discovered.

_____

* The .com, .net or .org are customarily referred to as the Top Level Domain Names.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4832-6100-3798.1                                    COMPLAINT

32.     Accordingly, those illegal conversions that occurred prior to November 15, 2010, could not reasonably have been discovered had the new combining process not been developed.

## SPECIFIC ALLEGATIONS OF DEFENDANTS' INFRINGEMENT

33.     Plaintiff has collected information demonstrating that Defendants have used the Copyrighted Software with a fraudulent unlock code to generate more than Five Hundred Forty One Thousand One Hundred Fifty (541,150) lines of C# code.

34.     The Program proves its invaluable nature to programmers in the following manner. Even if a programmer could sustain a 100-line per hour manual translation rate over a long period, plaintiff alleges it would take more than 5,411 programmer hours to accomplish such a conversion.  The average worker at 40 hours per week would accumulate about 2,000 hours per year (with a two week vacation).  Thus, it would require more than two and one-half years to do the same task, starting from scratch, that plaintiff's program can accomplish in a matter of hours.

35.     The specific information related to the unlicensed infringing use is set forth below.

### The Group of Infringements

36.     The actual dates and times of infringement are, as follows:

a.) On January 3, 2009, at 11:39 a.m., the user converted VB into 98,742 lines of C# by reason of his illegal use of plaintiff's program.  At 12:10 p.m., another

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4832-6100-3798.1                                    COMPLAINT

98,742 lines were converted.   The computer name – **EXIDA-100A3799C**. The fraudulent key that unlocked the software is P77151006CAM2R6591Y6EC067. The owner is Exida.  The user is Administrator.

b.) On December 1, 2009, at 2:31 p.m., the user illegally converted Visual Basic lines into 112,470 lines of C#. The computer name – **JMC7.**  The fraudulent key that unlocked the software is P3B0E-S4167-217B5-KA976-G208F.  The user is jchristman.

c.) On December 4, 2009, at 2:12 p.m., the user illegally converted Visual Basic lines into 39,022 lines of C# on computer **JMC7.**  The fraudulent key used to unlock the software is identical to that mentioned above.  The same user is jchristman.

d.) On December 10, 2009,  at 9:15 and at 9:40 a.m., the user illegally converted Visual Basic lines into 81,910 lines of C# on computer **JMC7.**  The fraudulent key is identical to that of December 1 and 4.  The user is again jchristman.

e.) On December 21, 2009, once again the data reflects identical information as above for that computer known as **JMC7.**

f.)  On November 15, 2010, at 10:58 a.m., the user converted 106,921 lines into C#. Version 2.29 of the software was installed on a computer owned by defendant, Exida.  The computer name is **JMC-M4400.**  The user is named

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4832-6100-3798.1

jchristman. A new and different fraudulent key was used by the user to unlock the software, to wit, P0S65-80U92-DJ239-2500H-5Q828.

37.     In each and every instance mentioned above, the user illegally reproduced and adapted the software for the benefit of his employer.  The keys were not issued by VBC to the defendants.  They are unauthorized codes whose sole purpose is to decrypt developer's software and unlock programs to unlimited use without the knowledge or consent of plaintiff.

38.     Moreover, detected by plaintiff was the purpose of the wrongful conversion. Plaintiff's tracking system recorded that the conversions were dedicated to vb projects entitled "exSILentiaWPF," "exSILentia2," "exSILentia3," "SILDoc," and "exidaQuotationTool."   Silentia is one of Exida's major services provided to clients. *Exhibit* "D."

39.     Plaintiff believes jchristman is actually defendant John Christman. This defendant entered three elements of identity as required by VBC.  That is, Mr. Christman himself entered the Registration Name – *"user;"* Registration Organization – *"user;"* and, Registration email – *"user@user.com."*  It appears that Mr. Christman was attempting to disguise his usage of the software and knew his actions were unlawful.

40.     Therefore, as mentioned, the total of all lines illegally converted amounts to  541,150.  To place this number of C# lines in perspective, it is said that

COMPLAINT

4832-6100-3798.1

the number of C# lines is roughly equivalent to 2% if the same were in text. The equivalence approximates 10,800 pages of text. Or, if the average book consists of 200 pages, it would require more than 50 books piled atop one another to equal the number of lines converted.  Copies of Proof of Illegal Usage are attached hereto and incorporated by reference as *Exhibit* "C."

**FIRST CLAIM FOR RELIEF**: *Violation of 17 U.S.C. 106(1) & 501, et seq., Copyright Infringement.*

41.   Plaintiff incorporates by reference paragraphs 1 through 41 as if the same were set forth fully herein.

42.   Plaintiff is informed and believes and thereon alleges that the computer involved in this illegal conversion was under the care, custody and control of Defendants at all times. The user directed a false key at Plaintiff's servers in California, bypassed the legitimate code issued to purchasers, gained unauthorized access to the copyrighted material, reproduced Plaintiff's program, adapted and created derivative works beneficial to their employer.

43.   Assuming that the average programmer earns approximately $100.00 per hour doing conversion work, the saved costs and expenses avoided by Defendants as the result of unauthorized access, copying and usage amount to approximately $541,000.00.

44.   Plaintiff alleges that the full amount of Actual Damages, including profit attributable to the infringement, is unknown to Plaintiff at this time, but

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4832-6100-3798.1

accordingly to proof at time of trial. Plaintiff does allege that Statutory Damages are at least $150,000.00. The acts of Defendants, and each of them, involve the use of a fraudulent code in order to bypass Plaintiff's genuine codes issued to legitimate purchasers. The infringers knew or had reason to know they were violating plaintiff's Exclusive Rights under the Copyright Act (At *17 U.S.C. §106(1&2)*). Accordingly, then, the acts complained of were willful and deliberate and qualify for the maximum allowed by law. (At *17 U.S.C. §504(c)(2)*).

**SECOND CLAIM FOR RELIEF:** *Vicarious Copyright Infringement.*

45.    Plaintiff incorporates by reference paragraphs 1 through 44, inclusive, as if the same were set forth fully herein.

46.    Plaintiff is informed and believes and thereon alleges that at all times relevant to the action complained of herein, Exida, had the right and ability to oversee, govern, control and direct its employees actions, including, but not limited to, causing the cessation of adverse conduct in which its employee was engaged. Yet, despite this ability, Defendants failed and continued to fail to enforce rules of conduct upon its employees, which led to the substantial number of lines wrongfully converted. In particular, the Defendants failed to take decisive action to prevent continuing unauthorized access, copying and adaptation of Plaintiff's copyrighted software.

47.    Plaintiff further alleges that as a proximate result of Defendants' conduct Defendants have profited in an amount and in a manner that would not have

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4832-6100-3798.1

taken place, but for the purloining of Plaintiff's copyrighted software by its employees. Accordingly, Defendants have gained a direct financial benefit to which they are not entitled.

48.     Under the circumstances outlined above, Defendants are liable to Plaintiff for Statutory Damages as a willful vicarious copyright infringer in the amount of $150,000.00. Defendants are also liable for Actual Damages in an amount unknown at this time, but according to proof at time of trial.

**THIRD CLAIM FOR RELIEF**: *Contributory Copyright Infringement.*

49.     Plaintiff incorporates by reference paragraphs 1 through 48, inclusive, as if the same were set forth fully herein.

50.     By virtue of its position as employer, Defendant Exida knew or had reason to know that its employee, Christman, had gained unauthorized access to Plaintiff's copyrighted programs and was using same for the benefit of Exida by copying and adapting the accessed copyrighted material and which he knew violated Plaintiff's Exclusive Rights of copyright. The direct infringer's knowledge is inferred from their use of a fraudulent code to unlock the software to unlimited use.

51.     By engaging in such conduct, defendants, and each of them, exceeded the scope of the very limited license granted to them for use in the Trial version of the software and were transformed into copyright infringers.

52.     Furthermore, Plaintiff is informed and believes that Defendants aided the actions of its employee and materially contributed therein by supplying the data

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4832-6100-3798.1

and equipment necessary to encourage, urge and persuade, and induce the usage of Plaintiff's intellectual property, in particular, by supplying computers, a router and a virtual private network through which each and every instance of infringement alleged herein has traveled and been directed to Plaintiff's software.

53.     Defendants, and each of them, are liable to Plaintiff by reason of the employer/employee relationship for Actual Damages of a sum unknown at this time, but for all profits attributable to the infringements, according to proof at the time of trial. In the alternative, Defendants are liable for Statutory Damages of $150,000.00, as and for the willful and intentional infringement and unauthorized access, copying and usage of Plaintiff's copyrighted programs.

**FOURTH CLAIM FOR RELIEF**: *Violation of the Digital Millennium Copyright Act (17 U.S.C. §1201(a).)*

54.     Plaintiff repeats and re-alleges paragraphs 1 through 53, as if the same were set forth fully herein.

55.     At all times mentioned herein, Plaintiff has in force a 25 digit alphanumeric code designed to control access to his copyrighted software. It is only when a legitimate purchaser affirms the terms and conditions of the End User Licensing Agreement (EULA) and pays the standard market fee that access to the licensed product is permitted for an unlimited time. When adherence is satisfied Plaintiff will issue to the licensee a non-exclusive, non-transferable license and provide legitimate code enabling access to the copyrighted programs.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

56.     The code is intended as a technological measure for the purpose of protecting its proprietary program. To gain access requires knowledge of the 25 digits issued by Plaintiff. It is intended to exclude those who seek to circumvent the code and gain unauthorized access.

57.     Defendants circumvented this technological access-control measure to obtain unlicensed access to the Copyrighted Software.

58.     The true number of acts of circumvention is unknown at this time, but Plaintiff is informed and believes and thereon alleges that at least 10 occasions above occurred.

59.     As a consequence of Defendants' unlawful and unauthorized circumvention of Plaintiff's measures, Plaintiff has sustained damages as previously set forth herein.

60.     The use of a circumvention device to gain access is an intentional and knowledgeable act by the Defendants. It is therefore willful and subjects Defendants' liable for the maximum allowed for Statutory Damages, per act of circumvention, or $2,500.00 on 10 occasions for a total of $25,000.00. Alternatively, Plaintiff is entitled to Actual Damages for profits attributable to the acts of circumvention per 17 U.S.C. §1203(c)(2), according to proof at time of trial. Said damages are *in addition* to that awarded for copyright infringement.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4832-6100-3798.1                                          COMPLAINT

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that the Court issue the following:

A.     Defendant be enjoined during the pendency of this action and permanently thereafter from appropriating, using or otherwise benefiting from Plaintiff's copyrighted application software identified above without the express written approval of Plaintiff or his delegate;

B.     Defendants be ordered to identify, preserve, set aside and retain any and all source code used by them in the infringement alleged above pursuant to Federal Rule of Civil Procedure 34, which includes, but is not limited to:

(i)     All electronically stored information which contains any portion of Plaintiff's copyrighted program;

(ii)     All writings as defined in Federal Rule of Evidence 1001, which refer to or mention in any manner Plaintiff's program, except to those items based on privilege.

C.     Pay Plaintiff all damages sustained by him as the result of their unlawful acts, with prejudgment interest, as well as account for and pay for all gains and profits they have enjoyed at Plaintiff's expense. In particular, Plaintiff demands compensation of at least $150,000.00 as and for Statutory Damages under The Copyright Act or Actual Damages for profits attributable to the infringement, both direct and indirect, according to law.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

D.    Plaintiff demands at least $25,000.00 for violation of the applicable section of the Digital Millennium Copyright Act, §1201(a), et seq., over and above those damages recited under the Copyright Act of 1976;

E.    Trial by jury.

F.    All costs of litigation, including costs of suit, reasonable attorney fees and interest at legal rates.

G.    Such other and further relief as the Court deems just under the circumstances.

Dated: November 6, 2013

LEWIS BRISBOIS BISGAARD & SMITH LLP

By: _____
     Donald M. Gindy
     Attorneys for Plaintiff
     VBConversions LLC

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4832-6100-3798.1

19

COMPLAINT