Jeffrey M. Goldman (SBN 233840)
**PEPPER HAMILTON LLP**
4 Park Plaza, Suite 1200
Irvine, CA 92614-5955
Tel.: 949.567.3500
Fax: 949.863.0151
Email: goldmanj@pepperlaw.com

and

M. Kelly Tillery, Esq.[1]
Megan M. Kearney, Esq.[1]
**PEPPER HAMILTON LLP**
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
Tel: 215.981.4000
Fax: 215.981.4750
Email: tilleryk@pepperlaw.com
Email: kearneym@pepperlaw.com

*Attorneys for Defendants,*
*EXIDA.COM, LLC and JOHN CHRISTMAN*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| VBCONVERSIONS, LLC,<br><br>            Plaintiff,<br><br>     v.<br><br>EXIDA.COM, LLC, JOHN CHRISTMAN, DOES 1-10, INCLUSIVE,<br><br>            Defendants. | CIVIL ACTION NO. 2:13-cv-08306-PSG-JEMx<br><br>United States District Judge Philip S. Gutierrez<br><br>Magistrate Judge John E. McDermott<br><br>**NOTICE OF MOTION AND MOTION OF DEFENDANTS TO DISMISS THIRD AMENDED COMPLAINT**<br><br>Hearing Date: July 7, 2014<br><br>Hearing Time: 1:30 p.m. |

[1] Admitted *Pro Hac Vice*.

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on July 7, 2014 at 1:30 p.m. in the Edward R. Roybal Federal Building and United States Courthouse, Courtroom 880, located at 255 East Temple Street, Los Angeles, California 90012, or as soon thereafter as the matter may be heard, Pepper Hamilton LLP will and hereby does move for an Order dismissing Plaintiff's Third Amended Complaint without leave to amend. This Motion is made pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6) and such other and further evidence and argument that the Court may accept.

On April 1, 2014, this Court granted Defendants' Motion to Dismiss the First Amended Complaint, in part, but permitted Plaintiff leave to amend. Dkt. No. 46. On April 26, 2014, Plaintiff filed a Second Amended Complaint. The parties held a "meet and confer" pursuant to Local Rule 7-3 on May 6, 2014 to discuss Defendants' Second Motion to Dismiss. Defendants agreed to allow Plaintiff to amend to address the issues raised during the "meet and confer." Dkt. No. 53. Plaintiff filed its Third Amended Complaint on May 9, 2014. Dkt. No. 54. Later that day, this Court granted the parties' Stipulation granting Plaintiff leave to amend. Dkt. No. 57.

This Motion is made following the conference of Counsel pursuant to Local Rule 7-3, which took place on May 6, 2014. More particularly, on May 6, 2014, Defendants "met and conferred" with Plaintiff regarding the Defendants' Second Motion to Dismiss. Defendants agreed to give Plaintiff an opportunity to address the deficiencies raised by Defendants and outlined in this Court's Order of April 1, 2014. Dkt. No. 46. For the reasons set forth in the attached Memorandum of Points and Authorities, Plaintiff's Third Amended Complaint did not cure the exact same deficiencies discussed during the "meet and confer." Further conference with Plaintiff and/or further permission to amend would be futile.

1

Dated:  May 30, 2014

**PEPPER HAMILTON LLP**

2

3

/s/ Jeffrey M. Goldman

Jeffrey M. Goldman (SBN 233840)

4

*Attorney for Defendants,*

*EXIDA.COM, LLC and JOHN*

5

*CHRISTMAN*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION TO DISMISS

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ......................................................................ii

I.    INTRODUCTION ................................................................ 1

II.   LEGAL STANDARD.......................................................... 3

III.  ARGUMENT .................................................................... 4

A.   VBC's Third Amended Complaint Must be Dismissed Because
     Copyright Registration is a Mandatory Prerequisite to Filing an
     Infringement Action............................................................ 4

     1.   Versions 2.19, 2.25 and 2.29 of VBC's Software Are Not
          Registered ............................................................... 4

     2.   VBC Fails to Plead, or Even Recite, that Versions 2.19,
          2.25 and 2.29 are "Derivative Works" of Version 2.0 ............... 5

     3.   VBC's Fails to Plead Substantial Similarity Between the
          Code of the Unregistered and Registered Software ................... 7

B.   VBC Lacks Standing to Assert the Claims in the Third
     Amended Complaint Because it Has Not Pleaded Ownership of
     the Allegedly Infringed Unregistered Software (Versions 2.19,
     2.25 and 2.29).................................................................. 12

C.   VBC's Third Amended Complaint Must be Dismissed Because
     its Copyright Infringement Claims are Barred by the Statute of
     Limitations ..................................................................... 14

D.   VBC Should Not Be Given Further Leave to Amend Because
     Amendment Would Be Futile Given VBC's Repeated Failure to
     Cure Deficiencies Through Previous Amendments .......................... 20

V.    CONCLUSION ................................................................. 22

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*A&M Records, Inc. v. Napster, Inc.*, 239 F. 3d 1004 (9th Cir. 2001) .................... 12

*Allen v. City of Beverly Hills*, 911 F.2d 367 (9th Cir. 1990) .................................. 21

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) . 3, 4, 13

*Bell Atl. Corp. v. Twombly*
    550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ........................ 3, 4, 13

*Cosmetic Ideas, Inc. v. IAC/Interactivecorp*, 606 F.3d 612 (9th Cir. 2010) ............ 5

*Cousins v. Lockyer*, 568 F.3d 1063 (9th Cir. 2009) ............................................ 3

*David Crook v. Assurant*, Civ. Action No. 08-cv-7296 (C.D. Cal. 2008) ............. 17

*David Crook v. Autodesk*, Civ. Action No. 09-cv-3386 (C.D. Cal. 2009) ............. 17

*David Crook v. Harcourt Investment Consulting AG*, Civ. Action No. 09-cv-
    5899 (C.D. Cal. 2009) ....................................................................... 17

*David Crook v. ITT Corp.*, Civ. Action No. 10-cv-1156 (C.D. Cal. 2010) ............. 17

*David Crook v. Microsoft Corp.*, Civ. Action No. 10-cv-1624 (C.D. Cal.
    2010) ............................................................................................... 17

*David Crook v. RC Systems, Inc.*, Civ. Action No. 10-cv-2336 (C.D. Cal.
    2010) ............................................................................................... 17

*David Crook v. Samsung Networks, Inc.*, Civ. Action No. 08-cv-4492 (C.D.
    Cal. 2008) ....................................................................................... 17

*David Crook v. Ziff Brothers Investments*, Civ. Action No. 08-cv-1508 (C.D.
    Cal. 2008) ....................................................................................... 17

*Dutciuc v. Meritage Homes of Arizona, Inc.*, 462 Fed. Appx. 658 (9th Cir.
    2011) ............................................................................................... 21

*Fahmy v. Jay-Z*, 835 F. Supp. 2d 783 (C.D. Cal. 2011) ...................................... 17

*Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017 (9th Cir. 2013) ........................ 3

*Foman v. Davis*, 371 U.S. 178, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962) .................. 21

**Page(s)**

*Gillespie v. Civiletti*, 629 F.2d 637 (9th Cir. 1980)..................................................19

*Goldberg v. Cameron*, 482 F. Supp. 2d 1136 (N.D. Cal. 2007) ......................14, 15

*I.M.S. Inquiry Mgmt. Sys., Ltd. v. Berkshire Info. Sys., Inc.*, 307 F. Supp. 2d
　　521 (S.D.N.Y. 2004)...............................................................................................8

*In re: All Terrain Vehicle Litig.*, 771 F. Supp. 1057 (C.D. Cal. 1991) ..................21

*In re Napster, Inc. Copyright Litig.*, No. 00-1369, 2005 WL 289977 (N.D.
　　Cal. Feb. 3, 2005) ...............................................................................................17

*Kauai Scuba Ctr., Inc. v. Padi Am., Inc.*, 524 Fed. Appx. 344 (9th Cir. 2013) ......21

*Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001) .....................................16

*Litchfield v. Spielberg*, 736 F.2d 1352 (9th Cir. 1984) ...........................................6

*Malibu Media, LLC v. John Does*, No. 12-1061, 2012 U.S. Dist. LEXIS
　　99148 (S.D. Cal. July 17, 2012) .........................................................................19

*Nicolosi Dist. Co. v. Finishmaster, Inc.*, No. 99-0927, 2000 U.S. Dist. LEXIS
　　505 (N.D. Cal. Jan. 13, 2000)..............................................................................21

*Platt Elec. Supply, Inc. v. Eoff Elec., Inc.*, 522 F.3d 1049 (9th Cir. 2008).............20

*Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700 (9th Cir. 2004) .........15

*Real Estate Innovations, Inc. v. Houston Ass'n of Realtors, Inc.,* 422 Fed.
　　Appx. 344 (5th Cir. 2011) ....................................................................................8

*Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 130 S. Ct. 1237, 176 L. Ed.
　　2d 18 (2010)...........................................................................................................5

*Ricketts v. Haah*, No. 13-521, 2013 U.S. Dist. LEXIS 90241 (C.D. Cal. June
　　26, 2013).................................................................................................................5

*Rideau v. Greenberg*, No. 11-1698, 2013 U.S. Dist. LEXIS 97852 (C.D. Cal.
　　Feb. 25, 2013).......................................................................................................20

*Righthaven LLC v. Hoehn*, 716 F.3d 1166 (9th Cir. 2013) .....................................12

*Roley v. New World Pictures, Ltd.*, 19 F.3d 479 (9th Cir. 1994) ............................14

*SimplexGrinnell LP v. Integrated Sys. & Power, Inc.,* 642 F. Supp. 2d 206
　　(S.D.N.Y. 2009).............................................................................................8, 9, 10

**Page(s)**

*Sims v. Viacom, Inc.*, No. 11-cv-0675, 2012 U.S. Dist. LEXIS 11485 (W.D. Pa. Jan. 31, 2012) ................................................................................. 14

*W. Mining Council v. Watt*, 643 F.2d 618 (9th Cir. 1981) .................................. 3, 13

**STATUTES**

*17 U.S.C. § 101* ....................................................................................................... 7

*17 U.S.C. § 106* ..................................................................................................... 12

*17 U.S.C. § 204* ..................................................................................................... 13

*17 U.S.C. § 411(a)* ............................................................................... 1, 4, 5, 8, 9, 11

*17 U.S.C. §§ 411-412* ........................................................................................... 11

*17 U.S.C. § 501* ..................................................................................................... 12

*17 U.S.C. § 501(a)* ................................................................................................ 12

*17 U.S.C. § 504(b)* ................................................................................................ 11

*17 U.S.C. § 507* .............................................................................................. 14, 15

*17 U.S.C. § 507(b)* ................................................................................................ 14

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(1) .......................................................................................... 12

Fed. R. Civ. P. 12(b)(6) ............................................................................................ 3

Fed. R. Civ. P. 15(a)(2) ........................................................................................... 21

Federal Rules of Evidence 201 .............................................................................. 16

Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 21.14(A)(2002) ................................................................................................ 10

*Computer Glossary, Computer Terms*, http://searchsoftwarequality.techtarget.com/definition/versioning (last visited January 27, 2014) ......................................................................................... 7

DEFENDANTS' MOTION TO DISMISS

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Defendants, Exida.com, LLC ("Exida") and John Christman ("Christman") (collectively, "Defendants") move to dismiss Plaintiff, VBConversions, LLC's ("VBC") Third Amended Complaint on several grounds.  First, VBC has failed to sue on a work that is registered with the U.S. Copyright Office, which is a prerequisite to initiating a civil action under the Copyright Act.  Title 17 U.S.C. § 411(a).  Second, VBC has alleged no facts relating to ownership of the software it sues upon and, therefore, lacks standing.  Third, five (5) out of the six (6) alleged acts of infringement occurred more than three (3) years before VBC filed this lawsuit and are barred by the applicable Statute of Limitations.

Exida is a Pennsylvania limited liability company that is a leading authority on functional safety.  *See* Exhibit "1," Decl. of Iwan van Beurden, ¶ 2.  It develops its own software to assist its customers with safety and security-related issues.  *Id.* at ¶ 3.  As such, Exida is sensitive to and respectful of the intellectual property rights of others.  *Id.* at ¶ 4.

After investigating VBC's allegations of Copyright Infringement, it was determined that Mr. Christman, an Exida employee, may have downloaded some "Trial Versions" of certain software programs designed to convert Visual Basic language to C# language.  *See* Exhibit "2," Decl. of Christman, ¶ 3 & Exhibit "1," ¶ 5.  Mr. Christman was not acting within the scope of his employment when he downloaded any software conversion programs.  Exhibit "1," ¶ 6 and Exhibit "2," ¶ 4.  He was never instructed to convert any Exida code and there was no company directive to do so.  Exhibit "1," ¶ 7 and Exhibit "2," ¶ 5.

Mr. Christman downloaded certain conversion software because he was curious if such software was effective in converting source code.  Exhibit "2," ¶ 6.  He has no recollection if the conversion software he downloaded was in any way related to VBC.  *Id.* at ¶ 7.  Mr. Christman recalls running some lines of code

through a program and receiving results that can only be described as unusable. The conversion results had so many errors that Mr. Christman determined that whatever and whosever program he downloaded was not an effective conversion tool and deleted the program from his computer. *Id*. at ¶ 11.

Mr. Christman later downloaded newer "Trial Versions" to determine if the conversion software had improved from his last trial run. *Id*. at ¶ 12. Mr. Christman ran some lines of software code through the program and, again, received unusable results replete with errors. *Id*. at ¶ 13. After determining that the conversion software had not improved, he deleted the "Trial Versions" from his computer. *Id*. at ¶ 14. Since VBC claims that its software works and is successful, it is unlikely that what Mr. Christman downloaded was actually VBC's software. Pl.'s Third Amended Compl. ("Compl.") ¶ 14.

Mr. Christman downloaded "Trial Versions" of some conversion software from some source. <u>Even if</u> this was in fact some version of VBC's software, his limited "use" was entirely consistent with VBC's "shareware model" whereby VBC permits users to download "Trial Versions" of its products to test if they are suitable for the user's use. Compl. ¶ 18.

Mr. Christman deleted the "Trial Versions" after determining they yielded unusable results and no Exida source code was ever successfully converted using any conversion software. Exhibit "2," ¶¶ 14-6. Exida does not even use C# language in any of its software products. Exhibit "1," ¶ 8. If the software had worked, Mr. Christman may have recommended that Exida purchase it. Because whatever he downloaded did not work at all, he did not. Exhibit "2," ¶ 17. VBC's software sells for One Hundred and Ninety-Nine ($199.00) Dollars. *See* Exhibit "3," Printouts of VBC Website.

More than three (3) years after Mr. Christman downloaded "Trial Versions" of some conversion software, Exida and Christman were surprised to learn that VBC filed this lawsuit alleging Copyright Infringement. Defendants move to

1  dismiss the Third Amended Complaint on the grounds set forth in more detail
2  below.

3       Defendants also respectfully request that VBC be denied further leave to
4  amend the Third Amended Complaint.  VBC has now had four (4) opportunities to
5  state a viable claim and establish its standing to bring this lawsuit.  These should be
6  simple tasks.  VBC has had the benefit of numerous "meet and confers" with
7  Counsel for Defendants.  More importantly, VBC has had the benefit of this
8  Court's Order of April 1, 2014, which essentially provided VBC with a roadmap of
9  how to successfully replead its First Amended Complaint.  Dkt. No. 46.  VBC's
10 failure to cure the deficiencies raised by Defendants and adopted in this Court's
11 prior Order of Dismissal confirms that it would be futile to give VBC further leave
12 to amend.  Additionally, VBC cannot cure the fact that five (5) out of six (6)
13 alleged acts of infringement are barred by the Statute of Limitations.

14 **II.   LEGAL STANDARD**

15      A motion to dismiss under Rule 12(b)(6) tests whether the complaint
16 "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that
17 is plausible on its face.'"  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937,
18 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570,
19 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).  When deciding a Rule 12(b)(6) motion,
20 the court must accept the facts pleaded in the complaint as true, and construe them
21 in the light most favorable to the plaintiff.  *Faulkner v. ADT Sec. Servs., Inc.*, 706
22 F.3d 1017, 1019 (9th Cir. 2013); *Cousins v. Lockyer*, 568 F.3d 1063, 1067-8 (9th
23 Cir. 2009).  The court, however, is not required to accept "legal conclusions [ . . . ]
24 cast in the form of factual allegations."  *W. Mining Council v. Watt*, 643 F.2d 618,
25 624 (9th Cir. 1981); *see Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

26      After accepting all non-conclusory allegations as true and drawing all
27 reasonable inferences in favor of the plaintiff, the court must determine whether the
28 complaint alleges a plausible claim to relief.  *See Iqbal*, 556 U.S. at 679-80.  "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged [ . . . ] The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. at 678 (citing *Twombly*, 550 U.S. at 556).

## III.   ARGUMENT

### A.   VBC's Third Amended Complaint Must be Dismissed Because Copyright Registration is a Mandatory Prerequisite to Filing an Infringement Action

VBC has not pleaded that it has U.S. Copyright Registrations for the software that it claims Defendants' downloaded.  The "proofs" attached to the Third Amended Complaint list three (3) different versions of VBC software that Defendants' allegedly copied:  "VB.NET to C# converter, version 2.19," "VB.NET to C# converter, version 2.25" and "VB.NET to C# converter, version 2.29" ("Unregistered Software").[1]  *See* Pl.'s Exhibit "E."  The only Registered Copyright that VBC sues upon is for a computer software program called "VB.NET to C# converter, version 2.0" ("Registered Software").  Compl. ¶ 15 & Pl.'s Exhibit "A."  Because Copyright Registration is a prerequisite to filing a civil lawsuit, VBC's Third Amended Complaint must be dismissed in its entirety.  Title 17 U.S.C. § 411(a).

### 1.   Versions 2.19, 2.25 and 2.29 of VBC's Software Are Not Registered

---

[1] VBC alleges that it has a sophisticated tracking system whereby VBC's own software reports its allegedly unauthorized uses back to VBC.  Compl. ¶¶ 25-6.  VBC attaches what it claims to be "proof" that Defendants downloaded the Unregistered Software.  Compl. ¶¶ 25-6, 36(g) & Pl.'s Exhibit "E."  These attachments purportedly summarize information from VBC's tracking software, including the name and version of the VBC software allegedly downloaded.  *Id*.

The Third Amended Complaint should be dismissed because VBC has, for the fourth time, failed to plead the registration status of the allegedly downloaded Unregistered Software.  This Court's Order of April 1, 2014 dismissed VBC's First Amended Complaint, in part, because "VBC has only pleaded registration of versions 1.0 and 2.0 of the Software, leaving the Court no indication of the registration status of versions 2.19, 2.25 and 2.29." Dkt. No. 46, p. 17.  VBC's Third Amended Complaint only states that the "upgrades were not registered at the time of the alleged infringements [ . . . ]"  Compl. ¶ 36(h). VBC still has not informed this Court of the current registration status of the Unregistered Software, so Defendants will do so.  A search of the U.S. Copyright Office records indicates they are <u>not</u> currently registered.  *See* Exhibit "4," U.S. Copyright Office Search Results.

No civil action for Copyright Infringement may be instituted until a Copyright Registration from the U.S. Copyright Office has been obtained.  17 U.S.C. § 411(a); *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 157, 130 S. Ct. 1237, 176 L. Ed. 2d 18 (2010) ("Section 411(a)'s registration requirement is a precondition to filing a claim [ . . . ]"); *see also Ricketts v. Haah*, No. 13-521, 2013 U.S. Dist. LEXIS 90241, at *2, 4-5 (C.D. Cal. June 26, 2013) (granting motion to dismiss where plaintiff failed to plead ownership of registered copyright or pending application as required by  Section 411(a)).  Under Ninth Circuit precedent, Section 411(a)'s registration requirement is satisfied upon the Copyright Office's receipt of a Copyright Application.  *Cosmetic Ideas, Inc. v. IAC/Interactivecorp*, 606 F.3d 612, 621 (9th Cir. 2010).  VBC <u>still</u> has not satisfied the registration requirement and the Third Amended Complaint should be dismissed in its entirety.

## 2. **VBC Fails to Plead, or Even Recite, that Versions 2.19, 2.25 and 2.29 are "Derivative Works" of Version 2.0**

In its Order of April 1, 2014 dismissing the First Amended Complaint, this Court correctly observed,

1
2
3
4
5

> VBC attempts to cure its standing and pleading deficiencies in its opposition papers, by arguing that Versions 2.19, 2.25, and 2.29 of the Software are 'patches' rather than 'versions,' and as such, are not drastically different than Version 2.0 [ . . . ] VBC argues that because Versions 2.19, 2.25, and 2.29 are derivative works of Version 2.0, any unlicensed use of the patches also entails infringement upon the underlying Version 2.0.

6   Dkt. No. 46, p. 17.  This Court then proceeded to give a detailed Opinion outlining

7   how VBC's First Amended Complaint failed to plead facts establishing that

8   Versions 2.19, 2.25 and 2.29 are derivative works of the registered Version 2.0.

9   This Court's Opinion provided VBC with straightforward, specific guidance on

10  how VBC could successfully amend to state a claim.  Yet, VBC has <u>again</u> failed to

11  state a plausible claim; presumably, because it cannot.[2]

12      In order for VBC to survive this Motion to Dismiss, it must plead that

13  Versions 2.19, 2.25 and 2.29 are "derivative works" of the registered Version 2.0.

14  Derivative works must be substantially similar to the copyrighted work.  *See*

15  *Litchfield v. Spielberg*, 736 F.2d 1352, 1357 (9th Cir. 1984) ("[A] work is not

16  derivative unless it has been substantially copied from the prior work.").

17      VBC has not pleaded "substantial similarity" or that Versions 2.19, 2.25 and

18  2.29 are "derivative works" of the registered Version 2.0.  VBC does not even use

19  the term "derivative work" anywhere in its Third Amended Complaint to refer to

20  the Unregistered Software.  Instead, VBC's Third Amended Complaint strangely

21  asserts that "[t]hese updates represent small enhancements to the Registered

22  Version and therefore ***derive their existence*** from Version 2.0" and that "[t]he

23  updates mentioned above ***derive from*** Registered Version 2.0."  Compl. ¶¶ 36(i) &

24

25

26      [2] Counsel for VBC, Donald M. Gindy, Esquire, is a seasoned intellectual
27  property litigator with forty-four (44) years of experience who claims to specialize in Copyright Law.  *See* Exhibit "9," Profiles of D. Gindy.  There is no doubt that Mr. Gindy is familiar with the legal concepts of "derivative works" and "substantial similarity."

28

36(g) (emphasis added); *see also* Exhibit "5," Document Comparison of First and Third Amended Complaints.

"Derivative work" is a term of art with legal significance and is defined in the Copyright Act.[3] VBC's failure to even recite the term "derivative work" is telling. Versions 2.19, 2.25 and 2.29 may "derive their existence" from Version 2.0 in that Version 2.0 is an earlier version of the same software program, but that does not mean they are substantially similar to Version 2.0 and are derivative works.[4]

### 3. VBC's Fails to Plead Substantial Similarity Between the Code of the Unregistered and Registered Software

VBC's Third Amended Complaint should be dismissed because VBC has failed to adequately plead substantially similarity between the code of the Unregistered and the Registered Software. The code of different versions of software can differ substantially.[5] The registered Version 2.0 was first created in 2006 and has, presumably, undergone significant changes in the last eight (8) years. Compl. ¶ 15 & Pl.'s Exhibit "A." VBC has not pleaded that it has registered any of

---

[3] A "derivative work" is a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted. A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship, is a "derivative work". 17 U.S.C. § 101.

[4] VBC pleads that the updates are only mentioned in its Third Amended Complaint to "describe where the defendants were found when discovered by plaintiff." Compl. ¶ 36(i). This allegation is bizarre given that VBC's "proofs" indicate that these were the versions that Defendants allegedly downloaded. *See* Pl.'s Exhibit "E."

[5] "Versioning" is the creation and management of multiple releases of a product, all of which have the same general function but are improved, upgraded or customized. The term applies especially to operating systems, software and Web services. WhatIs.com, *Computer Glossary, Computer Terms*, http://searchsoftwarequality.techtarget.com/definition/versioning (last visited January 27, 2014).

the later versions of the Unregistered Software (Versions 2.19, 2.25 or 2.29) that VBC claims were copied by Defendants.

In *Real Estate Innovations, Inc. v. Houston Ass'n of Realtors, Inc.*, the Fifth Circuit affirmed the dismissal of a claim for infringement of plaintiff's software where the software identified in the complaint was <u>not</u> the same as the software identified in the copyright registration. 422 Fed. Appx. 344, 348 (5th Cir. 2011) (affirming dismissal of claim on motion to dismiss). The Court reasoned that plaintiff failed to explain the discrepancy between the software or produce a copyright registration for the later version of a computer program it alleged defendants infringed. *Id.* As a result, the Court affirmed dismissal of the Copyright Infringement claim for failing to comply with the registration requirements of 17 U.S.C. § 411(a). *See also I.M.S. Inquiry Mgmt. Sys., Ltd. v. Berkshire Info. Sys., Inc.*, 307 F. Supp. 2d 521, 526-9 (S.D.N.Y. 2004) (granting motion to dismiss for failure to satisfy Section 411(a) where copyright registration covers something other than the work infringed). VBC has similarly failed to plead facts sufficient to address the exact same discrepancies.

VBC's Third Amended Complaint does not in any way address <u>how</u> substantial the changes to the source code have been over the many versions. VBC relies upon naming conventions in the software industry ("updates," "upgrades," "patches," "enhancements") to support its contention that it was not required to register the three (3) Unregistered Works.[6] This same "versioning" argument was addressed and soundly rejected in *SimplexGrinnell LP v. Integrated Sys. & Power, Inc.* where the Court held that an injunction only applied to four (4) registered software versions (8.04, 9.02, 10.01 and 11.01) and <u>not</u> unregistered, intermediate

---

[6] In contradiction to the nomenclature used in its Complaint, VBC refers to its software as separate <u>Versions</u> 3.07, 3.08 and 3.09 on its website and not as "updates" or "upgrades." *See* Exhibit "3," Printouts of VBC website.

versions of the software (e.g. 10.50, 10.60 and 10.61). 642 F. Supp. 2d 206, 208-9, 212 (S.D.N.Y. 2009).

In *SimplexGrinnell,* the Court correctly analyzed Section 411(a)'s registration requirement and determined that plaintiff failed to adequately address whether later-developed intermediate software versions required separate, independent registration. *Id*. at 211-2. As VBC does here, plaintiff there argued the intermediate versions did not require separate registration and directed the Court to a document, which described the functional changes or enhancements between versions. The Court held that the document,

> which addresses the functionality of the [computer program] through successive versions - does not speak to the relevant considerations necessary to properly analyze whether the software is copyrightable [ . . . ] It is settled that "the literal elements of computer programs, i.e., their source and object codes, are the subject of copyright protection," if sufficiently original. Thus, even if adding a new feature, or repairing a defect, is functionally "trivial," it does not follow that the change did not involve originality in the new computer code that effects the functional change. Whether the changes involved adding a period, moving a comma, reorganizing the sequence of events, or the addition of a thousand lines of code, is left unexplained [ . . . ].

*Id*. at 212 (citations omitted). The Court correctly explained that a separate computer program requires separate copyright registration depending upon the significance in the change in code and <u>not</u> functionality.

For the fourth time, VBC has failed to even address in any way the similarly in the code of the Unregistered and Registered Software. This Court's Order of April 1, 2014 directed VBC to explain "how the 'patches' in question (versions 2.19, 2.25 or 2.29) are substantially similar to version 2.0" rather than allege "in conclusory fashion, that the patches do not substantially alter or amend Version 2.0." Dkt. No. 46, p. 18. VBC's Third Amended Complaint <u>still</u> contains factually unsubstantiated, conclusory allegations of "substantial similarity" and a legally

irrelevant description of the functional enhancements that the Unregistered Software made to the Registered Software.

VBC summarily alleges that "[t]here is no discrepancy between the Software and its upgrades and they are *substantially similar* to it." Compl. ¶ 36(h). This is precisely the type of meaningless, conclusory allegations that this Court previously found inadequate. Dkt. No. 46, p. 18. VBC then proceeds to give a description of the functional changes that occurred between Version 2.0 and Versions 2.19, 2.25 and 2.29. Compl. ¶ 36(i). The functional enhancements to the Registered Software have nothing to do with whether the source code is substantially similar. *SimplexGrinnell,* 642 F. Supp. 2d at 212. This description is legally irrelevant and <u>not</u> what the Court required VBC to replead.

VBC then proceeds to allege that "[t]he updates [ . . . ] all are inclusive of the entire source code found in that version [2.0]." Compl. ¶ 36(i). This allegation finally addresses source code, though still without facts, but it does not allege substantial similarity. It states that the source code of Version 2.0 can be found in the Unregistered Software. It gives no indication of <u>how</u> <u>substantial</u> the <u>additional</u> source code added to Versions 2.19, 2.25 and 2.29 is and <u>how</u> <u>similar</u> and/or <u>different</u> that code is to the code of Version 2.0.

The U.S. Copyright Office requires that "[e]ach **separately published version** of a computer program that contains new, copyrightable authorship **must be registered separately**, with a new application and fee." *See* Exhibit "6," U.S. Copyright Office Circular 61, p. 3; Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 21.14(A)(2002)(same quote). VBC <u>separately</u> <u>publishes</u> and offers to sell each <u>Version</u> of its software, as evidenced by its current offering of Versions 3.08 and 3.09 on its website. *See* Exhibit "3," Printouts of VBC website. VBC's Third Amended Complaint does not even address how much additional source code was added to Versions 2.19, 2.25 and 2.29.

VBC has now had four (4) chances to properly plead substantial similarity. VBC has had the benefit of numerous "meet and confers" with Defendants and this Court's Order of April 1, 2014, which provided VBC with a roadmap of how to successfully plead substantial similarity.  VBC is represented by sophisticated Counsel with a claimed specialty in copyright litigation.  It cannot be said that VBC did not understand what it needed to plead to withstand this Motion to Dismiss.  Its failure to plead substantial similarity in the source code, its reliance on legally irrelevant semantic distinctions (e.g. "upgrades" and "updates") and the number of opportunities VBC has been given to amend, all lead to the inescapable conclusion that VBC <u>cannot</u> plead substantial similarity.

The Third Amended Complaint must be dismissed for failure to state a claim because VBC has failed to satisfy the Copyright Act's registration requirement.  17 U.S.C. § 411(a).  To cure this defect, VBC need only register Versions 2.19, 2.25 and 2.29.  VBC's resistance to registering these versions is surely attributable to the fact that VBC knows it will then be precluded from recovering Statutory Damages or Attorneys' Fees in a lawsuit alleging infringement of those works.  *See* 17 U.S.C. §§ 411-412.  VBC will only be able to seek its Actual Damages and Defendants' profits attributable to the alleged infringements that are not taken into account in computing actual damages.  17 U.S.C. § 504(b).

The Actual Damages VBC could potentially recover are minimal because VBC's software sells for only One Hundred and Ninety-Nine ($199.00) Dollars. *See* Exhibit "3."  Additionally, Defendants' have no revenues whatsoever, much less profits, attributable to the alleged infringements of the Unregistered Software because no Exida source code was ever successfully converted using any VBC software.  Exhibit "2," ¶¶ 14-6.  Exida does not even use C# language in <u>any</u> of its software products.  Exhibit "1," ¶ 8.  Given the impact on VBC's potential recovery, it is not surprising that VBC has vigorously contested a simple claims-

processing rule requiring it to register the allegedly infringed Unregistered Software.

**B.**   **VBC Lacks Standing to Assert the Claims in the Third Amended Complaint Because it Has Not Pleaded Ownership of the Allegedly Infringed Unregistered Software (Versions 2.19, 2.25 and 2.29)**

Defendants move to dismiss all counts of VBC's Third Amended Complaint because it has failed to adequately plead ownership of the Unregistered Software that Defendants' allegedly infringed and, therefore, lacks standing.  A motion to dismiss for lack of standing implicates the Court's subject matter jurisdiction, and is brought under Fed. R. Civ. P. 12(b)(1).

In order to have standing to assert a claim for Copyright Infringement, a plaintiff must either be the legal or beneficial owner of an exclusive right under a copyright.  17 U.S.C. § 501; *see also Righthaven LLC v. Hoehn*, 716 F.3d 1166, 1169 (9th Cir. 2013).  To plead direct copyright infringement, a plaintiff must allege (1) ownership of the allegedly infringed material, and (2) the infringers' violation of at least one exclusive right granted to the copyright holders under 17 U.S.C. § 106.  *A&M Records, Inc. v. Napster, Inc.,* 239 F. 3d 1004, 1013 (9th Cir. 2001) (citing 17 U.S.C. § 501(a)).  VBC has not even pleaded the first prong of a direct copyright infringement claim: ownership.

VBC has pleaded ownership of Versions <u>1.0</u> and <u>2.0</u> pursuant to an Assignment dated September 1, 2010 that conveys all right, title and interest from the original author, David Crook, to VBC.  Compl. ¶ 15 & Pl.'s Exhibits "A," "B" and "C."  Neither of these versions are the versions that were allegedly copied by Defendants (Versions 2.19, 2.25 and 2.29).  *See* Pl.'s Exhibit "E."

VBC has amended to add the following language to its Third Amended Complaint:  "The copyright to the updates noted as 2.19, 2.25 and 2.29 is owned by and belongs to VBC."  Compl. ¶ 36(g).  This Court is not required to accept "legal conclusions [ . . . ] cast in the form of factual allegations," especially in light of

VBC's numerous attempts to plead standing.  *W. Mining Council*, 643 F.2d at 624; *see Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

VBC has failed to identify any written instrument conveying the copyright in and to the Unregistered Software (Versions 2.19, 2.25 and 2.29) from the author, David Crook, to VBC.  "A transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed [ . . . ]" 17 U.S.C. § 204.  VBC has identified no writing signed by David Crook conveying the Unregistered Software to VBC.

As this Court's Order of April 1, 2014 notes, the Assignment that VBC attaches to the Third Amended Complaint includes the conveyance of "all updates, patches and add-ons within each version [Versions 1.0 and 2.0]."  Dkt. No. 46, p. 16.  If Versions 2.19, 2.25 and 2.29 were, in fact, derivative works of the Registered Software (Version 2.0), one would expect VBC's Third Amended Complaint to identify the Assignment as the written instrument conveying the Unregistered Software to VBC.  These allegations are curiously and noticeably absent from the Third Amended Complaint.  *See* Compl. ¶ 15.  This is presumably because VBC has no factual basis to allege that the Unregistered Software was transferred pursuant to that Assignment because the Unregistered Software actually consists of independently copyrightable versions.

VBC has not supplied any facts to ascertain whether the later-developed Unregistered Software was ever assigned to VBC.  This Court has no additional facts to determine standing than it had when it dismissed VBC's First Amended Complaint for failing to plead ownership.  Dkt. No. 46, p. 16.  This Court's Order of April 1, 2014 essentially advised VBC of how to successfully plead standing.  *Id*. VBC's failure to do so can only indicate that it cannot.  The Third Amended Complaint should be dismissed because VBC has not, for the fourth time, pleaded ownership of the allegedly copied software.

**C.**   **VBC's Third Amended Complaint Must be Dismissed Because its Copyright Infringement Claims are Barred by the Statute of Limitations**

Defendants move to dismiss five (5) of the six (6) acts that VBC claims constitute Copyright Infringement because they occurred more than three (3) years before VBC filed the original Complaint and are, therefore, barred by the Statute of Limitations.  Aware of this problem, VBC's Third Amended Complaint telegraphs its intent to rely upon the Ninth Circuit's "discovery rule" to argue that these five (5) claims are not time-barred.  This argument is unavailing.

No civil action for Copyright Infringement can be maintained unless it is commenced within three (3) years after the claim accrued.  17 U.S.C. § 507.[7]  A Copyright Infringement claim "accrues" when "one has knowledge of a violation or is chargeable with such knowledge."  *Roley v. New World Pictures, Ltd*., 19 F.3d 479, 481 (9th Cir. 1994) (holding all acts of alleged infringement occurred more than three years preceding initiation of lawsuit); *see also Goldberg v. Cameron*, 482 F. Supp. 2d 1136, 1147 (N.D. Cal. 2007) ("[a] copyright claim accrues when a *plaintiff knew or should have known* that *infringement had occurred*.") (emphasis added).

The "discovery rule" only operates to permit recovery outside the three (3) year Statute of Limitations where "the copyright owner *did not discover – and reasonably could not have discovered – the infringement* before the

---

[7] VBC's Complaint alleges four (4) Counts (Copyright Infringement, Contributory Copyright Infringement, Vicarious Copyright Infringement and Violation of the Digital Millennium Copyright Act), which are all subject to the Copyright Act's three (3) year Statute of Limitations. *See* 17 U.S.C. § 507(b); *see also Sims v. Viacom, Inc.*, No. 11-cv-0675, 2012 U.S. Dist. LEXIS 11485, at *11 (W.D. Pa. Jan. 31, 2012) (the Statute of Limitations for Copyright Infringement and Digital Millennium Copyright Act claims is three (3) years, as set forth in Section 507(b)).

commencement of the three-year limitation period." *Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700, 706 (9th Cir. 2004) (emphasis added).

If a plaintiff claims recovery outside the limitations period based upon the "discovery rule," the plaintiff's lack of knowledge of the <u>infringement</u> must be reasonable under the circumstances. *Polar Bear*, 384 F.3d at 706-7. A plaintiff "has a duty of diligence: it is not enough that he did not discover he had a cause of action, if a reasonable man could have." *Id*. at 707 (citation omitted); *Goldberg*, 482 F. Supp. 2d at 1148-9 (holding plaintiff's lack of knowledge of infringement was unreasonable and claim was barred by Statute of Limitations).

VBC filed this lawsuit on November 8, 2013. *See* Dkt. No. 1. Therefore, any alleged acts occurring before November 8, 2010 are barred by the Statute of Limitations. 17 U.S.C. § 507. VBC alleges that Defendants copied the Unregistered Software on the following five (5) dates: January 3, 2009; December 1, 2009; December 4, 2009; December 10, 2009; and December 21, 2009. Compl. ¶¶ 36(a)-(e) & Pl.'s Exhibit "E." These five (5) alleged infringements occurred more than three (3) years before VBC filed this lawsuit and are barred.

VBC explains in its Third Amended Complaint that it has a sophisticated tracking system whereby VBC's own software reports any use of its software back to VBC and to Hitek Software, LLC ("Hitek") - a third-party tracking company that VBC employs for the specific purpose of monitoring unauthorized uses. Compl. ¶ 25-6. Through its tracking software, VBC is "able to identify the date and time of the unlicensed use [i.e. the particulars of the infringement], ***the public and private IP address*** of the computer on which the unlicensed use occurs, the false key used to unlock the software, the identity of the user of that computer, ***the owner or organization responsible for operating the computer***, and other data which is integral to proof of ***infringement***." *Id*. at ¶ 26 (emphasis added). This detailed information of alleged <u>infringements</u> is transmitted to VBC and Hitek. *Id*. at ¶ 27.

Although VBC does not say so in its Third Amended Complaint, VBC has routinely alleged in numerous, similar litigations that VBC and Hitek receive this detailed information about unauthorized uses <u>almost</u> <u>instantaneously</u>. *See, e.g.,* Exhibit "7," Ziff Brother Complaint ¶¶ 10-1 & Exhibit "8," Harcourt Investment Consulting Complaint ¶¶ 12-13. [8]  There is no doubt the ***VBC actually knew of and had detailed information regarding the five (5) alleged acts of infringement*** over three (3) years prior to filing suit.

In order to avoid its claims being time-barred, VBC attempts to explain its delay in bringing this litigation by pleading that it could not have possibly "discovered" these infringements until it invented an additional piece of data-mining software ("Log Data Miner").  Compl. ¶¶ 28-32.  However, this does not rescue the five (5) claims from defeat by the Statute of Limitations.

VBC <u>admits</u> it had in its possession the data evidencing infringement and that it could have manually reviewed reports relating to potential unauthorized use of its software.  *Id.* at ¶¶ 26, 28.  VBC had all of the information about Defendants' alleged infringements long before it developed its Log Data Miner because the information was transmitted to VBC by its tracking software when the alleged acts occurred.  David Crook's Declaration states that the Log Data Miner "doesn't change the data at all, just queries it more effectively," which "supplies an enhancement over the older tracking system."  *See* Dkt. No. 32, Crook Decl. ¶ 14(b).

A manual review might have been more time-consuming than using the Log Data Miner, but VBC cannot claim it did not discover - and reasonably could not

---

[8] In ruling on a motion to dismiss, the Court may consider documents outside the pleadings without the proceeding turning into summary judgment. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688-9 (9th Cir. 2001).  In particular, the Court may consider "matters of public record" of which the court may take judicial notice under Rule 201 of the Federal Rules of Evidence.

have discovered - the alleged infringements because it required some good, old-fashioned manual labor.  The congressionally-enacted statute prescribing the limitations period for copyright claims cannot be altered by VBC's claimed inconvenience in reviewing its own records.  VBC had three (3) full years to review its records and bring this lawsuit based upon the detailed information it had in its possession.  Its failure to do so cannot be excused.[9]

VBC had information on the alleged infringements in its records.  This Court has explained,

> [t]he general discovery rule creates a disjunctive two-prong test of actual or constructive notice, under which the statute begins to run under either prong . . . The plaintiff is deemed to have had constructive knowledge if it had enough information to warrant investigation which, if reasonably diligent, would have led to discovery of the claim.

*Fahmy v. Jay-Z*, 835 F. Supp. 2d 783, 790 (C.D. Cal. 2011); *see also In re Napster, Inc. Copyright Litig.*, No. 00-1369, 2005 WL 289977, at *4 (N.D. Cal. Feb. 3, 2005) ("if a reasonable person would have become suspicious from knowledge obtained through initial prudent inquiry and would have investigated further, a plaintiff will be deemed to have knowledge of facts which would have been disclosed in a more extensive investigation.").  VBC had both actual <u>and</u>

---

[9] VBC's claims are also questionable because it has successfully filed numerous, similar actions based upon the same tracking software it now claims is obsolete or incapable of providing sufficient information to "discover" alleged infringements or the identity of alleged infringers <u>without</u> the aid of its <u>new</u> Log Data Miner.  *See, e.g., David Crook v. Ziff Brothers Investments*, Civ. Action No. 08-cv-1508 (C.D. Cal. 2008); *David Crook v. Samsung Networks, Inc.*, Civ. Action No. 08-cv-4492 (C.D. Cal. 2008); *David Crook v. Assurant*, Civ. Action No. 08-cv-7296 (C.D. Cal. 2008); *David Crook v. Autodesk*, Civ. Action No. 09-cv-3386 (C.D. Cal. 2009); *David Crook v. Harcourt Investment Consulting AG*, Civ. Action No. 09-cv-5899 (C.D. Cal. 2009); *David Crook v. ITT Corp.*, Civ. Action No. 10-cv-1156 (C.D. Cal. 2010); *David Crook v. Microsoft Corp.*, Civ. Action No. 10-cv-1624 (C.D. Cal. 2010); and *David Crook v. RC Systems, Inc.*, Civ. Action No. 10-cv-2336 (C.D. Cal. 2010).

DEFENDANTS' MOTION TO DISMISS

constructive knowledge of Defendants' alleged acts of infringement, and minimal investigation would have enabled VBC to timely bring its claims.

VBC has taken the position that two (2) key pieces of information alerted VBC to Exida and Christman's alleged acts of infringement: (1) the file name "exSILentia" that was allegedly converted was identified as an Exida product, and (2) several "@exida.com" email addresses, including Christman's, and Christman's username identified Exida. *See* Compl. ¶¶ 29, 38 & Dkt. No. 32, ¶ 14(b). VBC's Third Amended Complaint confirms this information was gleaned from its tracking software, which has been in place for at least seven (7) years, and not VBC's later developed Log Data Miner. This information was already in VBC's possession on or about the date of each alleged infringement summarized in VBC's "proofs" and three (3) years before this lawsuit was initiated. *See* Pl.'s Exhibit "E."

VBC's Third Amended Complaint makes clear that "Plaintiff's ***tracking system*** recorded that the conversions were dedicated to projects entitled 'exSILentiaWPF,' 'exSILentia2,' 'exSILentia3,' 'SILDoc,' and 'exidaQuotationTool.'" Compl. ¶ 38 (emphasis added). Additionally, VBC's Third Amended Complaint explains its ***tracking software*** provided all the information regarding Defendants' alleged infringement, including Christman's username ("jchristman") and several email addresses ending in "@exida.com." Compl. ¶¶ 26, 29, 31, Pl.'s Exhibit "E" & Dkt. No. 32, Crook Decl. ¶ 14(b). [10] David Crook confirms that he eventually conducted simple Google searches for "John Christman," "Exida" and "exSILentia" to discover the identity of Defendants, in order to bring this lawsuit. *See* Dkt. No. 32, Crook Decl. ¶ 17. The "discovery rule" only applies where a plaintiff could not learn of an ***infringement***. Thus, VBC

_____

[10] Although VBC does not identify this piece of information as important, VBC's ***tracking software*** also provided the computer name "***Exida*** – 100A3799C." Compl. ¶ 36(a) (emphasis added). This information alone is sufficient to identify Exida by a simple internet search.

had actual notice of the alleged acts of infringement almost instantaneous with their occurrence.

The information gathered by VBC's tracking software also provided VBC with constructive knowledge of the alleged infringements.  Minimal investigation would have led to discovery of these claims because Mr. Crook only had to conduct a handful of simple internet searches to determine that Exida and/or Christman were not licensees of VBC.  VBC did not need to invent the Log Data Miner to bring this lawsuit.  VBC cannot avail itself of the "discovery rule" because it did discover, or reasonably should have discovered with minimal investigation, all necessary information to put it on notice of the alleged infringements.

Even if VBC could not discover the identity of Defendants through simple internet searches, VBC could have availed itself of commonly-used civil procedures that are available to determine the identity of "unknown defendants."  The Ninth Circuit long ago held that when the defendants' identities are unknown at the time the complaint is filed, the court may grant the plaintiff leave to take early discovery to determine their identities.  *See, e.g., Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980) (remanding complaint to allow plaintiff to take discovery on identities of unknown defendants); *Malibu Media, LLC v. John Does*, No. 12-1061, 2012 U.S. Dist. LEXIS 99148, at *3-6, 11 (S.D. Cal. July 17, 2012) (permitting plaintiff to serve subpoena on internet service provider to determine identity of subscribers' through IP addresses related to the infringement).

VBC admits that it had the public and private IP addresses of Defendants' computers as well as their email addresses.  Compl. ¶¶ 26, 29, 31, Pl.'s Exhibit "E" & Dkt. No. 32, Crook Decl. ¶ 14(b).  VBC could have and, in fact, should have filed a "John Doe" action and requested leave to file discovery to ascertain the

1  identity of Defendants before the Statute of Limitations period closed instead of

2  waiting to develop the Log Data Miner.[11]

3      VBC cannot state any plausible claim for Copyright Infringement based upon

4  the five (5) acts accruing more than three (3) years before it filed suit because they

5  are barred by the applicable Statute of Limitations.

6  **D.    VBC Should Not Be Given Further Leave to Amend Because**

7  **Amendment Would Be Futile Given VBC'S Repeated Failure to**

8  **Cure Deficiencies Through Previous Amendments**

9      VBC has been given four (4) opportunities to successfully state a claim under

10  the Copyright Act and plead standing.  It has failed to do so in each instance.

11  Additionally, it is <u>impossible</u> for VBC to cure the fact that five (5) out of six (6)

12  acts of alleged infringement are barred by the Statute of Limitations.[12]  Granting

13  VBC further leave to amend would merely prolong the inevitable: the dismissal of

14  this lawsuit.  If VBC could plead facts establishing substantial similarity or could

15  allege that the Unregistered Software is comprised of derivative works of the

16  Registered Software, it would have already pleaded those facts.

17      Instead, VBC continues to offer legally irrelevant, semantic distinctions

18  about "versions," "enhancements" "upgrades," "updates," "patches" and works that

19  "derive their existence" from the Registered Software that are intentionally devoid

20  of facts concerning the similarity in the relevant codes.  Defendants have already

---

22  [11] VBC is obviously familiar with this procedure because it employs it in its
23  Third Amended Complaint to account for any additional alleged infringers it may
    discover.  Compl. ¶ 8.  Additionally, this procedure has been utilized in the
24  numerous litigations VBC/David Crook have filed since, at least, 2008.  *See*
    footnote 9 above.
25
26  [12] *Platt Elec. Supply, Inc. v. Eoff Elec., Inc.*, 522 F.3d 1049, 1060 (9th Cir.
    2008) (holding plaintiff's claims are barred by the Statute of Limitations and could
27  not be cured through amendment); *Rideau v. Greenberg*, No. 11-1698, 2013 U.S.
    Dist. LEXIS 97852, at *19 (C.D. Cal. Feb. 25, 2013) (holding further amendment is
28  futile because plaintiff's claims are time-barred).

spent significant time and resources discussing and briefing the inadequacies of each of VBC's four (4) complaints.  Defendants should not be required to expend any more of their resources educating and opposing VBC.

Although courts should freely give leave to amend when justice so requires, certain factors justify denying a Rule 15(a)(2) motion including undue delay, bad faith, dilatory motive, *repeated failure to cure deficiencies by amendments previously allowed*, undue prejudice to the opposing party by virtue of the allowance of the amendment and *futility of amendment*.  Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962) (emphasis added).  A court's "'discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint.'"  *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) (citation omitted).  "Repeated failure to cure deficiencies by previous amendments is an appropriate basis for dismissing the action with prejudice."  *In re: All Terrain Vehicle Litig.*, 771 F. Supp. 1057, 1061 (C.D. Cal. 1991) (dismissing case with prejudice because further amendment is futile where plaintiff had four failed opportunities to state a claim); *see also Allen*, 911 F.2d at 373 (affirming dismissal of action without leave to file fourth complaint where plaintiff repeatedly failed to state a claim).

In this circumstance, allowing further amendment of the Third Amended Complaint would be futile.  *See, e.g., Kauai Scuba Ctr., Inc. v. Padi Am., Inc.*, 524 Fed. Appx. 344, 347 (9th Cir. 2013) (holding leave to amend second amended complaint would be futile where plaintiff had "ample opportunity to cure the defects in its pleadings after [the court] point[ed] them out."); *Dutciuc v. Meritage Homes of Arizona, Inc.*, 462 Fed. Appx. 658, 660 (9th Cir. 2011) (affirming dismissal without leave to amend where plaintiff amended complaint three times and repeatedly failed to cure deficiencies); *Nicolosi Dist. Co. v. Finishmaster, Inc.*, No. 99-0927, 2000 U.S. Dist. LEXIS 505, at *12 (N.D. Cal. Jan. 13, 2000)

(denying further leave to amend as futile where plaintiff was given leave to amend twice and court specified the precise deficiencies for plaintiff to cure).

VBC has been given four (4) opportunities to state a claim under the Copyright Act and articulate VBC's standing to bring this lawsuit. This Court's Order of April 1, 2014 identified, in detail, the deficiencies in VBC's First Amended Complaint. Dkt. No. 46. This Court provided a detailed roadmap - complete with citation to relevant legal authorities – of how VBC should amend its First Amended Complaint to successfully plead copyright registration and ownership. *Id*. at pp. 15-8. Given this Court's clear guidance, VBC should have easily satisfied its pleading obligations. However, VBC has since filed Second and Third Amended Complaints neither of which adequately addresses the deficiencies raised by Defendants and this Court. At this stage, it is clear that giving VBC further leave to amend would be futile because it cannot plead registration and ownership of the Unregistered Software. Incidentally, VBC can very simply cure its registration and standing issues by registering the Unregistered Software and filing a lawsuit based upon those registrations.

Defendants respectfully request that VBC be denied further leave to amend the Third Amended Complaint and this case be dismissed with prejudice.

## IV.   **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that VBC's Third Amended Complaint be dismissed without leave to amend.

Dated:  May 30, 2014                         PEPPER HAMILTON LLP


/s/ Jeffrey M. Goldman
Jeffrey M. Goldman (SBN 233840)
*Attorney for Defendants,*
*EXIDA.COM, LLC and JOHN*
*CHRISTMAN*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document NOTICE OF MOTION AND MOTION TO DISMISS THIRD AMENDED COMPLAINT was served via the electronic court filing system on May 30, 2014 on the following:

Donald M. Gindy, Esquire
Law Offices of Donald M. Gindy
1925 Century Park East, Suite 650
Los Angeles, CA 90067

*Attorney for Plaintiff, VBConversions, LLC*

/s/ Jeffrey M. Goldman
Jeffrey M. Goldman (SBN 233840)

# EXHIBIT "1"

EXHIBIT  1 - PAGE 23

Jeffrey M. Goldman, Esq. (SBN 233840)
**PEPPER HAMILTON LLP**
4 Park Plaza, Suite 1200
Irvine, CA 92614-5955
Tel.: 949.567.3500
Fax: 949.863.0151
Email:goldmanj@pepperlaw.com

and

M. Kelly Tillery, Esq.[1]
Megan M. Kearney, Esq.[1]
**PEPPER HAMILTON LLP**
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
Tel: 215.981.4000
Fax: 215.981.4750
Email: tilleryk@pepperlaw.com
Email: kearneym@pepperlaw.com

*Attorneys for Defendants,*
*EXIDA.COM, LLC and JOHN CHRISTMAN*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

| | |
|---|---|
| VBCONVERSIONS, LLC,<br><br>   Plaintiff,<br><br>vs.<br><br>EXIDA.COM, LLC, JOHN CHRISTMAN, DOES 1-10, INCLUSIVE,<br><br>   Defendants. | CIVIL ACTION NO. 2:13-cv-08306-PSG-JEMx<br><br>United States District Judge Philip S. Gutierrez<br><br>Magistrate Judge John E. McDermott<br><br>**DECLARATION OF IWAN VAN BEURDEN** |

[1]*Pro Hac Vice* Applications to be filed.

DECLARATION OF IWAN VAN BEURDEN   1   2:13-CV-08306-PSG-JEMX

**EXHIBIT 1 - PAGE 24**

I, Iwan van Beurden, being duly sworn according to law, depose and state as follows:

1.     I am Director of Engineering for Exida.com, LLC ("Exida") and am authorized to make this Declaration on its behalf.

2.     Exida is a Pennsylvania limited liability company located in Bucks County that is a leading authority on functional safety.

3.     It develops its own software to assist its customers with safety and security-related issues.

4.     Exida is sensitive to and respectful of the intellectual property rights of others.

5.     After investigating VBConversions, LLC's allegations of Copyright Infringement, it was determined that Mr. John Christman ("Christman"), an Exida employee, may have downloaded "Trial Versions" of certain software programs designed to convert Visual Basic language to C# language.

6.     Mr. Christman was not acting within the scope of his employment when he downloaded any software conversion programs.

7.     He was never instructed to convert any Exida code from Visual Basic language to C# language and there was no company directive to do so.

**EXHIBIT 1 - PAGE 25**

8.   Exida does not use C# language in any of its software products.

9.   Exida does not have any offices or salespeople in California, nor is it a registered corporation in California.

10.  Exida has only one (1) client in California.

I certify, under penalty of perjury, that the foregoing facts stated in this Declaration are true and correct and based upon my personal knowledge.  I am competent to testify upon the matters stated herein.   I understand that false statements made herein are made subject to the penalties of Title 28 U.S.C. §1746.

Iwan van Beurden

Dated:  January 27, 2014

EXHIBIT  1 - PAGE 26

# EXHIBIT "2"

**EXHIBIT  2 – PAGE 27**

1  Jeffrey M. Goldman, Esq. (SBN 233840)
   PEPPER HAMILTON LLP
2  4 Park Plaza, Suite 1200
   Irvine, CA 92614-5955
3  Tel.: 949.567.3500
   Fax: 949.863.0151
4  Email:goldmanj@pepperlaw.com

5  and

6  M. Kelly Tillery, Esq.[1]
   Megan M. Kearney, Esq.[1]
7  PEPPER HAMILTON LLP
   3000 Two Logan Square
8  Eighteenth and Arch Streets
   Philadelphia, PA 19103-2799
9  Tel: 215.981.4000
   Fax: 215.981.4750
10 Email: tilleryk@pepperlaw.com
   Email: kearneym@pepperlaw.com
11

12 *Attorneys for Defendants,*
   *EXIDA.COM, LLC and JOHN CHRISTMAN*
13

14                UNITED STATES DISTRICT COURT
   CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION
15

16 VBCONVERSIONS, LLC,              CIVIL ACTION NO. 2:13-cv-08306-PSG-
                                    JEMx
17              Plaintiff,
                                    United States District Judge Philip S.
18      vs.                         Gutierrez

19 EXIDA.COM, LLC, JOHN             Magistrate Judge John E. McDermott
   CHRISTMAN, DOES 1-10,
20 INCLUSIVE,                       **DECLARATION OF JOHN
                                    CHRISTMAN**
21              Defendants.

22

23

24

25

26

27

28
   ―――――――――――――――
   [1]*Pro Hac Vice* Applications to be filed.

   DECLARATION OF JOHN CHRISTMAN        1        2:13-CV-08306-PSG-JEMX

I, John Christman, being duly sworn according to law, depose and state as follows:

1.    I am an employee of Exida.com, LLC ("Exida") with the title of Lead Software Engineer.

2.    I am a resident of Pennsylvania and reside in Montgomery County.  I own no property in California and have only traveled to California once on business approximately seven (7) years ago for one (1) day, which was completely unrelated to this lawsuit.

3.    I may have downloaded "Trial Versions" of certain software programs designed to convert Visual Basic language to C# language.

4.    I was not acting within the scope of my employment when I downloaded any software conversion programs.

5.    I was never instructed by anyone at Exida to convert any Exida code to C# language and there was no company directive to do so.

6.    I downloaded certain conversion software because I was curious if such software was effective in converting source code.

7.    I have no recollection if the conversion software I downloaded was in any way related to VBConversions, LLC ("VBC").

8. I do not recall visiting VBC's website.

9. Prior to this lawsuit, I did not know where VBC's principal place of business was located or that any harm would result to VBC in that state.

10. I have no recollection of being prompted or required to assent to or affirm any End User License Agreement ("EULA").

11. I recall running some lines of code through a conversion program and receiving results that were unusable. The conversion results had so many errors that I determined that this program was not an effective conversion tool and deleted the program from my computer.

12. I later downloaded newer "Trial Versions" to determine if the conversion software had improved from my last trial run.

13. I ran some lines of software code through the program and, again, received unusable results replete with errors.

14. After determining that the conversion software had not improved, I deleted the "Trial Versions" from my computer.

15. I currently have no conversion software on any of my computers. I deleted the "Trial Versions" after determining they yielded unusable results.

16. No Exida source code was ever converted from Visual Basic language to C# language using any conversion software.

17. If the software had worked, I may have recommended that Exida purchase it. Because it did not work, I did not.

I certify, under penalty of perjury, that the foregoing facts stated in this Declaration are true and correct and based upon my personal knowledge. I am competent to testify upon the matters stated herein. I understand that false statements made herein are made subject to the penalties of Title 28 U.S.C. §1746.

John Christman

Dated: January 27, 2014

DECLARATION OF JOHN CHRISTMAN          4          2:13-CV-08306-PSG-JEMX

# EXHIBIT "3"

EXHIBIT  3 - PAGE 32



VBConversions Products

United States



### VBConversions VB.Net to C# Converter    **$199.00**

Quantity  1

VBConversions is the best VB.Net to C# Converter on the market. It will convert your VB.Net code to C# with over 99% accuracy.

The VBConversions VB.Net to C# Converter won the coveted Visual Studio Magazine Reader's Choice Award, developer tools category. It was chosen by real world developers in the field just like you.

Immediately after purchase, an unlock code will be emailed to you which will turn the evaluation version into a fully functional licensed version.

## Order Details

### Contact Information

**First and Last Name**

**Email Address**

**Company**

Double check that you've entered your email address correctly. We will send order information to it.

**Phone**

### Mailing Address

**Country**

United States

**City**

**Address**

**State**

Choose

**Zip Code**



Home | Download | FAQ | Purchase | Awards / Testimonials | Contact Us

# Download



**Home**
**Download**
**FAQ**
**Purchase**
**Awards / Testimonials**
**Contact Us**



**Testimonial**

*We intensively tested 6 products...this is absolutely the best tool for the job.*

*Mike Kelly*
*Sr. Developer*
*The Select Group*
**Testimonial**

*I really love your software. Its works fantastically well.*

*Lisa Shanley, Ph.D.*
*President*
*Wild Ginger Software, Inc.*

**Download Version 3.07 (official release), 8MB, released 12/13/2013.**
What's new in 3.07 Report problems with this release

**Download Version 3.06 (prior release), 8MB, released 9/25/2013.**
What's new in 3.06 Report problems with this release

**Uninstall instructions:**

(Note - New versions will install side by side with previous versions. No uninstall of the older version is necessary to use a newer version.)

Start Menu->All Programs->VBConversions->VB.Net to C# Converter x.xx->VB.Net to C# Converter x.xx Uninstaller

Download user manual: PDF (4MB) | Windows Help (2MB) | Online HTML

View End User License Agreement (EULA)



Home | Download | FAQ | Purchase | Awards / Testimonials | Contact Us

# Download

Home
**Download**
FAQ
Purchase
Awards / Testimonials
Contact Us



**Testimonial**

*We intensively tested 6 products...this is absolutely the best tool for the job.*

*Mike Kelly*
*Sr. Developer*
*The Select Group*

**Testimonial**

*I really love your software. Its works fantastically well.*

*Lisa Shanley, Ph.D.*
*President*
*Wild Ginger Software, Inc.*

**Download Version 3.09 (official release), 8MB, released 3/9/2014.**
What's new in 3.09 Report problems with this release

**Download Version 3.08 (prior release), 8MB, released 1/20/2014.**
What's new in 3.08 Report problems with this release

**Uninstall instructions:**

(Note - New versions will install side by side with previous versions. No uninstall of the older version is necessary to use a newer version.)

Start Menu->All Programs->VBConversions->VB.Net to C# Converter x.xx->VB.Net to C# Converter x.xx Uninstaller

Download user manual: PDF (4MB) | Windows Help (2MB) | Online HTML

View End User License Agreement (EULA)

Copyright 2004-2014 VBConversions LLC

**EXHIBIT 3 – PAGE 35**

# EXHIBIT "4"

EXHIBIT  4 - PAGE 36



| Help | Search | History | Titles | Start Over |

## Public Catalog

Copyright Catalog (1978 to present)
Search Request: Left Anchored Name = vbconversions
Search Results: Displaying 1 through 2 of 2 entries.

◀ previous    next ▶

Resort results by: [        ▼]                                    Set Search Limits

| # | Name (NALL) < | Full Title | Copyright Number | Date |
|---|---------------|------------|------------------|------|
| ☐ [ 1 ] | VBConversions LLC | Assignment of Rights. | TX0007317237 | 2010 |
| ☐ [ 2 ] | VBCONVERSIONS LLC | VB.Net to C# Converter, Version 3.0. | TX0007608975 | 2012 |

Resort results by: [        ▼]                                    Set Search Limits

Clear Selected    Retain Selected

◀ previous    next ▶

| Save, Print and Email (Help Page) | | |
|---|---|---|
| Records | Select Format: Full Record ▼  Format for Print/Save | |
| ☐ All on Page | Enter your email address: | Email |
| ☑ Selected On Page | | |
| ☐ Selected all Pages | | |

Search for: vbconversions       Search by: Name (Crichton Michael; Walt Disney Company) ▼  Item type: None ▼
[25 records per page ▼]                 Submit   Reset

Help   Search   History   Titles   Start Over

Contact Us | Request Copies | Get a Search Estimate | Frequently Asked Questions (FAQs) about Copyright | Copyright Office Home Page
| Library of Congress Home Page

**EXHIBIT 4 - PAGE 37**



**Help     Search     History     Titles     Start Over**

## Public Catalog

Copyright Catalog (1978 to present)
Search Request: Left Anchored Name = crook, david
Search Results: Displaying 1 through 20 of 20 entries.

◀ previous    next ▶

Resort results by: [                    ▼]          Set Search Limits

| # | Name (NALL) < | Full Title | Copyright Number | Date |
|---|---------------|------------|------------------|------|
| [ 1 ] | Crook, David | Big brother book of lists / Robert Ellis Smith, Deborah Caulfield, David Crook, and Michael Gershman ; cartoons by Bill Mauldin and Paul Conrad. | TX0001351909 | 1984 |
| [ 2 ] | Crook, David | Complete motets : 15, Cantica sacra sex et octo vocibus / Orlando di Lasso ; edited by David Crook. | PA0000972008 | 1999 |
| [ 3 ] | Crook, David | Complete motets 16 : Cantiones sacrae sex vocum (Graz, 1594) / Orlando DiLasso ; edited by David Crook. | PA0001144605 | 2002 |
| [ 4 ] | Crook, David | Portrait of a hero, William Orlando Darby / editors, Chris Boerner, Tuyen Le, Beth Haynes ... [et al.] ; advisor, Trolene P. Dodd. | TXu000280003 | 1987 |
| [ 5 ] | Crook, David | Routledge International Encyclopedia of Education. | TX0007106500 | 2008 |
| [ 6 ] | Crook, David | Sacrae cantiones for four voices (Munich, 1585) / Orlando DiLasso ; edited by David Crook. | PA0000842842 | 1997 |
| [ 7 ] | Crook, David | Ten Mile Inn : mass movement in a Chinese village / by Isabel and David Crook. | TX0000301363 | 1979 |
| [ 8 ] | Crook, David | Twin barrels burning : collection of songs. | PAu001479108 | 1991 |
| [ 9 ] | Crook, David, 1957- | Orlando Di Lasso's imitation magnificats for counter-reformation Munich / David Crook. | TX0003979497 | 1994 |
| [ 10 ] | Crook, David, 1964- | VB.Net to C# converter 1.x. | TX0006285849 | 2004 |
| [ 11 ] | Crook, David, 1964- | VB.NET to C# converter, version 2.0. | TX0006425720 | 2006 |
| [ 12 ] | crook, david a | Assignment of Rights. | TX0007317237 | 2010 |
| [ 13 ] | Crook, David A., 1964- | VB.NET to J# converter 1.X. | TXu000134298 | 2007 |
| [ 14 ] | Crook, David B. | Role obligations of adult college students and the effects of roles on postsecondary educational careers. | TX0004448001 | 1997 |
| [ 15 ] | Crook, David F., 1949- | Six, six, six. | TXu000191314 | 1985 |
| [ 16 ] | Crook, David F., 1949- | Wager! / By Bill Wootton [i.e. William Max Wootton] & David Dahl [pseud. of David Crook] | TXu000156506 | 1984 |
| [ 17 ] | Crook, David Frederick, 1949- | Star warriors / David Dahl [pseud. of David Frederick Crook] | TXu000128834 | 1983 |
| [ 18 ] | Crook, David Frederick, 1949- | Triad galactica. | TXu000174527 | 1984 |
| [ 19 ] | Crook, David Frederick, 1949- | Warrior. | TXu000181041 | 1984 |
| | | Orlando DiLasso's Magnificats ad imitationem. | TX0003326137 | 1991 |

**EXHIBIT  4 - PAGE 38**

| [20] | Crook, David W., 1957- | | | |
|------|------------------------|--|--|--|

**Resort results by:** [dropdown]

Set Search Limits

Clear Selected | Retain Selected

◄ previous | next ►

| **Save, Print and Email (Help Page)** | | |
|---|---|---|
| **Records** | Select Format: Full Record [dropdown] | Format for Print/Save |
| ○ All on Page | Enter your email address: | Email |
| ● Selected On Page | | |
| ○ Selected all Pages | | |

Search for: crook, david   Search by: Name (Crichton Michael; Walt Disney Company) [dropdown]   Item type: None [dropdown]

25 records per page [dropdown]

Submit | Reset

Help   Search   History   **Titles**   Start Over

Contact Us | Request Copies | Get a Search Estimate | Frequently Asked Questions (FAQs) about Copyright | Copyright Office Home Page | Library of Congress Home Page

**EXHIBIT  4 - PAGE 39**



**Help**    **Search**    **History**    **Titles**    **Start Over**

## Public Catalog

Copyright Catalog (1978 to present)
Search Request: Left Anchored Title = vb.net
Search Results: Displaying 1 through 11 of 11 entries.

◀ previous   next ▶

Resort results by: [＿＿＿＿＿＿▼]                                    Set Search Limits

| # | Title < | Full Title | Copyright Number | Date |
|---|---------|-----------|------------------|------|
| ☐ [ 1 ] | VB.NET for developers / Keith Franklin ; edited by Rebecca Riordan. | VB.NET for developers / Keith Franklin ; edited by Rebecca Riordan. | TX0005391032 | 2001 |
| ☐ [ 2 ] | VB.NET language in a nutshell: a desktop quick reference / By Steven Roman, Ron Petrusha & Paul Lomax. 1st ed. DCR 2001. TX 5-462-843 (2001) | VB.NET language in a nutshell: a desktop quick reference / By Steven Roman, Ron Petrusha & Paul Lomax. 1st ed. DCR 2001. TX 5-462-843 (2001) | V3509D232 | 2004 |
| ☐ [ 3 ] | VB.NET language in a nutshell: a desktop quick reference / By Steven Roman, Ron Petrusha & Paul Lomax. 1st ed. DCR 2001. TX 5-462-843 (2001) | VB.NET language in a nutshell: a desktop quick reference / By Steven Roman, Ron Petrusha & Paul Lomax. 1st ed. DCR 2001. TX 5-462-843 (2001) | V3506D021 | 2003 |
| ☐ [ 4 ] | VB.NET language in a nutshell : a desktop quick reference / Steven Roman, Ron Petrusha, & Paul Lomax. | VB.NET language in a nutshell : a desktop quick reference / Steven Roman, Ron Petrusha, & Paul Lomax. | TX0005462843 | 2001 |
| ☐ [ 5 ] | VB.NET language : pocket reference | VB.NET language : pocket reference / Steven Roman, Ron Petrusha, and Paul Lomax. | TX0005893013 | 2002 |
| ☐ [ 6 ] | VB.NET professional projects / By John Stough. | VB.NET professional projects / By John Stough. | V3479D050 | 2002 |
| ☐ [ 7 ] | VB.NET services : exam-pack 70-310. | VB.NET services : exam-pack 70-310. | PA0001213342 | 2003 |
| ☐ [ 8 ] | VB.Net to C# converter 1.x. | VB.Net to C# converter 1.x. | TX0006285849 | 2004 |
| ☐ [ 9 ] | VB.NET to C# converter, version 2.0. | VB.NET to C# converter, version 2.0. | TX0006425720 | 2006 |
| ☐ [ 10 ] | VB.Net to C# Converter, Version 3.0. | VB.Net to C# Converter, Version 3.0. | TX0007608975 | 2012 |
| ☐ [ 11 ] | VB.NET to J# converter 1.X. | VB.NET to J# converter 1.X. | TXu000134298 | 2007 |

Resort results by: [＿＿＿＿＿＿▼]                                    Set Search Limits

Clear Selected    Retain Selected
◀ previous   next ▶

| **Save, Print and Email (Help Page)** | |
|---|---|
| **Records** | Select Format: [ Full Record ▼ ]  Format for Print/Save |
| ○ All on Page | |
| ● Selected On Page | Enter your email address: [＿＿＿＿＿＿] Email |
| ○ Selected all Pages | |

Search for: vb.net         Search by: Title (omit initial article A, An, The, El, La, Das etc.) [▼]  Item type: None [▼]

**EXHIBIT 4 - PAGE 40**

# EXHIBIT "5"

EXHIBIT  5 - PAGE 41

~~FIRST~~**THIRD** AMENDED COMPLAINT

COMES ~~NOW~~**now**, Plaintiff, VBConversions LLC, a California limited liability company, which alleges that ~~Defendants~~**Defendant** Exida.com LLC, a Pennsylvania limited liability company also known as Exida and Exida LLC, John Christman, an individual, are liable to it for copyright infringement, contributory copyright infringement, vicarious copyright infringement and violation of the Digital Millennium Copyright ~~Act~~**Ac**, §1201 (a) in connection with ~~Plaintiff's~~**Plaintiffs** copyrighted software entitled VB.Net to C# Converter. ("C#~~²~~ is ~~pronounce~~**pronounced** "C Sharp".) This action is based upon ~~a~~ federal question and seeks damages and injunctive relief upon Defendants' unauthorized access, copying and usage of Plaintiff's copyrighted software.

## JURISDICTION AND VENUE

1.      This action arises under the Copyright Act of the United States 17 U.S.C. §101 and §501, et seq. and the Digital Millennium Copyright Act, 17 U.S.C. §1201 (a). This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1338(a). Jurisdiction is further founded upon ~~the~~ Defendants~~'~~**'** acceptance of a licensing agreement in connection with use of VB.Net to C# Converter, whereby the parties agree to subject themselves to the personal jurisdiction of the courts of the State of California.

2.      Venue is proper in this District pursuant to 28 U.S.C. §1391(b) & §1400(a). Venue is also proper as the result the Defendants' acceptance of the above-mentioned licensing ~~agreement's~~**agreements'** forum-selection clause which designates the County of Los Angeles, State of California, as the location for hearing any dispute arising in relation to use of the program. (See *Atlantic Marine Construction Company v. United States District ~~Court~~court for the Western District of Texas,* 571 U.S. ~~––~~ (Dec. 3, 2013))

**EXHIBIT  5 - PAGE 42**

**PARTIES**

3.     VBConversions LLC (hereinafter "VBC") is a California limited liability company, with its principal place of business located in Santa Monica, California. VBC is ~~a~~ software developer and ~~engages~~**engage** in the licensing of its software products on the Internet.

4.     Plaintiff is informed and believes and thereon alleges that Exida.com LLC ("Exida") is a Pennsylvania limited liability company with its principal place of business located at 64 North Main Street, Sellersville, PA ~~18960,~~**18960.** On information and belief, Plaintiff alleges that Exida is a consultant and provider of safety solutions for business.

5.     Plaintiff is informed and believes and thereon alleges that all relevant times, John Christman, was an employee of Exida acting within the course of his employment with the title of computer programmer.

6.     Plaintiff is informed and believes and thereon alleges that at all times mentioned herein Defendants, and each of them, have engaged in and continue to engage in the purchase and/or sale of goods and services within the County of Los Angeles, State of California and have generally directed their activities at California.

7.     Plaintiff is unaware of the ~~names~~**name** and true capacities of Defendants, whether individual, corporate and/or partnership entities, named herein as DOES 2 through 10, inclusive, and therefore sues them by their fictitious names. Plaintiff will seek leave to amend this complaint when their true names and capacities are ascertained. Plaintiff is informed and believes and thereon alleges that all of the Defendants, known and unknown, are in some manner responsible for the wrongs alleged herein and that at all times mentioned herein were the agents and servants or joint venturers/~~-~~partners-in-concert of the other Defendants, and acted within the course and scope of said agency and employment or within the parameter of their agreement.

- 2-

**EXHIBIT  5 - PAGE 43**

8.      Plaintiff is informed and believes and thereon alleges that at all times relevant hereto, Defendants and DOES 2-10, inclusive, knew or reasonably should have known of the acts and behavior alleged herein and the damages caused thereby, and by their inaction ratified and ~~encouraged~~**courage** such acts and behavior.

## GENERAL ALLEGATIONS

### Background

9.      Visual Basic (VB) is a computer programming language developed and sold by Microsoft Corporation since as early as 1991. Historically, it has been among the most popular programming languages for use in business programming and has long ~~had~~**has** one of the largest user bases of any programming language. There is, therefore, a vast amount of software that has been developed over the years in VB. Many of these VB programs are of significant complexity and size.

10.     In or around 2001, Microsoft Corporation introduced an "evolved" version of Visual Basic called Visual Basic .Net (VBN) oriented towards modern, Internet programming tasks.

11.     Since 2000, however, the language C#, **is** also developed by Microsoft Corporation (but adopted as an international standard) has taken the place of VB for much business programming, particularly that oriented toward the Internet. C# is intended to be a simple, modern, general-purpose, programming language. The language is intended for use in developing software components suitable for deployment in many different environments. For instance, while VB and VBN are largely limited to the Windows operating system, C# compilers exist for most major computer operating systems, including Mac OS, Linux, Windows, Solaris, etc. C# is suitable for writing applications for both hosted and embedded systems.

**EXHIBIT  5 - PAGE 44**

**The Copyrighted Software**

12.     Because of the large body of legacy software existing in VB and VBN, companies seeking to modernize their software often find that it is most practical to undertake a process of converting their existing VBNBN code to C#. Paying a programmer to make the conversion line-by-line by hand can be extremely costly.

13.     In particular, Plaintiff is informed and believes and thereon alleges that a skilled computer programmer having substantial familiarity with both VB/VBN and C# and working purely by hand, could, at best, convert 100 lines per hour from VB/VBN to C#.

14.     In light of this challenge, plaintiff has developed the Program, VB.Net to C# Converter, to automate the conversion process. The program is designed to enable converting from VB to C# at a significantly lower cost and much more rapidly.

15.     Version 2.0, of VB.Net to C# Converter ("the ~~Copyrighted~~**Copyright** Software.") was registered with the Register of Copyrights in 2006, and was assigned registration TX 0006425720. A true and correct copy of the registration certificate is attached hereto as Exhibit "A," and is incorporated by reference. On September 1, 2010, the original author of the Copyrighted Software conveyed and granted to all of his right, title and interest in and accrued causes of action to VBConversions LLC. A copy of the assignment is attached hereto and incorporated by reference as Exhibit "~~E~~**B**." Moreover, the Assignment was registered with the Registrar of Copyrights on March 14, 2011 and given the registration number of TX0007317237. A copy of the Public Catalog of said registration is attached hereto as Exhibit "~~F~~**C**."

**The Licensing of the Copyrighted Software**

16.     VBC licenses the Copyrighted Software online at the Internet web site ~~vbconversions~~**vbcon version**.com.

- 4 -

**EXHIBIT  5 - PAGE 45**

17.     When the Copyrighted Software is downloaded and run, the user must affirm an End User Licensing Agreement ("EULA") before the program can be used. A true and correct copy of the EULA is attached hereto as Exhibit "~~B~~**D**," and is incorporated by reference.

18.     In spite of the complexity of the system, the Copyrighted Software is licensed under extremely reasonable terms. VBC employs the so-called shareware model, whereby an interested user is permitted to download a time and line limited version of the Copyrighted Software in order to test it to see if it is suitable for his or her needs.

19.     As initially downloaded, the Copyrighted Software may be used for up to fifteen (15) days. When this time limit is reached, the Copyrighted Software is disabled and ceases to function. Further, before it is unlocked, the Copyrighted Software ~~will only~~**is disabled and ceases to** function to convert VB/VBN projects consisting of up to two-thousand (2,000) lines of code. It will not process larger projects. (Shareware programs offered in such time or function limited forms are often referred to as "trialware" or "~~demoware.")~~**demoware.") (**~~See *37*~~**see 37,** C.F.R. §~~~~201.26)

20.     If the user is satisfied with the Copyrighted Software and wishes to continue to use it beyond the time and scope limitations applied to free use, the EULA requires the user to apply for a full-use license by paying the standard market fee. At that point, the user is provided an "unlock code" (or key) that removes the restrictions in the Copyrighted Software.

**Cracking and Warez Sites and Unlicensed Use**

21.     Unfortunately, a broad array of so-called "cracking sites" have appeared on the internet that are capable of generating and providing users with unauthorized unlock ~~codes~~**code** for the Copyrighted Software and many other programs offered in the trialware/demoware model. These sites supply the decryption of registration keys to developers'

**EXHIBIT  5 - PAGE 46**

software and enable fraudulent registration codes to be used in order to gain unlicensed unlimited access to the subject program.

22.     A similar number of so-called "warez sites" have sprung ~~up~~ offering already-cracked copies of copyrighted programs for download and use.

23.     Despite its best efforts, VBC has not been able to stem the tide of unscrupulous users who have used these means to gain unauthorized, unlicensed and unlimited access to the ~~Copyrighted~~**Copyright** Software.

24.     Such users have used ~~the~~ Copyrighted Software without license (and without any payment to VBC) to quickly convert vast ~~amounts~~**amount** of VB/VBN code to ~~the~~**be** more modern and desirable C#~~,~~**.** Such users thereby obtain significant financial benefit through their illicit, unlicensed infringing use.

### Collection of Information Concerning Infringement**.**

25.     In self-defense, VBC has adopted a tracking system whereby the Copyrighted Software reports its use to VBC's servers and to servers maintained by a third-party registration-tracking company, Hitek Software LLC of Goleta, CA ("Hitek").

26.     VBC is, thereby, able to identify the date and time of the unlicensed use, the public and private IP address of the computer on which the unlicensed use occurs, the false key used to unlock the software, the identity of the user of that computer, the owner or organization responsible for operating the computer, and other data which ~~is~~ integral to proof of infringement**.**

27.     The collection of this usage data by the Copyrighted ~~Software~~**software** and its transmission to VBC and Hitek is ~~acknowledged~~**acknowledge** and affirmed by the user as part of the EULA when the Copyrighted Software is first used.

**EXHIBIT  5 - PAGE 47**

28.     Notwithstanding the tracking system, there are almost 400,000 entries in the VBC logs, which is far more than can be reviewed manually. Despite reviewing logs on a daily basis, reliance must be placed on automated scans of certain reliable fields, such as Internet Service Provider (ISP) Names, User Names, and Unlock Codes, among others.

29.     The primary piece of information which identified Exida as an infringer was an email address detected on the users' computers. In this case, the ISP Name **was** Verizon, the user names were "jchristman" and "administrator", and the codes were all issued to legitimate customers. However, this information alone did not ' alert VBC that Exida bore liability to it.

30.     The acts of infringement are spread among between four different Internet Protocol addresses and three different computers. It was only after VBC created a novel process for data mining that the logs were developed and the data was combined that the infringement was discovered. The novel process which uncovered Exida was used on or about December 12, 2012. A manual review of the logs and normal automated scans would not have revealed Exida's presence.

31.     Multiple email addresses were detected on the computers, including for example, rebelzoo75@*gmailcom***gmail.com**. The new data mining process combined all of the email addresses into one field in the VBC logs. The new process parses out the multiple email addresses per line and groups them by the ~~Second~~**second** Level Domain ~~Name~~**name** of the email address, i.e., that portion after the @, such as exida.com or *gmail***gamil**.com. It was only after the new process was enacted, that the Exida case was discovered. [The .com, .net or .org are customarily referred to as Top Level Domain Names.]

**EXHIBIT  5 - PAGE 48**

32.     Accordingly, those illegal conversions that occurred prior to November 15, 2010, could not reasonably have been discovered had the new combining process not been developed.

**SPECIFIC ~~ALLEGATIONS~~ALLEGATION OF DEFENDANTS[¹] INFRINGEMENT**

33.     Plaintiff has collected information demonstrating that Defendants have used the Copyrighted Software with a fraudulent unlock code to generate more than Five Hundred Forty One Thousand One Hundred Fifty (541,150) lines of C# code.

34.     The Program proves its invaluable nature to programmers in the following manner. Even if a programmer could sustain a 100-line per hour manual translation rate over a long period, plaintiff alleges it would take more than 5,411 programmer hours to accomplish such a conversion. The average worker at 40 hours per week would accumulate about 2,000 hours per year (with a two week vacation). Thus, it would require more than two and one-half years to do the same task, starting from scratch, that plaintiff's program can accomplish in a ~~matter~~manner of hours.

35.     The specific ~~Information~~information related to the unlicensed infringing use is set forth below.

**The Group of Infringements.**

36.     The actual dates and times of infringement are, as follows:

a.) On January 3, 2009, at 11:39 a.m., the user converted VB into 98,742 lines of C# by reason of his illegal use of plaintiff's program at Version 2.0. At 12:10 p.m., another 98,742 lines were converted. The computer name - **EXIDA-**~~10OA~~**100 A**3799C. The fraudulent key that unlocked the software is P77151006CAM2R6591Y6EC067. The owner is Exida. The user is Administrator.

- 8-

**EXHIBIT  5 - PAGE 49**

b.) On December 1, 2009, ~~at~~ 2:31 p.m., the user illegally converted Visual Basic lines into 112,470 lines of C#. The computer name - **JMC7.** The fraudulent key that unlocked the software is P3~~B0E~~**BOE**-S4167-~~2l7~~**217**B5-KA976-G208F. ~~The user is jchristman.~~

c.) On December 4, 2009, at 2:12 p.m., the user illegally converted Visual Basic lines into 39,022 lines of C# on computer **JMC7.** The fraudulent key used to unlock the software is identical to that mentioned above. The same ~~user~~ is jchristman.

d.) On December 10, 2009, at 9:15 and at 9:40 a.m., the user illegally converted Visual Basic lines into ~~81,930~~**81,910** lines of C# on computer **JMC7.** The fraudulent key is identical to that of December 1 and **December** 4. The user is **once** again jchristman.

e.) On December 21, 2009, once again the data reflects identical information as above for that computer known as **JMC7.**

f.) On November 15, 2010, ~~at~~ 10:58 ~~am~~**a.m.**, the user converted 106,921 lines into C#. Version ~~2.29~~**2.0** of the software ~~was~~ installed on a computer owned ~~by defendant~~**bydefendant**, Exida. The computer name is **JMC-M4400.** The user is named jchristman. A new and different fraudulent key was used by the user to unlock the software, to wit, P0S65-~~8OU92~~-**80U920**DJ239-2500H-5Q828.

**g.) Certain exhibits to the Second Amended Complaint refer to updates (or patches) of the Registered Version, Version 2.0 ("the Software"). (*See* Exhibit E). These updates represent small enhancements to the Registered Version and therefore derive their existence from Version 2.0. The copyright to the updates noted as 2.19, 2.25 and 2.29 is owned by and belongs to VBC.**

**h.) These upgrades were not registered at the time of the alleged infringements and VBC does not rely exclusively upon them to establish copyright**

- 9-

EXHIBIT  5 - PAGE 50

infringement. Rather, the updates to the Software noted as 2.19, 2.25 and 2.29 do not function separately from the Software itself. The upgrades enhance the functionality of the Software included in the registered version of the Software. There is no discrepancy between the Software and its upgrades and they are *substantially similar* to it. In short, there is no way to have used these enhancements without also using the underlying registered Software, Version 2.0. Because the use of the Software by Defendants was unauthorized as herein alleged, a violation of plaintiff's copyright occurred.

i.) Visual Studio is Microsoft's VB.Net and C# programming tool and they released versions of it in 2003, 2005, 2008, 2010, 2012, and 2013. VBC's Version 2.0 was a major release which included support for Visual Studio 2005. The updates mentioned above derive from Registered Version 2.0 and all are inclusive of the entire source code found in that version.

Update 2.19 provides increased performance, corrects minor bugs in version 2.0 and adds support for Visual Studio 2008.

Update 2.25 provides minor corrections to Version 2.0 as well as support for Visual Studio 2010;

Update 2.29 also provides minor bug fixes and performance enhancements.

i.) The updates identified above are mentioned only to plead with particularity the time and manner in which the infringing activity occurred. They describe where the defendants were found when discovered by plaintiff. Specifically, the user of computer Exida-100A3799C was using the update at 2.19; the user of computer JMC7 was using the update at 2.25 when identified by plaintiff; and, the user of JMC-M4400 was found at 2.29.

-10-

EXHIBIT  5 - PAGE 51

**j.) It is Registered Version 2.0 which plaintiff asserts has been violated by defendants in that its Exclusive Rights of Reproduction and Preparation of a Derivative Work have been infringed. Upon information and belief, plaintiff thereon alleges that defendants copied and adapted Version 2.0 to the needs of Exida.com and, in so doing, violated the rights and remedies of VBC found at 17 U.S.C. §106(1&2) and §501 et seq. It is the unauthorized use of Version 2.0, which was registered with the Register of Copyright preceding the alleged infringements (Parag. 15, supra), which is the basis of plaintiff's claims. Plaintiff references the identified updates for the sole purpose of proving that a violation of Version 2.0 occurred. Unauthorized use of the updates *themselves* is not a component of plaintiff's infringement action.**

37.     In each and every instance mentioned above, the user illegally reproduced and adapted the ~~software~~**registered version of the program, Version 2.0,** for the benefit of his employer. The keys were not issued by VBC to the defendants. They are unauthorized codes whose sole purpose is to decrypt developer's software and unlock programs to unlimited use without the knowledge or consent of plaintiff.

38.     Moreover, detected by plaintiff was the purpose of the wrongful conversion. Plaintiff's tracking system recorded that the conversions were dedicated to ~~vb~~**VB** projects entitled "exSILentiaWPF," "exSILentia2," "exSILentia3," "SILDoc," and "exidaQuotationTool." Silentia is one of Exida's major services provided to clients. *Exhibit* "~~D~~**F**."

39.     Plaintiff believes jchristman is actually defendant John. Christman. This defendant entered three elements of identity as required by VBC. That is, Mr. Christman himself entered the Registration Name - "user;" Registration Organization - "user;" and, Registration

email - "user@user.com." It appears that Mr. Christman was attempting to disguise his usage of the software and knew his actions were unlawful.

40.     Therefore, as mentioned, the total of all lines illegally converted amounts to 541,150. To place this number of C# lines in perspective, it is said that the number of C# lines is roughly equivalent to 2% if the same were in text. The equivalence approximates 10,800 pages of text. Or, if the average book consists of 200 pages, it would require more than 50 books piled atop one another to equal the ~~lumber~~**number** of lines converted. Copies of Proof of Illegal Usage are attached hereto and incorporated by reference as *Exhibit* "~~C~~**E**."

**FIRST CLAIM FOR RELIEF:** *Violation of 17 U.S.C. 106(1) & ~~501~~***501,** *et seq~~.,~~, Copyright Infringement.*

41.     Plaintiff incorporates by reference paragraphs 1 through 40 as if the same were set forth fully herein.

42.     Plaintiff is informed and believes and thereon alleges that the computer involved in this illegal conversion was under the care, custody and control of Defendants at all times. The user directed a false key at Plaintiff's servers in California, bypassed the legitimate code issued to purchasers, gained unauthorized access to the copyrighted material, reproduced Plaintiff's program, adapted and created derivative works beneficial to their employer.

43.     Assuming that the average programmer earns approximately $100.00 per hour doing conversion work, the saved costs and expenses avoided by Defendants as the result of unauthorized access, copying and usage amount ~~too~~ approximately $~~541,000.00.~~**541,000.00.**

44.     Plaintiff alleges that the full amount of Actual Damages, including profit attributable to the infringement, ~~is~~**it** unknown to ~~Plaintiff~~**plaintiff** at this time, but ~~accordingly~~**according** to proof at time of trial. Plaintiff does allege that Statutory Damages are at

EXHIBIT  5 - PAGE 53

least $150,000.00. The acts of Defendants, and each of them, involve the use of a fraudulent code in order to bypass Plaintiff's genuine codes issued to legitimate purchasers. The infringers knew or had reason to know they were violating plaintiff's Exclusive Rights under the Copyright Act (At 17 ~~US~~U.S.C. §106 (1&2)). Accordingly, then, the acts complained of were willful and deliberate and qualify for the maximum allowed by law. (At 17 U.S.C. §504(c)(2)).

**SECOND CLAIM FOR RELIEF:** *Vicarious Copyright Infringement.*

45.     Plaintiff incorporates by reference paragraphs 1 through 44, inclusive, as if the same were set forth fully herein.

46.     Plaintiff is informed and believes and thereon alleges that at all times relevant to the action complained of herein, Exida, ~~had~~**has** the right and ability to oversee, govern, control and direct its employees actions, including, but not limited to, causing the cessation of adverse conduct in which its employee was engaged. Yet, despite this ability, Defendants failed and continued to fail to enforce rules of conduct upon its employees, which led to the substantial number of lines wrongfully converted. In particular, the Defendants failed to take decisive action to prevent continuing unauthorized access, copying and ~~adaptation~~**adaption** of Plaintiff's copyrighted software.

47.     Plaintiff further alleges that as a proximate result of Defendants' conduct Defendants have profited in an amount and in a manner that would not have taken place, but for the purloining of Plaintiff's copyrighted software by its employees. Accordingly, Defendants have gained a direct financial benefit to which they are not entitled.

48.     Under the circumstances ~~outlined~~**outlines** above, Defendants are liable to Plaintiff for Statutory Damages as ~~a~~ willful vicarious copyright infringer in the amount of

**EXHIBIT  5 - PAGE 54**

$~~150,000.00.~~ **150,000.00.** Defendants are also liable for Actual Damages in an amount unknown at this time, but according to proof at time of trial.

**THIRD CLAIM FOR RELIEF:** *Contributory Copyright Infringement.*

49.     Plaintiff incorporates by reference paragraphs 1 through 48, inclusive, as if the same were set forth fully herein.~~.~~

50.     By virtue of its position as employer, Defendant Exida knew or had reason to know that its employee, Christman, ~~had~~**has** gained unauthorized access to Plaintiff's copyrighted programs and was using same for the benefit of Exida by copying and adapting the accessed~~,~~ copyrighted material and which he knew violated Plaintiff's Exclusive Rights of copyright~~,~~**.** The direct infringer's knowledge is inferred from their use of a fraudulent code to unlock the software to unlimited use.

51.     By engaging in such conduct, defendants, and each of them, exceeded the scope of the very limited license granted to them for use in the Trial version of the software and were transformed into copyright infringers.

52.     Furthermore, Plaintiff is informed and believes that Defendants aided the actions of its ~~employee~~**employees** and materially contributed therein by supplying the data~~,~~ and equipment necessary to encourage, urge and persuade, and induce the usage of Plaintiff's intellectual property, in particular, by supplying computers, a router and a virtual private network through which each and every instance of infringement alleged herein has traveled and been directed to Plaintiff's software.

53.     Defendants, and each of them, are liable to Plaintiff by reason of the employer/employee relationship for Actual Damages of a sum unknown at this time, but for all profits attributable to the infringements, according to proof at the time of trial. In the alternative,

Defendants are liable for Statutory Damages of ~~SI 50,000.00,~~ **$150,000.00,** as and for the willful and intentional infringement and unauthorized access, copying and usage of Plaintiff's copyrighted programs.

**FOURTH CLAIM FOR RELIEF:** *Violation of the Digital Millennium Copyright Act (17 U.S.C. §1201 (a).)*

54.     Plaintiff repeats and re-alleges paragraphs 1 through 53, as if the same were set forth fully herein.

55.     At all times mentioned herein, Plaintiff has in force a 25 digit alphanumeric code designed to control access to his copyrighted software. It is only when a legitimate purchaser affirms the terms and conditions of the End User Licensing Agreement (EULA) and pays the standard market fee that access to the licensed product is permitted for an unlimited time. When adherence is satisfied Plaintiff will issue to the licensee a non-exclusive, non-transferable license and provide legitimate code enabling access to the copyrighted programs.

56.     The code is intended as a technological measure for the purpose of protecting its proprietary program. To gain access requires knowledge of the 25 digits issued by Plaintiff. It is intended to exclude those who seek to circumvent the code and gain unauthorized access.

57.     Defendants circumvented this technological access-control measure to obtain unlicensed access to the Copyrighted Software.

58.     The true number of acts of circumvention is unknown at this time, but Plaintiff is informed and believes and thereon alleges that at least 10 occasions above occurred.

**EXHIBIT  5 - PAGE 56**

59.     As a consequence of Defendants' unlawful and unauthorized circumvention of Plaintiff's measures, Plaintiff has sustained damages as previously set forth herein.

60.     The use of a circumvention device to gain access is an intentional and knowledgeable act by the Defendants. It is therefore willful and subjects Defendants' liable for the maximum allowed for ~~Statutory~~**statutory** Damages, per act of circumvention, or $2,500.00 on 10 occasions for a total of $25,000.00. Alternatively, Plaintiff is entitled to Actual Damages for profits attributable to the acts of circumvention per 17 U.S.C. §1203(c)(2), according to proof at time of trial. Said damages are in *addition* to that awarded for copyright infringement.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that the Court issue the following:

A.     Defendant be enjoined during the pendency of this action and permanently thereafter from appropriating, using or otherwise benefiting from Plaintiff's copyrighted application software identified above without the express written approval of Plaintiff or his delegate;

B.     Defendants be ordered to identify, preserve, set aside and retain any and all source code used by them in the infringement alleged above pursuant to Federal Rule of Civil Procedure 34, which includes, but is not limited to:

(i)     All ~~electronically~~**electronic** stored ~~information~~**informed** which contains any portion of Plaintiff's copyrighted program;

(ii)     All writings as defined in Federal Rule of Evidence ~~10G1,~~**1001,** which refer to or mention in any manner Plaintiff's program, except to those items based on privilege.

-16-

**EXHIBIT  5 - PAGE 57**

C.      Pay ~~Plaintiff~~**plaintiff** all damages sustained by him as ~~the~~**a** result of their unlawful acts, with prejudgment interest, as well as account for and pay for all gains and profits they have enjoyed at Plaintiff's expense. In particular, ~~Plaintiff~~**plaintiff** demands compensation of at least $150,000.00 as and for Statutory Damages ~~under~~**Under** The Copyright Act or Actual Damages for profits attributable to the infringement, both direct and indirect, according to law.

D.      Plaintiff demands at least $25,000.00 for violation of the applicable section of the Digital Millennium Copyright Act, §1201(a), et seq., over and above those damages recited under the Copyright Act of 1976;

E.      Trial by jury.

F.      All costs of litigation, including costs of suit, reasonable attorney fees and interest at legal rates.

G.      Such other and further relief as the Court deems just under the circumstances.

Dated: ~~December 19, 2013~~**May 8, 2014**

EXHIBIT  5 - PAGE 58

Document comparison by Workshare Compare on Tuesday, May 27, 2014
8:41:45 AM

| Input: | |
|---|---|
| Document 1 ID | file://Q:\USERV\1st am compl.docx |
| Description | 1st am compl |
| Document 2 ID | file://Q:\USERV\Third Amended Complaint.docx |
| Description | Third Amended Complaint |
| Rendering set | PH Standard |

| Legend: | |
|---|---|
| **Insertion** | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 95 |
| Deletions | 107 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 202 |

**EXHIBIT  5 – PAGE 59**

# EXHIBIT "6"

EXHIBIT  6 - PAGE 60



**ⓒopyright**
United States Copyright Office

# Copyright Registration for Computer Programs

A "computer program" is a set of statements or instructions to be used directly or indirectly in a computer in order to bring about a certain result.

Copyright protection extends to all the copyrightable expression embodied in the computer program. Copyright protection is not available for ideas, program logic, algorithms, systems, methods, concepts, or layouts.

## Registering a Copyright with the U.S. Copyright Office

An application for copyright registration contains three essential elements: a completed application form, a nonrefundable filing fee, and a nonreturnable deposit—that is, a copy or copies of the work being registered and "deposited" with the Copyright Office.

You may register basic claims[1] for literary works; visual arts works; performing arts works, including motion pictures; sound recordings; and single serials online by using the electronic Copyright Office (eCO) at *www.copyright.gov*, or you may register on a paper application form.

## The Application

### Completing the Online Application for a Computer Program

**NOTE:** These points do not cover all the required information on the application. Be sure to refer to the online instructions and the eCO tutorial before completing the application.

**Author Created** · In the "Author Created" space, describe the copyrightable authorship in the computer program for which registration is sought. Acceptable statements include "computer program," "text of user's manual and computer program," etc. Do not refer to design, physical form, hardware, or algorithm. Do not describe the program's features or functions.

**Year of Completion** · Give the year of completion and the exact date of first publication, if any, for the particular version of the computer program for which registration is sought.

**Limitation of Claim** · Complete this part of the application if the computer program contains a substantial amount of previously published, registered, or public domain material such as subroutines or modules, or if the work was developed using an underlying computer program or authoring tool. "Material excluded" may state "previous version." Typical examples of descriptions of "New material included" are "computer program" and "revised version." Do not

EXHIBIT 6 - PAGE 61

refer to debugging, error corrections, new functions of the revised program, or other elements that cannot be registered.

To register online, go to the Copyright Office website at *www.copyright.gov* and click on *electronic Copyright Office*.

**NOTE:** Hard-copy deposits are required for most published works to fulfill the mandatory deposit requirements. You can still register online and save money even if you will submit a hard-copy deposit. After paying the filing fee online, you may choose either to upload digital copies or to mail physical copies. Instructions for both options are provided. A shipping slip is created to mail together with your hard copies.

### Completing a Paper Application Form for a Computer Program

You can also register your copyright using a paper form. Instructions accompany the paper forms. To access all forms, go to the Copyright Office website and click on *Forms*. Choose the form representing the type most appropriate to the predominant authorship. Because computer programs are literary works, registration as a "Literary Work" (Form TX) is usually appropriate.

However, if pictorial or graphic authorship predominates, registration as a "Visual arts work" (Form VA) may be made. Similarly, if motion picture authorship or audiovisual material predominate, registration as a "Motion picture/audiovisual work" (Form PA) may be made.

On your personal computer, complete the form, print it out, and mail it with a check or money order and your deposit. Blank forms can also be printed out and completed by hand, or they may be requested by postal mail or by calling the Forms and Publications Hotline at (202) 707-9100 (limit of two copies of each form by mail). Remember that online registration through eCO can be used for these types of applications.

### Mailing Addresses for Applications Filed on Paper and for Hard-copy Deposits

*Library of Congress*
*U.S. Copyright Office–TX*
*101 Independence Avenue SE*
*Washington, DC 20559*

## The Fee

Copyright Office fees are not refundable, and they are subject to change. For current fees, check the Copyright Office website at *www.copyright.gov*, write the Copyright Office, or call (202) 707-3000 or 1-877-475-0778 (toll free).

## The Deposit

### Computer Programs without Trade Secrets

For published or unpublished computer programs, send one copy of identifying portions of the program (first 25 and last 25 pages of source code) reproduced in a form visually perceptible without the aid of a machine or device, either on paper or in microform, together with the page or equivalent unit containing the copyright notice, if any. Online registration is ideal for computer programs not embodied in a CD-ROM. The source code may be uploaded electronically, preferably in PDF format.

For a program less than 50 pages in length, send a visually perceptible copy of the entire source code. For a revised version of a program that has been previously published or previously registered or that is in the public domain, if the revisions occur throughout the entire program, send the page containing the copyright notice, if any, and the first 25 and last 25 pages of source code. If the revisions are not contained in the first 25 and last 25 pages, send any 50 pages representative of the revised material in the new program, together with the page or equivalent unit containing the copyright notice, if any, for the revised version.

In any case where the program is so structured that it has no identifiable beginning or end, the applicant should make a determination as to which pages may reasonably represent the first 25 and last 25 pages.

If an applicant is unable or unwilling to deposit source code, the applicant must state in writing that the work as deposited in object code contains copyrightable authorship. The Office will then register the work under its rule of doubt since it has not determined the existence of copyrightable authorship.

If a published user's manual or other printed documentation accompanies the computer program, deposit one copy of the user's manual along with one copy of the identifying material for the program.

**NOTE:** Such manuals must generally be mailed rather than uploaded electronically to the Copyright Office.

For programs written in JavaScript® and other scripted languages, the script is considered the equivalent of source code. Thus, the same number of pages of script would be required as is required for source code. Reproductions of on-screen text, buttons, and commands are not an appropriate substitute for this source code deposit. Where a scripted pro-

**EXHIBIT  6 - PAGE 62**

gram contains trade secrets, the deposit of script pages must meet the requirements below.

**NOTE:** When a computer program is embodied in a CD-ROM, ordinarily the entire CD-ROM package must be mailed to the Copyright Office, including a complete copy of any accompanying operating software and instructional manual. If registration is sought for the computer program, the deposit should also include a printout of the first 25 and last 25 pages of source code for the program.

### Computer Programs Containing Trade Secrets

Where a computer program contains trade secret material, include a cover letter stating that the claim contains trade secrets, along with the page containing the copyright notice, if any. Include a source code deposit as described below. The source code may be uploaded electronically with the exceptions noted above.

### Entirely new computer programs

- First 25 and last 25 pages of source code with portions containing trade secrets blocked out, or
- First 10 and last 10 pages of source code alone, with no blocked out portions, or
- First 25 and last 25 pages of object code plus any 10 or more consecutive pages of source code, with no blocked-out portions, or
- For programs 50 pages or less in length, entire source code with trade secret portions blocked out

### Revised computer programs

If the revisions are present in the first 25 and last 25 pages, any one of the four options above, as appropriate, or if the revisions are not present in the first 25 and the last 25 pages:

- 20 pages of source code containing the revisions with no blocked out portions, or
- any 50 pages of source code containing the revisions with some portions blocked out

**NOTE:** Whenever portions of code are blocked out, the following requirements must be met:

1  the blocked out portions must be proportionately less than the material remaining; and

2  the visible portion must represent an appreciable amount of original computer code.

### Points to Remember

Each separately published version of a computer program that contains new, copyrightable authorship *must be registered separately*, with a new application and fee. Registration of the first version may extend to the entire work if it contains no previously published or registered portions and if the claimant is the same for both.

Registration of any subsequent version covers only the new or revised material added to that version. The version of the work that is deposited should be the same version described on the application; thus, the title and dates on the application should correspond with those on the deposit copy.

**NOTE:** If the version to be registered is no longer available, it may be possible to register it using a later version under a grant of special relief. In this case, submit a written request for special relief to the Copyright Office, Attention: Registration Program. Explain why the required version is not available and indicate what percentage of the authorship from the version to be registered remains in the version you are depositing. Your request will be evaluated upon receipt.

If the deposit material for the computer program has a copyright notice containing multiple year dates, the Copyright Office will question whether the particular program is a revised or derivative version if the "Limitation of Claim" area of the application has not been completed. If the program is not a derivative work and if the multiple year dates in the notice refer to *internal* revisions or *the history of development* of the program, please put that information in a cover letter to help speed processing. If registering online, give this explanation as a "Note to Copyright Office" in the space provided.

If the deposit material for the computer program does not give a printed title and/or version indicator, please add the title and any indicia that can be used in identifying the particular program.

## How to Register a Computer Program and Its Screen Displays

A single registration may be made for a computer program and its screen displays. When answering the "Type of work being registered" in eCO, choose the type most appropriate to the predominant authorship. Because computer programs are literary works, registration as a "Literary Work" is usually appropriate. However, if pictorial or graphic authorship predominates, registration as a "Work of the Visual Arts" may be made. Similarly, if motion picture authorship or audiovisual

**EXHIBIT  6 - PAGE 63**

material predominates, registration as a "Motion picture/audiovisual work" may be made.

The registration will extend to any copyrightable screens generated by the program, regardless of whether identifying material for the screens is deposited.

**Option 1:** Answer "computer program" to the "Author Created" question. In this case, deposit the source code as described above. Depositing identifying material for screens is optional.

**Option 2:** Answer "computer program, including text of screen displays," or "computer program including audiovisual material" or "computer program including artwork on screen displays" in the "Other" portion of the "Author Created" question. In this case, you must deposit identifying material for the screen displays in addition to the required source code. Identifying material for the screen displays should consist of images or printouts clearly revealing the screens. If using online registration, images of the screens may be uploaded electronically to the electronic Copyright Office. For works that are predominantly audiovisual, such as video games, ½-inch VHS videotapes, CD-ROMs, or DVDs, an upload of the audiovisual material to eCO (provided the file is not too large to upload) is acceptable. Note, too, that if the screens are reproduced in an accompanying manual, the manual will suffice as identifying material.

The identifying material will be examined for copyrightability. When the screens are essentially not copyrightable (e.g., de minimis menu screens, blank forms, or the like), the application should not refer to screens. The description of authorship on the application should not refer to elements such as "menu screens," "structure, sequence and organization," "layout," "format," or the like.

**NOTE:** Registration of html or other formatting code for a website does not automatically cover any visible or audible copyrightable elements that are generated by the code. To register those portions of an online work, the entire copyrightable content must be deposited. It is possible to register the computer program together with the online work, but the deposit requirements for both the program and the online work must be fulfilled. See Circular 66, *Copyright Registration for Online Works*, for important information on the required deposit and how to complete the application when registering online works.

*Screen Displays*

Copyright protection for computer screen displays, including video games, has been an issue in the courts for some time.

Courts have differed in their opinions regarding whether screen displays may be registered separately.

The Copyright Office has consistently believed that a single registration is sufficient to protect the copyright in a computer program and related screen displays, including video games, without a separate registration for the screen displays or a specific reference to them on the application for the computer program. An application may give a general description in the "Author Created" space, such as "computer program." This description will cover any copyrightable authorship contained in the computer program and screen displays, regardless of whether identifying material for the screens is deposited.

A specific claim in the screen displays may be asserted on the application. In such a case, identifying materials for the screens must be deposited.

**Effective Date of Registration**

When the Copyright Office issues a registration certificate, it assigns as the effective date of registration the date it received all required elements—an application, a nonrefundable filing fee, and a nonreturnable deposit—in acceptable form, regardless of how long it took to process the application and mail the certificate. You do not have to receive your certificate before you publish or produce your work, nor do you need permission from the Copyright Office to place a copyright notice on your work. However, the Copyright Office must have acted on your application before you can file a suit for copyright infringement, and certain remedies, such as statutory damages and attorney's fees, are available only for acts of infringement that occurred after the effective date of registration. If a published work was infringed before the effective date of registration, those remedies may also be available if the effective date of registration is no later than 90 days after the first publication of the work.

If you apply for copyright registration using a paper application, you will not receive an acknowledgment that your application has been received (the Office receives more than 600,000 applications annually), but you can expect

- a letter or a telephone call from a Copyright Office staff member if further information is needed or

- a certificate of registration indicating that the work has been registered, or if the application cannot be accepted, a letter explaining why it has been rejected.

Requests to have certificates available for pickup in the Copyright Office or to have certificates sent by a mail service cannot be honored. If you want to know the date that the

**EXHIBIT 6 - PAGE 64**

Copyright Office receives your paper application or hard-copy deposit, send it by registered or certified mail and request a return receipt.

## For Further Information

### By Internet

Circulars, announcements, regulations, and all applications forms are available from the Copyright Office website at *www.copyright.gov*. To send an email communication, click on *Contact Us* at the bottom of the home page

### By Telephone

For general information about copyright, call the Copyright Public Information Office at (202) 707-3000 or 1-877-476-0778 (toll free). Staff members are on duty from 8:30 AM to 5:00 PM, eastern time, Monday through Friday, except federal holidays. Recorded information is available 24 hours a day. To request paper application forms or circulars, call the Forms and Publications Hotline at (202) 707-9100 and leave a recorded message.

### By Regular Mail

Write to:

> Library of Congress
> Copyright Office–COPUBS
> 101 Independence Avenue SE
> Washington, DC 20559

### Note

1. Basic claims include (1) a single work; (2) multiple unpublished works if the elements are assembled in an orderly form; the combined elements bear a single title identifying the collection as a whole; the copyright claimant in all the elements and in the collection as a whole is the same; and all the elements are by the same author, or, if they are by different authors, at least one of the authors has contributed copyrightable authorship to each element; and (3) multiple published works if they are all first published together in the same publication on the same date and owned by the same claimant.

EXHIBIT 6 - PAGE 65

# EXHIBIT "7"

EXHIBIT  7 - PAGE 66

FILED

2008 MAR -4  PM 2:37

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY:_____

1  **DONALD M. GINDY**
   PROFESSIONAL LAW CORPORATION
2  1880 CENTURY PARK EAST
   SUITE 815
3  LOS ANGELES, CALIFORNIA 90067-1622
   Tel (310) 772-0585
4  Fax (310) 772-0016
   email: don@gindylaw.com
5  DONALD M. GINDY, ESQ. SBN 45228

6  Attorney for Plaintiff David Crook dba VB Conversions

7

8              **UNITED STATES DISTRICT COURT**

9        **CENTRAL DISTRICT OF CALIFORNIA- WEST REGION**

10

11  DAVID CROOK doing business as VB      )  CASE NO **CV08-1508** MMM SH
                                          )
12  CONVERSIONS, a sole proprietorship,   )
                                          )
13                                        )  **COMPLAINT: COPYRIGHT**
                                          )  **INFRINGEMENT;**
14  Plaintiff,                            )  **CONTRIBUTORY AND**
                                          )  **VICARIOUS COPYRIGHT**
15         vs.                            )  **INFRINGEMENT**
                                          )
16                                        )
                                          )
17  ZIFF BROTHERS INVESTMENTS, a          )  ***DEMAND FOR JURY TRIAL***
    Delaware Limited Liability Company; Ziff- )
18  Davis Media, Inc., a Delaware         )
19  Corporation; Andy Estema, an individual; )
    DOES 1-10, Inclusive,                 )
20                                        )

21  Defendants.

22

23

24

25

26

27

28                          1

**EXHIBIT  7 - PAGE 67**

1    Plaintiff, David L. Crook doing business as VB Conversions, a sole proprietorship,

2    hereby brings the within action against Ziff Brothers Investments, LLC., a Delaware

3    limited liability company and Andy Estema, an individual, for their systematic and

4    continuous acts of copyright infringement and vicarious and contributory copyright

5    infringement. This action is based upon a federal question.

6

7    **A.    SUMMARY OF THE ACTION.**

8        1.    This action seeks damages and injunctive relief based upon  defendant's

9    unauthorized copying and usage of plaintiff's copyrighted software entitled "VB.NET to

10   C# Converter." (C# is pronounced C Sharp)

11

12   **B.    JURISDICTION.**

13

14       2.    This action arises under the Copyright Act of the United States, 17

15   U.S.C.§101 and 501, et seq. This Court has jurisdiction over the subject matter of this

16

17   action pursuant to 28 U.S.C. § 1338 (a) and (b).

18       3.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

19       4.    Further, Plaintiff alleges venue is proper as the result of a Forum

20

21   Selection Clause in a license agreement affirmed by defendant designating the County of

22   Los Angeles, State of California, as the suitable location for hearing in the event of a

23

24   dispute.

25   **C.    PARTIES.**

26       5.    David L. Crook is the sole owner and operator of his company entitled VB

27

28                                        2

EXHIBIT  7 - PAGE 68

1  Conversions (hereinafter "VBC"). He is a resident of Overland Park, Kansas. The

2
3  Principal headquarters of his business is located here.

4      6.    Plaintiff is informed and believes and thereon alleges that Ziff Brothers

5
6  Investments LLC, is a Delaware limited liability company, with headquarters in New York

7  City. It is believed that Ziff engages in money management and investments as its primary

8  business objective.

9
10     7.    Plaintiff is further informed and believes and thereon alleges that

11  defendant, Andy Estama, is and was at all times relevant to the allegations found in this

12
13  Complaint to be an employee operating within the course and scope of his employment by

14  Ziff Bros. Investments.

15     **D..    GENERAL ALLEGATIONS**

16
17     8.    Plaintiff has registered his programs with the Register of Copyright and was

18  given the registration number of TX 6-285-849 for Version 1.0 of the above entitled

19
20  program; TX 6-425-720 for Version 2.0. A copy of his registrations are attached hereto

21  and incorporated by reference as Exhibit "A."

22     9.    VBC sells its copyrighted program online at www.vbconversions.net.

23
24  Mr. Crook subscribes to the Shareware philosophy of offering his program for a limited

25  time to potential purchasers. In this instance, he offers it for 15 days. A party is permitted

26
27  to try out the program and see if it is suitable for their needs. If so, they may apply for a

28                                           3

**EXHIBIT 7 - PAGE 69**

license by paying the required fee and affirming a license agreement. However, prior to being permitted to use the Trial version, a prospective purchaser must affirm an End User Licensing Agreement first. Upon doing so, they will receive a registration code which permits unlimited access to the program. The trial version of the program automatically disables after 15 days. A copy of the End User Licensing Agreement (EULA) is attached hereto as Exhibit "B."

10. Unfortunately, despite the best efforts of VBC, it has not been able to stem the tide of unscrupulous people who have gained unauthorized access to his program and have used the software to quickly convert to this latest incarnation of computer language. These intruders have used so-called "cracking sites" which exist in great abundance on the Internet. These sites supply the decryption of registration keys to developer's software and enable fraudulent registration codes (or keys) to be used in order to gain access to the programs. In self defense, VB has adopted *a tracking system* which is able to identify the date and time of the intruder, the external and internal IP of the offending computer, the identity of the user of that computer and other data which is integral to proof of infringement.

11. The tracking system VBC adopted was created by Hitek Software LLC

4

EXHIBIT 7 - PAGE 70

of Goleta, CA.   VBC and Hitek have contracted to have the latter monitor its program

and detect unauthorized access.  Hitek receives the data at its servers almost simultaneously

as it is received at VBC's servers.

12.     In business programming, Visual Basic (VB) has one of the largest user

bases and is probably the most popular programming language. But many developers look

to more recent computer languages in order to enhance what they do and to eliminate flaws

found in earlier programs such as VB.  Newer languages used by programmers include C,

C+ and C++.  C# has evolved from these earlier attempts at improving VB.

13.     C# is intended to be a simple, modern, general-purpose, Programming

language. The language is intended for use in developing software components suitable for

deployment in many different environments. For instance, C# compilers exist for just about

every platform imaginable, including Mac, Linux, Windows, Solaris, etc.

14.     C# is suitable for writing applications for both hosted and embedded systems,

ranging from the very large that use sophisticated operating systems, down to the very

small having dedicated functions.

15.     Plaintiff is unaware of the names and true capacities of Defendants, whether

individual, corporate and/or partnership entities, named herein as DOES 1 through 10,

inclusive, and therefore sues them by their fictitious names.  Plaintiff will seek leave to

5

EXHIBIT 7 - PAGE 71

amend this complaint when their true names and capacities are ascertained. Plaintiff is informed and believes and thereon alleges that all of the defendants, known and unknown, are in some manner responsible for the wrongs alleged herein and that at all times mentioned herein were the agent and servant of the other Defendants and acting within the course and scope of said agency and employment.

16.     Plaintiff is informed and believes and thereon alleges that at all times relevant hereto, Defendants and DOES 1-10, inclusive, knew or reasonably should have known of the acts and behavior alleged herein and the damages caused thereby, and by their inaction ratified and encouraged such acts and behavior. Plaintiff further alleges that said defendants have a non-delegable duty to prevent or cause such acts and behavior described herein, which duty defendants failed and/or refused to perform.

**FIRST CLAIM FOR RELIEF:** *Violation of 17 U.S.C.§106(1)& 501, et.seq., Copyright Infringement against all defendants.*

17.     Plaintiff incorporates by reference paragraphs 1 through 16 as if the same were set forth fully herein.

18.     In this instance, it was disclosed that a computer owned and operated and/or under the care, custody and control of defendant Ziff Brothers had used a fraudulent registration "key" (or code) to unlock plaintiff's program. Hitek detected that this intrusion

6

EXHIBIT 7 - PAGE 72

occurred on Tuesday, April 3, 2007, initially at 3:02 p.m. The tracking system was alerted

that on April 3, 2007, the defendants converted 39,610 lines of Visual Basic to C# without

plaintiff's knowledge and consent. Documents attesting to the findings of Usage are

attached hereto and incorporated by reference as Exhibit "C."

19.   Subsequently, on June 1, 2007, at 11:21 a.m., the tracking system detected that

through the use of a fraudulent 25 digit alphanumeric code, not issued by plaintiff,

defendant again engaged in the unauthorized usage of plaintiff's program. On June 1, 6,

& 25; July17&18; and, on August 17, 2007, defendant converted 243,579 additional lines

became C#. Copies of the Proof of Usage is attached hereto and incorporated by reference

as Exhibit "D."

20.   Further, on September 27, 2007, October 5, 2007, and October 12, 2007, it

was disclosed that as a result of defendants' actions an additional 128, 403 lines were

converted to C#.   The total of unauthorized copying of plaintiff's copyrighted program

amounts to 411,592 lines which have been converted to C#.   Copy of the Proof attesting

to this infringement is attached hereto as Exhibit "E."

21.   Although no additional lines of code were found to have been converted by

Ziff, it was learned that on December 12, 2007, usage of the program was detected at 3:32

p.m., by use of computer entitled NYITD6194D1. Attached hereto as Exhibit "F."

7

EXHIBIT  7 - PAGE 73

22.     Reference to the American Registry of Internet Numbers (ARIN) indicates that the computers identified by their external internet protocol numbers are within the range of computers under the custody and control of Ziff Brothers Investments.  The external internet protocols are: 208.195.65.104.  A copy of the ARIN Report is attached hereto as Exhibit "G ."

23.     The computer which was used throughout the conversions process is called: NYITD6194D1.  The user is named "aestama."  The domain or workgroup is entitled: ZBINY.   The internal internet protocol numbers for the above computer are:192.168.84.101.

24.     The user of the above device gained unauthorized entry by use of a fraudulent registration code.  The code is: 1A9WD-WZGRR-NZVYT- FU1MW-13RXU.  This code was detected by the monitoring system.  It is not a code issued by plaintiff.

25.     As a proximate result of the unauthorized access gained by defendants, the plaintiff sustained a loss of sales, a diminution of value of his program, a potential loss of license value.   Meanwhile, the defendants have profited unjustly in the sum of $411,592.00, by not having to employ a programmer to do the work completed by the unauthorized use of plaintiff's program. Plaintiff has been harmed by the fraudulent use of a registration code

8

EXHIBIT  7 - PAGE 74

1   which apparently enabled the infringer to decipher plaintiff's proprietary key leading to the

2
3   exceedingly large number of lines to be converted.

4       26.    Plaintiff is informed and believes and thereon alleges that without the benefit

5   of plaintiff's copyright program, a programmer would require, at the very least, 4,115 hours
6
7   to convert the number of lines which defendants' obtained by way of their fraudulent

8   actions.    Plaintiff is further informed that the    average cost of a programmer is
9
10  approximately $100.00 per hour and that a programmer could potentially convert, *at the*

11  *very best*, only about 100 lines per hour in the absence of plaintiff's program. Accordingly,

12  defendants' have been unjustly enriched and profited by misappropriating the code in the
13
14  amount of $411,592.00, in that they did not have to employ such persons to do this work

15  and pay them the customary amount required to do an equivalent job.

16
17      27.   Plaintiff further contends that defendants, and each of them, have  profited and

18  will continue to profit in an amount unknown, but according to proof pursuant to 17 U.S.C.

19  §504(a)(1) & (b).
20

21      28.    Plaintiff contends that the use of a fraudulent code to gain unauthorized

22  access to the program was an intentional, knowledgeable and deliberate act designed to
23
24  unlock plaintiff's registration code. It was therefore a willful act subjecting defendants' and

25  each of them to the maximum amount of Statutory Damages permitted by law or
26
27  $150,000.00.

28                                          9

EXHIBIT  7 - PAGE 75

## SECOND CLAIM FOR RELIEF: *Vicarious Copyright Infringement*
## *against defendant Ziff Brothers Investments .*

29.    Plaintiff incorporates by reference paragraphs 1 through 28, inclusive, as if the same were set forth fully herein.

30.    Plaintiff is informed and believes that at all times relevant to the actions complained of herein, the defendant A.Estema was conducting himself as an employee of defendant Ziff.

31.    Plaintiff believes that defendant Andy Estema was a computer specialist and/or programmer assigned to maintaining and improving his employer's computer systems and, in so doing, sought out programs that would improve the Visual Basic system upon which Ziff's programs were based. Plaintiff further alleges that among the programs which Estema attempted to use was that of plaintiff, i.e., VB.Net to C#  Converter.

32.    Plaintiff further alleges upon information and belief, as Estema's employer defendant Ziff had the right and ability at all times to oversee, govern, control and direct its employees actions, including, but not limited to, halting any adverse conduct in which its employee engaged. Yet, despite this ability,  defendant Ziff failed and continues to fail to enforce rules of conduct upon its employee which has led to the massive number of converted lines of which plaintiff complains herein.

33.    Plaintiff further alleges that as a proximate result of defendant Estema's

10

EXHIBIT  7 - PAGE 76

conduct, defendant Ziff has profited as set forth above in an amount and in a manner that would not have taken place but for the purloining of plaintiff's copyrighted software by its employee. Accordingly, defendants' have gained a financial benefit to which they are not entitled.

34.   Under the circumstances outlined above, defendants' are liable to plaintiff as a vicarious copyright infringer in the amount of $411,592.00.

Defendants' are also liable for Actual Damages over and above those stated for its use of the program and the program's contribution to profits in an amount unknown at this time, but according to proof at time of trial. In the alternative, defendants' are liable to plaintiff for Statutory Damages in the amount of $150,000.00, as and for willful infringement.

**THIRD CLAIM FOR RELIEF:** *Contributory Copyright Infringement against defendants Ziff.*

35.   Plaintiff incorporates by reference paragraphs 1 through 34, inclusive, as if the same were set forth fully herein.

36.   By virtue of their respective positions as employers, defendants' knew or had reason to know that their employee had gained unauthorized access to plaintiff's copyrighted program and was using same for the benefit of Ziff.

37.   Furthermore, plaintiff is informed and believes that defendants' aided and abetted the actions of its employee and materially contributed therein by supplying the data

11

EXHIBIT  7 - PAGE 77

and equipment necessary to encourage, urge and persuade, and induce the usage of plaintiff's intellectual property on many programs which assisted in connection with, among others, its alleged failure to make a timely bond payment; managing risk on interest rate swap agreements; and, hiring investment bank Morgan Stanley Dean Witter & Co., to explore joint ventures, alliances, merger or sales as well as assisting with programs focused on Primebroker.

38.   Defendants, and each of them, are jointly and severally liable to plaintiff in Actual Damages of the sum of $411,592.00, and all profits attributable to the infringement, according to proof at time of trial.  In the alternative, defendants are jointly and severally liable for Statutory Damages of $150,000.00, as and for the willful and intentional infringement and unauthorized access, copying and usage of plaintiff's copyrighted program.

WHEREFORE, plaintiff prays that the Court issue the following:

A.  Defendant be enjoined during the pendency of this action and permanently thereafter from appropriating, using or otherwise benefitting from plaintiff's copyrighted application software identified above;

B.  Defendants be ordered to pay plaintiff all damages sustained by him as the result of their unlawful acts, with prejudgment interest, as well as account for and pay for all gains and profits they have enjoyed at plaintiff's expense.   In

12

EXHIBIT  7 - PAGE 78

particular, plaintiff demands compensation of at least $150,000.00, or Actual Damages of at least $411,592.00, plus profits attributable to the infringement, both direct and indirect, according to law.

C. Such other and further relief as the Court deems just and proper under the circumstances;

D. Trial by jury;

E. All costs of litigation, including, but not limited to costs of suit, reasonable attorney fees and interest at legal rates.

DATED: January 30, 2008

DONALD M. GINDY, PLC

By: _____

DONALD M. GINDY
Attorney for Plaintiff
David Crook dba VB Conversions

13

EXHIBIT  7 - PAGE 79

# EXHIBIT "A"

EXHIBIT  7 - PAGE 80



This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Form TX**
For a Nondramatic Literary Work
UNITED STATES COPYRIGHT OFFICE

**TX 6‑285‑849**

EFFECTIVE DATE OF REGISTRATION

Month **Feb** Day **13** Year **2006**

---

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

**1**

TITLE OF THIS WORK ▼
VB.Net to C# Converter 1.x

PREVIOUS OR ALTERNATIVE TITLES ▼

PUBLICATION AS A CONTRIBUTION If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared.  Title of Collective Work ▼

If published in a periodical or serial give:  Volume ▼    Number ▼    Issue Date ▼    On Pages ▼

**2**

**a** NAME OF AUTHOR ▼
David Crook

DATES OF BIRTH AND DEATH
Year Born ▼ 1964    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☑ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶ USA
    { Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?  ☐ Yes  ☑ No
Pseudonymous?  ☐ Yes  ☑ No
If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP  Briefly describe nature of material created by this author in which copyright is claimed. ▼
Converts programs written in the Visual Basic.Net language to C#

**b** NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶
    { Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?  ☐ Yes  ☐ No
Pseudonymous?  ☐ Yes  ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP  Briefly describe nature of material created by this author in which copyright is claimed. ▼

**c** NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶
    { Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?  ☐ Yes  ☐ No
Pseudonymous?  ☐ Yes  ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP  Briefly describe nature of material created by this author in which copyright is claimed. ▼

**NOTE**
Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

**3**

**a** YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED  This information must be given
2004  ◀Year  in all cases.

**b** DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK
Complete this information  Month ▶ July  Day ▶ 1  Year ▶ 2004
ONLY if this work has been published.    USA    ◀ Nation

**4**

COPYRIGHT CLAIMANT(S) Name and address must be given even if the claimant is the same as the author given in space 2. ▼
David Crook
11184 Antioch #179
Overland Park KS 66210

TRANSFER If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

APPLICATION RECEIVED
FEB 13 2006
ONE DEPOSIT RECEIVED
FEB 13 2006
TWO DEPOSITS RECEIVED

FUNDS RECEIVED

---

MORE ON BACK ▶  • Complete all applicable spaces (numbers 5-9) on the reverse side of this page.
• See detailed instructions.  • Sign the form at line 8.

DO NOT WRITE HERE
Page 1 of ___ pages

EXHIBIT 7 - PAGE 81



This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America



**Form TX**

For a Nondramatic Literary Work

TX 6-425-720

EFFECTIVE DATE OF REGISTRATION

Jul 26 2006

---

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**TITLE OF THIS WORK ▼**

VBNET to C# CONVERTER, VERSION 2.0

**PREVIOUS OR ALTERNATIVE TITLES ▼**

**PUBLICATION AS A CONTRIBUTION** If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared. **Title of Collective Work ▼**

If published in a periodical or serial give: **Volume ▼** **Number ▼** **Issue Date ▼** **On Pages ▼**

**NAME OF AUTHOR ▼**
DAVID CROOK

**DATES OF BIRTH AND DEATH**
Year Born ▼ 1964  Year Died ▼ N/A

Was this contribution to the work a "work made for hire"?
☐ Yes  ☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶ UNITED STATES
Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous? ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed. ▼
NEW AND REVISED COMPUTER PROGRAM TEXT

**NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born ▼  Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes  ☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶
Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous? ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed. ▼

**NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born ▼  Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes  ☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶
Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous? ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed. ▼

**YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED** 2006

**DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK**
Month JULY  Day 10  Year 2006
UNITED STATES

**COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2. ▼
DAVID CROOK
11114 Antioch #179
Overland Park, KS 66210

ONE DEPOSIT RECEIVED
JUL 26 2006
TWO DEPOSITS RECEIVED
JUL 26 2006
FUNDS RECEIVED

**TRANSFER** If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

**MORE ON BACK ▶** Complete all applicable spaces (numbers 5-9) on the reverse side of this page.
See detailed instructions.  Sign the form at line 8.

DO NOT WRITE HERE
Page 1 of ___ pages

EXHIBIT 7 - PAGE 82

# EXHIBIT "B"

EXHIBIT  7 - PAGE 83

## END USER LICENSE AGREEMENT FOR VBCONVERSIONS SOFTWARE.

1. **IMPORTANT-READ CAREFULLY:** This VBConversions End-User License Agreement ("EULA") is a legal agreement between you (either an individual person or a single legal entity, who will be referred to in this EULA as "You") and for the VBConversions software product that accompanies this EULA, including any associated media, printed materials and electronic documentation (the "Software Product"). The Software Product also includes any software updates, add-on components, web services and/or supplements that VBConversions may provide to You or make available to You after the date You obtain Your initial copy of the Software Product to the extent that such items are not accompanied by a separate license agreement or terms of use. By installing, copying, downloading, accessing or otherwise using the Software Product, You agree to be bound by the terms of this EULA. If You do not agree to the terms of this EULA, do not install, access or use the Software Product; instead, You should return it to Your place of purchase for a full refund.

This license shall be deemed to have been executed within the State of California, in the United States of America. It shall be construed and enforced in accordance with and governed by the laws of the State of California. The exclusive venue for resolution of any claim or dispute regarding this license shall be the County of Los Angeles. In the event of a claim of copyright infringement, the proper venue is acknowledged to be the United States District Court for the State of California.

## SOFTWARE PRODUCT LICENSE

The Software Product is protected by intellectual property laws and treaties. The Software Product is licensed, not sold.

1. **GRANT OF LICENSE.** This Section of the EULA describes Your general rights to install and use the Software Product The license rights described in this Section are subject to all other terms and conditions of this EULA.

**General License Grant to Install and Use Software Product.** You may install and use one copy of the Software Product on a single computer, device, workstation, terminal, or other digital electronic or analog device ("Device"). A license for the Software Product may not be shared. This license may not be transferred to another user or company.

**Reservation of Rights.** All rights not expressly granted are reserved by VBConversions.

2. **DESCRIPTION OF OTHER RIGHTS AND LIMITATIONS.**

**Limitations on Reverse Engineering, Decompilation, and Disassembly.** You may not reverse engineer, decompile, or disassemble the Software Product, except and only to the extent that such activity is expressly permitted by applicable law notwithstanding this limitation.

**Trademarks.** This EULA does not grant You any rights in connection with any trademarks or service marks of VBConversions.

**No rental, leasing or conversion services.** You may not rent, lease, lend or provide conversion

**EXHIBIT 7 - PAGE 84**

services to third parties with the Software Product.

**Support Services.** VBConversions may provide You with support services related to the Software Product ("Support Services"). Any supplemental software code provided to You as part of the Support Services are considered part of the Software Product and subject to the terms and conditions of this EULA. You acknowledge and agree that VBConversions may use technical information You provide to VBConversions as part of the Support Services for its business purposes, including for product support and development. VBConversions will not utilize such technical information in a form that personally identifies You.

**Termination.** Without prejudice to any other rights, VBConversions may terminate this EULA if You fail to comply with the terms and conditions of this EULA. In such event, You must destroy all copies of the Software Product and all of its component parts.

## 3. UPGRADES.

**Standard Software Product.** If the Software Product is labeled as an upgrade, You must be properly licensed to use a product identified by VBConversions as being eligible for the upgrade in order to use the Software Product. A Software Product labeled as an upgrade replaces or supplements (and may disable) the product that formed the basis for Your eligibility for the upgrade. You may use the resulting upgraded product only in accordance with the terms of this EULA. If the Software Product is an upgrade of a component of a package of software programs that You licensed as a single product, the Software Product may be used and transferred only as part of that single product package and may not be separated for use on more than one Device.

**4. INTELLECTUAL PROPERTY RIGHTS.** All title and intellectual property rights in and to the Software Product (including but not limited to any images, photographs, animations, video, audio, music, text, and "applets" incorporated into the Software Product), the accompanying printed materials, and any copies of the Software Product are owned by VBConversions or its suppliers. All title and intellectual property rights in and to the content that is not contained in the Software Product, but may be accessed through use of the Software Product, is the property of the respective content owners and may be protected by applicable copyright or other intellectual property laws and treaties. This EULA grants You no rights to use such content. If this Software Product contains documentation that is provided only in electronic form, you may print one copy of such electronic documentation. You may not copy the printed materials accompanying the Software Product.

**5. BACKUP COPY.** After installation of one copy of the Software Product pursuant to this EULA, you may keep the original media on which the Software Product was provided by VBConversions solely for backup or archival purposes. If the original media is required to use the Software Product on the Device, you may make one copy of the Software Product solely for backup or archival purposes. Except as expressly provided in this EULA, you may not otherwise make copies of the Software Product or the printed materials accompanying the Software Product.

**6. EXPORT RESTRICTIONS.** You acknowledge that the Software Product is of U.S. origin. You agree to comply with all applicable international and national laws that apply to the Software

**EXHIBIT  7 - PAGE 85**

Product, including the U.S. Export Administration Regulations, as well as end-user, end-use and destination restrictions issued by U.S. and other governments

## 7. APPLICABLE LAW.

If you acquired this Software Product in the United States, this EULA is governed by the laws of the State of California. If this Software Product was acquired outside the United States, then local law may apply.

## 8. LIMITED WARRANTY

LIMITED WARRANTY FOR SOFTWARE PRODUCTS ACQUIRED IN THE US AND CANADA. VBConversions warrants that the SOFTWARE PRODUCT will perform substantially in accordance with the accompanying materials for a period of ninety (90) days from the date of receipt.

If an implied warranty or condition is created by your state/jurisdiction and federal or state/provincial law prohibits disclaimer of it, you also have an implied warranty or condition, BUT ONLY AS TO DEFECTS DISCOVERED DURING THE PERIOD OF THIS LIMITED WARRANTY (NINETY DAYS). AS TO ANY DEFECTS DISCOVERED AFTER THE NINETY (90) DAY PERIOD, THERE IS NO WARRANTY OR CONDITION OF ANY KIND. Some states/jurisdictions do not allow limitations on how long an implied warranty or condition lasts, so the above limitation may not apply to you.

Any supplements or updates to the SOFTWARE PRODUCT, including without limitation, any (if any) service packs or hot fixes provided to you after the expiration of the ninety (90) day Limited Warranty period are not covered by any warranty or condition, express, implied or statutory.

LIMITATION ON REMEDIES; NO CONSEQUENTIAL OR OTHER DAMAGES. Your exclusive remedy for any breach of this Limited Warranty is as set forth below. Except for any refund elected by VBConversions, YOU ARE NOT ENTITLED TO ANY DAMAGES, INCLUDING BUT NOT LIMITED TO CONSEQUENTIAL DAMAGES, if the Software Product does not meet VBConversions' Limited Warranty, and, to the maximum extent allowed by applicable law, even if any remedy fails of its essential purpose. The terms of Section 10 below ("Exclusion of Incidental, Consequential and Certain Other Damages") are also incorporated into this Limited Warranty. Some states/jurisdictions do not allow the exclusion or limitation of incidental or consequential damages, so the above limitation or exclusion may not apply to you. This Limited Warranty gives you specific legal rights. You may have others which vary from state/jurisdiction to state/jurisdiction.

YOUR EXCLUSIVE REMEDY. VBConversions' and its suppliers' entire liability and your exclusive remedy shall be, at VBConversions' option from time to time exercised subject to applicable law, (a) return of the price paid (if any) for the Software Product, or (b) repair or replacement of the Software Product, that does not meet this Limited Warranty and that is returned to VBConversions with a copy of your receipt. You will receive the remedy elected by VBConversions without charge, except that you are responsible for any expenses you may incur (e.g. cost of shipping the Software Product to VBConversions). This Limited Warranty is void if failure of the Software Product has resulted from accident, abuse, misapplication, abnormal use or

**EXHIBIT 7 - PAGE 86**

a virus. Any replacement Software Product will be warranted for the remainder of the original warranty period or thirty (30) days, whichever is longer. Outside the United States or Canada, neither these remedies nor any product support services offered by VBConversions are available without proof of purchase from an authorized international source

**9. DISCLAIMER OF WARRANTIES.** THE LIMITED WARRANTY THAT APPEARS ABOVE IS THE ONLY EXPRESS WARRANTY MADE TO YOU AND IS PROVIDED IN LIEU OF ANY OTHER EXPRESS WARRANTIES (IF ANY) CREATED BY ANY DOCUMENTATION OR PACKAGING. EXCEPT FOR THE LIMITED WARRANTY AND TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, VBCONVERSIONS AND ITS SUPPLIERS PROVIDE THE SOFTWARE AND SUPPORT SERVICES (IF ANY) *AS IS AND WITH ALL FAULTS*, AND HEREBY DISCLAIM ALL OTHER WARRANTIES AND CONDITIONS, EITHER EXPRESS, IMPLIED OR STATUTORY, INCLUDING, BUT NOT LIMITED TO, ANY (IF ANY) IMPLIED WARRANTIES, DUTIES OR CONDITIONS OF MERCHANTABILITY, OF FITNESS FOR A PARTICULAR PURPOSE, OF ACCURACY OR COMPLETENESS OR RESPONSES, OF RESULTS, OF WORKMANLIKE EFFORT, OF LACK OF VIRUSES AND OF LACK OF NEGLIGENCE, ALL WITH REGARD TO THE SOFTWARE, AND THE PROVISION OF OR FAILURE TO PROVIDE SUPPORT SERVICES. ALSO, THERE IS NO WARRANTY OR CONDITION OF TITLE, QUIET ENJOYMENT, QUIET POSSESSION, AND CORRESPONDENCE TO DESCRIPTION OR NON-INFRINGEMENT WITH REGARD TO THE SOFTWARE.

**10. EXCLUSION OF INCIDENTAL, CONSEQUENTIAL AND CERTAIN OTHER DAMAGES.** TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, IN NO EVENT SHALL VBCONVERSIONS OR ITS SUPPLIERS BE LIABLE FOR ANY SPECIAL, INCIDENTAL, INDIRECT, OR CONSEQUENTIAL DAMAGES WHATSOEVER (INCLUDING, BUT NOT LIMITED TO, DAMAGES FOR LOSS OF PROFITS OR CONFIDENTIAL OR OTHER INFORMATION, FOR BUSINESS INTERRUPTION, FOR PERSONAL INJURY, FOR LOSS OF PRIVACY, FOR FAILURE TO MEET ANY DUTY INCLUDING OF GOOD FAITH OR OF REASONABLE CARE, FOR NEGLIGENCE, AND FOR ANY OTHER PECUNIARY OR OTHER LOSS WHATSOEVER) ARISING OUT OF OR IN ANY WAY RELATED TO THE USE OF OR INABILITY TO USE THE SOFTWARE PRODUCT, THE PROVISION OF OR FAILURE TO PROVIDE SUPPORT SERVICES, OR OTHERWISE UNDER OR IN CONNECTION WITH ANY PROVISION OF THIS EULA, EVEN IN THE EVENT OF THE FAULT, TORT (INCLUDING NEGLIGENCE), STRICT LIABILITY, BREACH OF CONTRACT OR BREACH OF WARRANTY OF VBCONVERSIONS OR ANY SUPPLIER, AND EVEN IF VBCONVERSIONS OR ANY SUPPLIER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

**11. LIMITATION OF LIABILITY AND REMEDIES.** NOTWITHSTANDING ANY DAMAGES THAT YOU MIGHT INCUR FOR ANY REASON WHATSOEVER (INCLUDING, WITHOUT LIMITATION, ALL DAMAGES REFERENCED ABOVE AND ALL DIRECT OR GENERAL DAMAGES), THE ENTIRE LIABILITY OF VBCONVERSIONS AND ANY OF ITS SUPPLIERS UNDER ANY PROVISION OF THIS EULA AND YOUR EXCLUSIVE REMEDY FOR ALL OF THE FOREGOING (EXCEPT FOR ANY REMEDY OF REPAIR OR REPLACEMENT ELECTED BY VBCONVERSIONS

**EXHIBIT  7 - PAGE 87**

WITH RESPECT TO ANY BREACH OF THE LIMITED WARRANTY) SHALL BE LIMITED
TO THE GREATER OF THE AMOUNT ACTUALLY PAID BY YOU FOR THE SOFTWARE
OR U.S. $5.00. THE FOREGOING LIMITATIONS, EXCLUSIONS AND DISCLAIMERS
(INCLUDING SECTIONS 6, 7, AND 8 ABOVE) SHALL APPLY TO THE MAXIMUM
EXTENT PERMITTED BY APPLICABLE LAW, EVEN IF ANY REMEDY FAILS ITS
ESSENTIAL PURPOSE.

**12. REGISTRATION / USAGE INFORMATION.** When you use this software, and also when
you register this software, the following information about our software and your computer is
recorded into the VBConversions and/or our 3rd party User Registration Tracking Company
Database: Product Name, Version, Registration Key, Computer Name, Computers Internal IP
address, Username logged onto Computer, Operating Systems Registered Owner, Operating
Systems Registered Organization, Name, Organization Name, Email Address (as entered on the
registration screen), total number of lines converted, and installation date. Additionally, your
organizations public IP address, and hostname is recorded by VBConversions and/or the 3rd party
Tracking database. The above information may also be posted to VBConversions and/or our 3rd
party user registration database on a regular periodic basis in order to update our registered user
usage records. After every project conversion, the project name, number of lines of original and
converted code, CLR version number, number of lines with compiler errors, number of compiles,
and conversion time may also be recorded by VBConversions and/or our 3rd party User
Registration tracking company.

VBConversions assures the user, that the above information will be securely stored, and
maintained with the utmost care by VBConversions and our 3rd party User Registration tracking
company. By installing and/or registering and/or using this software, you agree that
VBConversions or our 3rd party User Registration tracking company should not be held liable in
any manner, if the security of this information is compromised in any manner. To the extent not
prohibited by law, in no event will VBConversions or our 3rd party User Registration tracking
company, and ours and its licensors be liable for any lost revenue, profit or data, or for special,
indirect, consequential, incidental or punitive damages, however caused regardless of the theory
of liability, arising if the security of this information is compromised in any manner, even if
VBConversions and our 3rd party User Registration tracking company has been advised of the
possibility of such damages. Only install this software, if you agree to have this information
recorded by VBConversions to our 3rd party User Registration tracking company. By installing
and/or registering and/or using this software, you agree that you grant VBConversions your full
and unconditional permission to record this information itself and to our 3rd party User
Registration tracking company.

**13. COPYRIGHT INFRINGEMENT.** You agree not to infringe on VBConversions copyright
of this software. Copyright violation could be in the form of a) violating license counts, which you
have purchased or b) using illegally generated registration keys to unlock the software, without
purchasing a valid license(s). You agree to only use Regsitration keys generated online from our
VBConversions website, or only use registration keys emailed to you by VBConversions or our
third party order processing Company. You agree that any attempt to register this software, or
unlock the software permanently, by using an illegal or fraudulent registration key makes this
software copy an illegal and unauthorized copy, and violates VBConversions copyright of this

**EXHIBIT 7 - PAGE 88**

software.

**14. ENTIRE AGREEMENT.** This EULA (including any addendum or amendment to this EULA which is included with the Software Product) is the entire agreement between you and VBConversions relating to the Software Product and the support services (if any) and they supersede all prior or contemporaneous oral or written communications, proposals and representations with respect to the Software Product or any other subject matter covered by this EULA. To the extent the terms of any VBConversions policies or programs for support services conflict with the terms of this EULA, the terms of this EULA shall control.

**EXHIBIT  7 - PAGE 89**

# EXHIBIT "C"

EXHIBIT  7 - PAGE 90

## VB Conversion

### Proof of illegal    Registration

Computer Name    NYITD6194D1

| | |
|---|---|
| *Server date* | 4/3/2007 2:42:37 PM |
| *Server time zone* | EDT |
| *Install (user date)* | 11/8/2006 12:30 PM |
| *Program* | VB.Net to C# Converter |
| *Program/version* | 2.06 |
| *Key* | 1A9WD-WZGRR-NZVYT-FU1MW-13RXU |
| *Register Name* | Ap |
| *Register email* | pa |
| *ip_internal* | 192.168.84.101 |
| *Computer* | NYITD6194D1 |
| *Username* | aestama |
| *Domain* | ZBINY |
| *Owner* | paul |
| *ip_external* | 208.195.65.104 |

| Userdate | VB_Project_Name | VB_Lines | CSharp_Lines |
|---|---|---|---|
| Wednesday, November 08, 2006 1:38:15 PM | test2.vbproj | 196 | 260 |
| Wednesday, November 08, 2006 1:42:28 PM | test2.vbproj | 463 | 646 |
| Wednesday, November 08, 2006 2:24:54 PM | test2.vbproj | 818 | 1005 |
| Wednesday, November 08, 2006 2:32:19 PM | test2.vbproj | 78 | 119 |
| Wednesday, November 08, 2006 2:51:27 PM | test2.vbproj | 1074 | 1116 |
| Wednesday, November 08, 2006 2:59:46 PM | test2.vbproj | 293 | 335 |
| Wednesday, November 08, 2006 3:48:47 PM | citi.vbproj | 581 | 648 |
| Wednesday, November 08, 2006 4:08:41 PM | CombineSwap.vb.vbproj | 33 | 48 |
| Wednesday, November 08, 2006 4:10:01 PM | CombineSwap.vb.vbproj | 227 | 266 |
| Wednesday, November 08, 2006 4:15:48 PM | countries.vbproj | 326 | 383 |
| Wednesday, November 08, 2006 4:27:46 PM | Deutschea.vbproj | 1086 | 1410 |
| Wednesday, November 08, 2006 4:33:32 PM | Deutschea.vbproj | 597 | 617 |
| Wednesday, November 08, 2006 4:38:14 PM | Deutschea.vbproj | 715 | 733 |
| Wednesday, November 08, 2006 4:50:33 PM | global.vbproj | 439 | 632 |
| Thursday, November 09, 2006 9:39:28 AM | Reconcile.vbproj | 702 | 852 |
| Thursday, November 09, 2006 9:49:08 AM | setProcessdate.vbproj | 161 | 192 |
| Thursday, November 09, 2006 9:51:27 AM | Soruces.vbproj | 277 | 323 |
| Thursday, November 09, 2006 9:53:27 AM | split.vbproj | 355 | 403 |
| Thursday, November 09, 2006 9:56:41 AM | startup.vbproj | 110 | 152 |
| Thursday, November 09, 2005 10:09:58 AM | Var.vbproj | 938 | 1250 |

**EXHIBIT 7 - PAGE 91**

| | | | |
|---|---|---|---|
| Thursday, November 09, 2006 10:15:27 AM | Var.vbproj | 998 | 1018 |
| Thursday, November 09, 2006 10:18:57 AM | Var.vbproj | 495 | 515 |
| Thursday, November 09, 2006 10:21:30 AM | Var.vbproj | 90 | 108 |
| Thursday, November 09, 2006 10:40:18 AM | Morgan.vbproj | 866 | 1053 |
| Thursday, November 09, 2006 10:45:15 AM | Morgan.vbproj | 939 | 1172 |
| Thursday, November 09, 2006 10:50:35 AM | Morgan.vbproj | 957 | 1256 |
| Thursday, November 09, 2006 10:53:58 AM | Morgan.vbproj | 1023 | 1046 |
| Thursday, November 09, 2006 10:59:41 AM | Morgan.vbproj | 1037 | 1056 |
| Thursday, November 09, 2006 11:00:34 AM | Morgan.vbproj | 1037 | 1056 |
| Thursday, November 09, 2006 11:03:09 AM | Morgan.vbproj | 1037 | 1056 |
| Thursday, November 09, 2006 11:26:09 AM | Morgan.vbproj | 1037 | 1057 |
| Thursday, November 09, 2006 11:30:17 AM | Morgan.vbproj | 456 | 486 |
| Thursday, November 09, 2006 11:39:08 AM | newbear.vbproj | 1030 | 1067 |
| Thursday, November 09, 2006 11:43:52 AM | newbear.vbproj | 319 | 339 |
| Thursday, November 09, 2006 11:49:04 AM | newbear.vbproj | 1097 | 1383 |
| Thursday, November 09, 2006 12:01:32 PM | newmorgan.vbproj | 958 | 1207 |
| Thursday, November 09, 2006 12:07:19 PM | newmorgan.vbproj | 264 | 404 |
| Thursday, November 09, 2006 12:16:04 PM | newmorgan.vbproj | 1036 | 1056 |
| Thursday, November 09, 2006 12:20:21 PM | newmorgan.vbproj | 1035 | 1055 |
| Thursday, November 09, 2006 12:22:31 PM | newmorgan.vbproj | 110 | 130 |
| Thursday, November 09, 2006 12:29:46 PM | deletenowtest.vbproj | 73 | 101 |
| Friday, November 17, 2006 2:28:28 PM | BondPayments.vbproj | 182 | 233 |
| Tuesday, April 03, 2007 3:02:57 PM | PrimeBroker.vbproj | 34040 | 39510 |
| | Total | 59597 | 68854 |

*Ziff Brothers Investments*

**EXHIBIT  7 - PAGE 92**

*VB Conversion*

*Proof of illegal*        *Usage*

Computer Name        NYITD6194D1

| | |
|---|---|
| *Server date* | 4/3/2007 2:39:46 PM |
| *Server time zone* | EDT |
| *Install (user date)* | 11/8/2006 12:30 PM |
| *Register (user)* | 26860 |
| *Program* | VB.Net to C# Converter |
| *Program/version* | 2.06 |
| *ip_internal* | 192.168.84.101 |
| *Computer* | NYITD6194D1 |
| *Username* | aestama |
| *Domain* | ZBINY |
| *Owner* | paul |
| *ip_external* | 208.195.65.104 |

*Ziff Brothers Investments*

**EXHIBIT 7 - PAGE 93**

Case 2:13-cv-08306-PSG-JEM   Document 61   Filed 05/30/14   Page 102 of 163   Page ID
Case 2:08-cv-01508-MMM-SH   Document 1-2   Filed 03/04/08   Page 8 of 22   Page ID #:8
#:853

# EXHIBIT "D"

EXHIBIT  7 - PAGE 94

Case 2:13-cv-08306-PSG-JEM  Document 61  Filed 05/30/14  Page 103 of 163  Page ID
#:854
Case 2:08-cv-01508-MMM-SH  Document 12  Filed 03/04/08  Page 9 of 22  Page ID #:9

*VB Conversion*

*Proof of illegal*     *Usage*

Computer Name     NYITD6194D1

---

*Server date*          6/1/2007 11:21:51 AM EDT

*Install (user date)*  11/8/2006 12:30 PM

*Program*              VB.Net to C# Converter

*Program/version*      2.06

*Key*                  1A9WD-WZGRR-NZVYT-FU1MW-13RXU

*Register Name*        Ap

*Register email*       pa

*ip_internal*          192.168.84.101

*Computer*             NYITD6194D1

*Username*             aestama

*Domain*               ZBINY

*Owner*                paul

*ip_external*          208.195.65.104

---

*Ziff Brothers Investments*

**EXHIBIT  7 - PAGE 95**

*VB Conversion*

*Proof of illegal   Usage*

Computer Name    NYITD6194D1

---

| | |
|---|---|
| *Server date* | 7/17/2007 4:18:49 PM EDT |
| *Install (user date)* | 11/8/2006 12:30 PM |
| *Program* | VB.Net to C# Converter |
| *Program/version* | 2.06 |
| *Key* | 1A9WD-WZGRR-NZVYT-FU1MW-13RXU |
| *Register Name* | Ap |
| *Register email* | pa |
| *ip_internal* | 192.168.84.101 |
| *Computer* | NYITD6194D1 |
| *Username* | aestama |
| *Domain* | ZBINY |
| *Owner* | paul |
| *ip_external* | 208.195.65.104 |

| Userdate | VB_Project_Name | VB_Lines | CSharp_Lines |
|---|---|---|---|
| Friday, June 01, 2007 11:26:29 AM | PrimeBroker.vbproj | 34140 | 40031 |
| Wednesday, June 06, 2007 11:35:53 AM | PrimeBroker.vbproj | 34163 | 40057 |
| Monday, June 25, 2007 10:20:02 AM | PrimeBroker.vbproj | 34248 | 40171 |
| Tuesday, July 17, 2007 4:23:01 PM | PrimeBroker.vbproj | 34755 | 40386 |
| Wednesday, July 18, 2007 3:14:47 PM | PrimeBroker.vbproj | 34892 | 40550 |
| Friday, August 17, 2007 10:28:51 AM | PrimeBroker.vbproj | 36255 | 42384 |

---

*Ziff Brothers Investments*

**EXHIBIT 7 - PAGE 96**

Case 2:13-cv-08306-PSG-JEM   Document 61   Filed 05/30/14   Page 105 of 163   Page ID
Case 2:08-cv-01508-MMM-SH   Document 1-2   Filed 03/04/08   Page 11 of 22   Page ID #:11
#:850

# EXHIBIT "E"

EXHIBIT 7 - PAGE 97

Case 2:13-cv-08306-PSG-JEM   Document 61   Filed 05/30/14   Page 106 of 163   Page ID
Case 2:08-cv-01508-MMM-SH   Document 1-23   Filed 03/04/08   Page 12 of 22   Page ID #:12
#:857

*VB Conversion*

*Proof of illegal    Usage*

Computer Name    NYITD6194D1

| | |
|---|---|
| *Server date* | 9/27/2007 9:18:28 AM |
| *Install (user date)* | 11/8/2006 12:30 PM |
| *Program* | VB.Net to C# Converter |
| *Program/version* | 2.06 |
| *Key* | 1A9WD-WZGRR-NZVYT-FU1MW-13RXU |
| *Register Name* | Ap |
| *Register email* | pa |
| *ip_internal* | 192.168.84.101 |
| *Computer* | NYITD6194D1 |
| *Username* | aestama |
| *Domain* | ZBINY |
| *Owner* | paul |
| *ip_external* | 208.195.65.104 |

| Userdate | VB_Project_Name | VB_Lines | CSharp_Lines |
|---|---|---|---|
| Thursday, September 27, 2007 9:24:22 AM | PrimeBroker.vbproj | 36443 | 42716 |
| Friday, October 05, 2007 9:15:39 AM | PrimeBroker.vbproj | 36477 | 42749 |
| Friday, October 12, 2007 6:33:28 PM | PrimeBroker.vbproj | 36668 | 42938 |

*Ziff Brothers Investments*

**EXHIBIT  7 - PAGE 98**

Case 2:13-cv-08306-PSG-JEM   Document 61   Filed 05/30/14   Page 107 of 163   Page ID
#:858
Case 2:08-cv-01508-MMM-SH   Document 1-2   Filed 03/04/08   Page 13 of 22   Page ID #:13

# EXHIBIT "F"

EXHIBIT  7 - PAGE 99

Case 2:13-cv-08306-PSG-JEM   Document 61   Filed 05/30/14   Page 108 of 163   Page ID
Case 2:08-cv-01508-MMM-SH   Document 1-2  Filed 03/04/08   Page 14 of 22   Page ID #:14
#:659

*VB Conversion*

*Proof of illegal        Usage*

Computer Name        NYITD6194D1

---

| | |
|---|---|
| *Server date* | 12/12/2007 3:32:24 PM EST |
| *Install (user date)* | 11/8/2006 12:30 PM |
| *Program* | VB.Net to C# Converter |
| *Program/version* | 2.06 |
| *Key* | 1A9WD-WZGRR-NZVYT-FU1MW-13RXU |
| *Register Name* | Ap |
| *Register email* | pa |
| *ip_internal* | 192.168.84.101 |
| *Computer* | NYITD6194D1 |
| *Username* | aestama |
| *Domain* | ZBINY |
| *Owner* | paul |
| *ip_external* | 208.195.65.104 |

---

*Ziff Brothers Investments*

**EXHIBIT 7 - PAGE 100**

Case 2:13-cv-08306-PSG-JEM  Document 61  Filed 05/30/14  Page 109 of 163  Page ID
Case 2:08-cv-01508-MMM-SH  Document 1-2  Filed 03/04/08  Page 15 of 22  Page ID #:15
#:860

*VB Conversion*

*Proof of illegal*    *Usage*

Computer Name    NYITD6194D1

---

| | |
|---|---|
| *Server date* | 12/12/2007 3:32:24 PM EST |
| *Install (user date)* | 11/8/2006 12:30 PM |
| *Program* | VB.Net to C# Converter |
| *Program/version* | 2.06 |
| *Key* | 1A9WD-WZGRR-NZVYT-FU1MW-13RXU |
| *Register Name* | Ap |
| *Register email* | pa |
| *ip_internal* | 192.168.84.101 |
| *Computer* | NYITD6194D1 |
| *Username* | aestama |
| *Domain* | ZBINY |
| *Owner* | paul |
| *ip_external* | 208.195.65.104 |

---

*Ziff Brothers Investments*

**EXHIBIT 7 - PAGE 101**

Case 2:13-cv-08306-PSG-JEM   Document 61   Filed 05/30/14   Page 110 of 163   Page ID
Case 2:08-cv-01508-MMM-SH   Document 1-2   Filed 03/04/08   Page 16 of 22   Page ID #:16
#:661

# EXHIBIT "G"

EXHIBIT 7 - PAGE 102

Case 2:13-cv-08306-PSG-JEM  Document 61  Filed 05/30/14  Page 111 of 163  Page ID
Case 2:08-cv-01508-MMM-SH  Document 42  Filed 03/04/08  Page 17 of 22  Page ID #:17
#:862

ARIN: WHOIS Database Search                                                    Page 1 of :

## ARIN WHOIS Database Search

**Relevant Links:  ARIN Home Page    ARIN Site Map   Training:  *Querying ARIN's WHOIS***

```
Search ARIN WHOIS for: I NET-208-195-65-0-1

                    Submit Query

CustName:    Ziff Brothers Investments
Address:     143 E 53rd St
City:        New York
StateProv:   NY
PostalCode:  10022
Country:     US
RegDate:     1996-05-13
Updated:     2003-05-30

NetRange:    208.195.65.0 - 208.195.65.255
CIDR:        208.195.65.0/24
NetName:     ZIFF2
NetHandle:   NET-208-195-65-0-1
Parent:      NET-208-192-0-0-1
NetType:     Reassigned
Comment:
RegDate:     1996-05-13
Updated:     2003-05-30

RTechHandle: OA12-ARIN
RTechName:   UUnet Technologies, Inc., Technologies
RTechPhone:  +1-800-900-0241
RTechEmail:  help4u@mci.com

OrgAbuseHandle: ABUSE3-ARIN
OrgAbuseName:   abuse
OrgAbusePhone:  +1-800-900-0241
OrgAbuseEmail:  abuse-mail@mci.com

OrgNOCHandle: OA12-ARIN
OrgNOCName:   UUnet Technologies, Inc., Technologies
OrgNOCPhone:  +1-800-900-0241
OrgNOCEmail:  help4u@mci.com

OrgTechHandle: SWIPP-ARIN
OrgTechName:   swipper
OrgTechPhone:  +1-800-900-0241
OrgTechEmail:  swipper@mci.com

# ARIN WHOIS database, last updated 2007-04-27 19:10
# Enter ? for additional hints on searching ARIN's WHOIS database.
```

Other WHOIS Servers:  AfriNIC   APNIC   LACNIC   RIPE   DoDNIC   InterNIC

Request Bulk Copies of ARIN WHOIS Data

Copyright © 2005 American Registry for Internet Numbers. All Rights Reserved.

**EXHIBIT 7 - PAGE 103**

DONALD M. GINDY
A PROFESSIONAL LAW CORPORATION
1880 CENTURY PARK EAST, SUITE 615
LOS ANGELES, CA 90067
Don@gindylaw.com
Tel. 310-772-0585 Fax. 310-772-0018

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| David Crook doing business as VB Conversions, | CASE NUMBER |
| PLAINTIFF(S) | **CV08-1508 MMM** ₡Ꜣₓ |
| v. | |
| Ziff Brothers Investments, a Delaware Limited Liability Company; Ziff-Davis Media, Inc., a Delaware Corporation; Andy Estema, an individual; DOES 1-10 , Inclusive. | |
| DEFENDANT(S). | SUMMONS |

TO:    THE ABOVE-NAMED DEFENDANT(S):

YOU ARE HEREBY SUMMONED and required to file with this court and serve upon plaintiff's attorney
DONALD M. GINDY, ESQ._____, whose address is:

DONALD M. GINDY
A PROFESSIONAL LAW CORPORATION
1880 CENTURY PARK EAST, SUITE 615
LOS ANGELES, CA 90067

an answer to the ☒ complaint ☐_____amended complaint ☐ counterclaim ☐ cross-claim
which is herewith served upon you within _20_ days after service of this Summons upon you, exclusive
of the day of service. If you fail to do so, judgement by default will be taken against you for the relief
demanded in the complaint.

Dated: **MAR - 4 2008**

Clerk, U.S. District Court

By: _V. Herna____
Deputy Clerk

(Seal of the Court)    1196

**EXHIBIT  7 - PAGE 104**

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

| I.(a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| DAVID CROOK DOING BUSINESS ASS VB CONVERSIONS, A SOLE PROPRIETORSHIP | Ziff Brothers Investments, a Delaware Limited Liability Co.; Ziff-Davis Media, Inc., a Delaware Corporation; Andy Esterna, an individual; DOES 1-10, Inclusive. |

| (b) County of Residence of First Listed Plaintiff (Except in U.S. Plaintiff Cases): | County of Residence of First Listed Defendant (In U.S. Plaintiff Cases Only): |
|---|---|

| (c) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) DONALD M. GINDY A PROFESSIONAL CORPORATION 1880 CENTURY PARK EAST, SUITE 615 LOS ANGELES, CA 90067-1622 | Attorneys (If Known) |
|---|---|

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only (Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No   ☐ MONEY DEMANDED IN COMPLAINT: $ 150,000.00

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Copyright Infringement and Unfair Competition  COPYRIGHT INFRINGEMENT

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE/PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 190 Other Contract | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 195 Contract Product Liability | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Accommodations | ☐ 630 Liquor Laws | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 196 Franchise | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 640 R.R. & Truck | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | REAL PROPERTY | | ☐ 445 American with Disabilities - Employment | ☐ 650 Airline Regs | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 210 Land Condemnation | | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 220 Foreclosure | | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 230 Rent Lease & Ejectment | | | | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 240 Torts to Land | | | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 245 Tort Product Liability | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 290 All Other Real Property | | | | ☐ 871 IRS-Third Party 26 USC 7609 |

**VIII(a). IDENTICAL CASES:** Has this action been previously filed and dismissed, remanded or closed? ☒ No ☐ Yes

If yes, list case number(s):

**FOR OFFICE USE ONLY:** Case Number:

CV-71 (07/05)   ▮▮▮CV08-1508       CIVIL COVER SHEET       Page 1 of 2

**EXHIBIT  7 - PAGE 105**

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

VIII(b).  RELATED CASES: Have any cases been previously filed that are related to the present case?  ☐ No   ☑ Yes

If yes, list case number(s): VB CONVERSIONS v. METRO ENTERTAINMENT, INC. ( CASE NO. CV07 2409 SVW) (MAN)

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)   ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
                               ☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
                               ☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
                               ☐ D.  Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

IX. VENUE: List the California County, or State if other than California, in which EACH named plaintiff resides (Use an additional sheet if necessary)
☑ Check here if the U.S. government, its agencies or employees is a named plaintiff.
   Kansas

List the California County, or State if other than California, in which EACH named defendant resides. (Use an additional sheet if necessary).
☑ Check here if the U.S. government, its agencies or employees is a named defendant.
   Delaware

List the California County, or State if other than California, in which EACH claim arose. (Use an additional sheet if necessary)
Note: In land condemnation cases, use the location of the tract of land involved.

X. SIGNATURE OF ATTORNEY (OR PRO PER):                                    Date   2-28-08

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings
or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not
filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions
sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program.  (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969 (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

CV-71 (07/05)                                   CIVIL COVER SHEET                                   Page 2 of 2

EXHIBIT  7 - PAGE 106

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Margaret M. Morrow and the assigned discovery Magistrate Judge is Stephen J. Hillman.

The case number on all documents filed with the Court should read as follows:

## CV08- 1508 MMM (SHx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

= = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = =

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] Western Division | [ ] Southern Division | [ ] Eastern Division |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)         NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

**EXHIBIT 7 - PAGE 107**

FILED        SEND

2008 MAR -4 PM 2: 40

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF
LOS ANGELES

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | CASE NUMBER |
|---|---|
| David Crook doing business as VB Conversions, a sole proprietorship<br><br>PLAINTIFF(S). | **CV08- 1508** MMM SH<sub></sub> |
| v. | |
| Ziff Brothers Investments, a Delaware Ltd Liability Co; Ziff-Davis Media, Inc., a Delaware Corp.;<br>DEFENDANT(S). | NOTICE TO COUNSEL RE: COPYRIGHT, PATENT, AND TRADEMARK REPORTING REQUIREMENTS |

TO:    COUNSEL OF RECORD:

    Pursuant to Local Rule 3-1 of this court, in all cases where jurisdiction is invoked in whole or in part under 28 U.S.C. Section 1338 (regarding patents, plant variety protection, copyrights and trademarks), counsel shall, at the time of filing of the complaint, provide the Clerk with an original and two (2) copies of the required notice (AO 120) to the Patent and Trademark Office in patent, plant variety protection and trademark matters and / or an original and four (4) copies of the required notice (AO 121) in copyright matters. The required forms of notice to the Patent and Trademark and Copyright Offices are enclosed for your convenience.

    Please complete the enclosed form(s) and return to: Clerk, U. S. District Court, ATTN: New Actions, at the following address within ten (10) days:

☒ 312 N. Spring Street      ☐ 411 West Fourth St.      ☐ 3470 Twelfth Street
   Main Floor, Room G-8        Suite 1053            Room 134
   Los Angeles, CA 90012      Santa Ana, CA 92701-4516    Riverside, CA 92501
   Phone: (213)894-2215       Phone: (714)338-4750     Phone: (951)328-4450

    If you should have any questions regarding this matter, you may contact the Intake Supervisor at the above-noted phone number.

CLERK, U. S. DISTRICT COURT

Dated: _____    By: _____
                                             Deputy Clerk

**EXHIBIT 7 - PAGE 108**

# EXHIBIT "8"

EXHIBIT  8 - PAGE 109

DONALD M. GINDY
PROFESSIONAL LAW CORPORATION
1880 CENTURY PARK EAST
SUITE 615
LOS ANGELES, CALIFORNIA 90067-1622
Tel (310) 772-0585
Fax (310) 772-0018
email: don@gindylaw.com
SBN 45228
Attorney for Plaintiff David Crook dba VB Conversions

FILED

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY

2009 AUG 12 PM 3: 56

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA- WEST REGION

| | |
|---|---|
| DAVID A. CROOK dba VB CONVERSIONS, | CASE NO. |
| Plaintiff, | **CV09-05899 AHM (Ex)** |
| vs. | COMPLAINT FOR: |
| | 1. COPYRIGHT INFRINGEMENT; |
| HARCOURT INVESTMENT CONSULTING AG, a Swiss corporation; KOECHLIN, an individual; DOES 1-10 inclusive, | 2. CONTRIBUTORY COPYRIGHT INFRINGEMENT; |
| | 3. VICARIOUS COPYRIGHT INFRINGEMENT; |
| Defendants | 4. VIOLATION OF THE DIGITAL MILLENNIUM COPYRIGHT ACT, SECTION 1201; |
| | 5. REQUEST FOR INJUNCTIVE RELIEF |
| | *Demand for trial by jury* |

///

Page 1 of 15                                    COMPLAINT

**EXHIBIT 8 - PAGE 110**

Plaintiff, David A. Crook doing business as VB Conversions, a sole

proprietorship, hereby brings the within action against Harcourt Investment

Consulting AG, a Swiss corporation, (hereinafter "Harcourt"), an individual

only known as Koechlin and other unknown individuals, for their systematic

and continuous acts of copyright infringement, vicarious and contributory

copyright infringement and violation of the Digital Millennium Copyright Act,

Section1201 This action is based upon a federal question.

## A.       SUMMARY OF THE ACTION.

1.       This action seeks damages and injunctive relief based upon

defendant's unauthorized copying and usage of plaintiff's copyrighted

software entitled "VB.NET to C# Converter."   (C# is pronounced C Sharp)

## B.   JURISDICTION.

2.       This action arises under the Copyright Act of the United States,17

U.S.C.§101 and 501, et seq.  This Court has jurisdiction over the subject matter

of this action pursuant to 28 U.S.C. § 1338 (a)

3.       Venue is proper in this Court pursuant to 28 U.S.C.§ 1391(b) (2) &

(3).

4.       Further, Plaintiff alleges venue is proper as the result of a Forum

Selection Clause in a license agreement affirmed by defendant designating the

County of Los Angeles, State of California, as the appropriate location for

hearing in the event of a dispute.

**COMPLAINT**

**EXHIBIT  8 - PAGE 111**

## C.   PARTIES.

5.   David L. Crook is the sole owner and operator of his company entitled VB Conversions (hereinafter "VBC"). He is a resident of Kansas City, MO. The principal headquarters of his business is located there.

6.   Plaintiff is informed and believes and thereon alleges that Harcourt is a joint stock corporation under the laws of Switzerland, whose principal headquarters are located at Stampfenbachstrasse 48, Zurich, Switzerland.

7.   Plaintiff is informed and believes and thereon alleges that Harcourt maintains offices in various cities around the world including: Madrid, Geneva, Stockholm, Hong Kong and New York.

8.   Plaintiff is informed and believes and thereon alleges that Harcourt is engaged in the business of hedge fund investments as a "fund of funds." In particular, Harcourt attempts to appeal to institutional investors.

9.   Plaintiff is further informed and believes and thereon alleges that Harcourt employs an individual by the name of Koechlin as a computer specialist, who at all relevant times mentioned herein, was working within the course and scope of employment. Plaintiff believes Koechlin is responsible, in part, for the claims of infringement set forth herein.

## D.   GENERAL ALLEGATIONS.

10.   Plaintiff has registered his programs with the Register of

COMPLAINT

EXHIBIT 8 - PAGE 112

1  Copyright and was given the registration number of TX 6-285-849 for Version

2  1.0 of the above entitled program; TX 6-425-720 for Version 2.0. A copy of

3

4  his registrations are attached hereto and incorporated by reference as Exhibit

5  "A."

6

7      11.    VBC sells its copyrighted program online at

8  www.vbconversions.net. Mr. Crook subscribes to the Shareware philosophy

9  of offering his program for a limited time to potential purchasers. In this

10
   instance, he offers it for 15 days. A party is permitted to try out the program
11

12  and see if it is suitable for their needs. If so, they may apply for a license by

13  paying the required fee and affirming a license agreement. However, prior to

14
   being permitted to use the Trial version, a prospective purchaser must first
15

16  affirm an End User Licensing Agreement. The trial version of the program

17  automatically disables after 15 days. A copy of the End User Licensing

18
   Agreement (EULA) is attached hereto as Exhibit "B."
19

20      12.    Unfortunately, despite the best efforts of VBC, it has not been able

21  to stem the tide of unscrupulous people who have gained unauthorized access

22
   to his program and have used the software to quickly convert to this latest
23

24  incarnation of computer language.  These intruders have used so-called

25  "cracking sites" which exist in great abundance on the Internet. These sites

26
   supply the decryption of registration keys to developer's software and enable
27

28  fraudulent registration codes (or keys) to be used in order to gain access to the

**COMPLAINT**

EXHIBIT 8 - PAGE 113

1  programs.  In self defense, VBC has adopted a tracking system which is able to

2
3  identify the date and time of the intruder, the external and internal IP of the

4  offending computer, the identity of the user of that computer and other data

5  which is integral to proof of infringement.

6
7       13.    The tracking system VBC adopted was created by Hitek Software

8  LLC of Goleta, CA. VBC and Hitek have contracted to have the latter monitor

9  its program and detect unauthorized access. Hitek receives the data at its

10  servers almost simultaneously as it is received at VBC's servers.

11
12      14.    In business programming, Visual Basic (VB) has one of the largest

13  user bases and is probably the most popular programming language.  But

14
15  many developers look to more recent computer languages in order to enhance

16  what they do and to eliminate flaws found in earlier programs such as VB.

17  Newer languages used by programmers include C, C+and C++.  C# has

18
19  evolved from these earlier attempts at improving VB.

20      15.    C# is intended to be a simple, modern, general-purpose,

21
22  programming language. The language is intended for use in developing

23  software components suitable for deployment in many different

24  environments.  For instance, C# compilers exist for just about every platform

25
26  imaginable, including Mac, Linux, Windows, Solaris, etc.

27      16.    C# is suitable for writing applications for both hosted and

28

Page 5 of 15                          **COMPLAINT**

**EXHIBIT 8 - PAGE 114**

Case 2:13-cv-08306-PSG-JEM   Document 61   Filed 05/30/14   Page 123 of 163   Page ID
#:874
Case 2:09-cv-05899-AHM-E   Document 1   Filed 08/12/09   Page 6 of 40   Page ID #:6

embedded systems, ranging from the very large that use sophisticated

operating systems, down to the very small having dedicated functions.

17.    Plaintiff is informed and believes that at all times mentioned

herein defendant has engaged in the offering of  services within the County of

Los Angeles, State of California.  Plaintiff alleges that Harcourt has formed a

strategic alliance with Nuveen Investments for the purpose of the latter

distributing Harcourt investment products in the United States.  Plaintiff

believes that said products have been and now are being sold in the County of

Los Angeles.

18.    Plaintiff is unaware of the names and true capacities of

Defendants, whether individual, corporate and/or partnership entities, named

herein as DOES 1 through 10, inclusive, and therefore sues them by their

fictitious names.  Plaintiff will seek leave to amend this complaint when their

true names and capacities are ascertained.  Plaintiff is informed and believes

and thereon alleges that all of the defendants, known and unknown, are in

some manner responsible for the wrongs alleged herein and that at all times

mentioned herein were the agent and servant of the other Defendants and

acting within the course and scope of said agency and employment. In the

alternative, defendants and each of them were acting as joint venturers or

partner-in-concert for the purpose of copying plaintiff's work.

19.    Plaintiff is informed and believes and thereon alleges that at all

**COMPLAINT**

**EXHIBIT  8 - PAGE 115**

1  times relevant hereto, Defendants and DOES 1-10, inclusive, knew or

2

3  reasonably should have known of the acts and behavior alleged herein and the

4  damages caused thereby, and by their inaction ratified and encouraged such

5  acts and behavior. Plaintiff further alleges that said defendants have a

6

7  non-delegable duty to prevent or cause such acts and behavior described

8  herein, which duty defendants failed and/or refused to perform.

9  **FIRST CLAIM FOR RELIEF:** *Violation of 17 U.S.C.§106(1)&*

10  *501.et.seq., Copyright Infringement against all defendants.*

11  20.   Plaintiff incorporates by reference paragraphs 1 through 19, as if

12

13  the same were set forth fully herein.

14  21.   It was disclosed that a computer owned and operated and/or

15  under the care, custody and control of defendant Harcourt had used a

16

17  fraudulent registration "key" (or code) to unlock plaintiff's program, Version

18  2..15. The first act of unauthorized access to the software was determined to

19  have occurred on February 5, 2008, at 2:49 p.m. (Western European time)  It

20

21  appears that the country of origin of the infringing act emanated from the

22  United Kingdom.

23  22.   The identity of the computer which was the device used to gain

24

25  access is called "PC-117XP." The public Internet Protocol address was detected

26  as: 217.8.202.90.  The report from RIPE indicates that this is a computer

27

28

**EXHIBIT  8 - PAGE 116**

Case 2:13-cv-08306-PSG-JEM   Document 61   Filed 05/30/14   Page 125 of 163   Page ID
#:876
Case 2:09-cv-05899-AHM-E   Document 1   Filed 08/12/09   Page 8 of 40   Page ID #:8

1   owned and/or operated by defendant Harcourt.  The internal IP address was

2   noted to be; 172.21.13.48.  The identity of the User of this machine is identified

3

4   as "simitovic."

5       23.   Thereafter, on May 8, 2008, commencing at 4:05 p.m. (Western

6   European standard time) and for the next two hours and fifty-two (2 hrs., 52

7

8   min.)minutes, a device with the same public IP as above, but with a different

9   private IP, 172.21.13.58, apparently on the same network, copied plaintiff's

10

11  software without the knowledge or consent of the plaintiff.

12      24.   In this subsequent act of infringing, two different computers are

13  noted to have been used to accomplish the wrongful acts.  Those two

14

15  computers are entitled:"NOTE–016XP" and "PC-099XP."  The identity of the

16  user is noted to be "koechlin." The Version is 2.17 of plaintiff's program.

17      25.   In gaining unauthorized access to plaintiff's software by use of a

18

19  fraudulent code or key, the defendants were able to convert Visual Basic lines

20  of code to 996,876 lines of C#.  This constitutes an enormous number of lines

21

22  converted.

23      26.   "Reseaux IP Europeens" or RIPE is one of five Regional Internet

24  Registries (RIRs) providing Internet resource allocations, registration service

25

26  and co-ordination activities that support operation of the Internet globally.

27  RIPE is responsible for the assignment of internet protocol addresses within

28  its geographic region.  The region encompasses Europe and the Middle East.

**COMPLAINT**

EXHIBIT 8 - PAGE 117

1   (The RIR assigned to North and South America is called American Registry of

2   Internet Numbers or ARIN.)

3        27.   RIPE confirms that the public internet protocol numbers of

4   217.8.202.90 indicate computers owned and/or operated by defendant

5   Harcourt. A copy of its findings are attached hereto as Exhibit " C ."

6        28.   As a proximate result of the unauthorized access obtained by

7   defendants, and each of them, the plaintiff sustained a loss of sales, a

8   diminution of value of his program, a potential loss of license

9   value.Meanwhile, the defendants have profited unjustly in the sum of

10  $996,876.00, at the very least, by avoiding the cost and expense of hiring a

11  competent computer programmer able and willing to do the work completed

12  by the unauthorized use of plaintiff's program.

13       29.   Plaintiff is informed and believes and thereon alleges that without

14  the benefit of plaintiff's copyrighted program, a programmer would require, at

15  the very least 9,968 hours to convert the number of lines which defendants'

16  obtained by way of their fraudulent actions.  Plaintiff is further informed that

17  the average cost of a programmer is approximately $100.00 per hour. It is

18  estimated that a programmer with enough knowledge and experience could

19  only convert about 100 hours per hour without plaintiff's program.

20  Accordingly, defendants' have been unjustly enriched and profited by

21  misappropriating the code in the amount of $996,876.00, in that they did not

**COMPLAINT**

**EXHIBIT  8 - PAGE 118**

1  have to employ such persons to do this work and pay them the customary

2  amount required to do an equivalent job.

3

4      30.    Plaintiff further contends that defendants, and each of them, have

5  profited and will continue to profit in an amount unknown, but according to

6  proof pursuant to 17 U.S.C. § 504(a)(1) & (b).

7

8      31.    Plaintiff further contends that the use of fraudulent codes to gain

9  unauthorized access to the program was an intentional, knowledgeable and

10  deliberate act designed to unlock plaintiff's registration code. It was therefore

11  a willful violation subjecting defendants' to the maximum statutory award of

12  $300,000.00, for violation of each of plaintiff's copyrighted works.

13

14  **SECOND CLAIM FOR RELIEF**: _Vicarious Copyright Infringement_

15  _against defendant Harcourt._

16

17      32.    Plaintiff incorporates by reference paragraphs 1 through 31, as if

18  the same were set forth fully herein.

19

20      33.    Plaintiff is informed and believes and thereon alleges that all time

21  mentioned herein defendants and each of them had the right and ability to

22  oversee, govern, control and direct its employees actions, including, but not

23  limited to halting any adverse or unlawful action taken by said employees.

24  Yet, despite the ability set forth above, defendants have failed and refused to

25  enforce rules of conduct regarding the unauthorized taking of intellectual

26  property by their employees.

27

28

**COMPLAINT**

**EXHIBIT 8 - PAGE 119**

34.   Plaintiff is informed and believes that defendants and others whose identity is unknown to plaintiff were all employed by defendants at all relevant times as computer specialists. As a result, they were under the control and supervision of the other entity defendants and at all times were performing their duties in the course and scope of employment.

35.   As a result of the activities of the said employee defendants, Harcourt has profited as set forth above in an amount and in a manner that would not have taken place but for the purloining of plaintiff's copyrighted software. As a consequence, Harcourt has gained a financial benefit to which it was not entitled.

36.   Under the circumstances outlined above, defendants and each of them are jointly and severally liable to plaintiff as vicarious copyright infringers in at least the amount of $996,876.00.  Defendants are also liable to plaintiff for Actual Damages over and above those stated for its use of the program in the production of Net Profit attributable to the infringement.. Plaintiff, in the alternative, seeks maximum Statutory Damages for each of his copyrighted works or $300,000.00.

**THIRD CLAIM FOR RELIEF:** *Contributory Copyright Infringement against Harcourt.*

37.   Plaintiff incorporates by reference paragraphs 1 through 36, as if the same were set forth fully herein.

COMPLAINT

EXHIBIT  8 - PAGE 120

Case 2:13-cv-08306-PSG-JEM   Document 61   Filed 05/30/14   Page 129 of 163   Page ID
#:880
Case 2:09-cv-05899-AHM-E   Document 1   Filed 08/12/09   Page 12 of 40   Page ID #:12

38.     Plaintiff is informed and believes and thereon alleges that Harcourt aided and abetted the actions of its employees and materially contributed thereto by supplying the data and equipment necessary to encourage, urge and persuade and induce the usage of plaintiff's intellectual property for the financial benefit of the entity defendants.

39.     As a proximate result, the entity defendants and each of them are jointly and severally liable to plaintiff in Actual Damages in an amount of at least $996,876.00, and all profits attributable to the infringement thereafter. In the alternative, defendants are liable for Statutory Damages in the amount of $300,000.00, as and for the willful violation of each of plaintiff's copyrighted programs.

**FOURTH CLAIM FOR RELIEF:** _Violation of the Digital Millennium Copyright Act (17 U.S.C. § 1201)._

40.     Plaintiff repeats and re-alleges paragraphs 1 through 39, as if the same were set forth fully herein.

41.     At all times mentioned herein, plaintiff had in force a 25 digit alphanumeric code designed to control access to his copyrighted software. It is only when a legitimate purchaser fulfills his obligation with respect to the terms and conditions of the End User Licensing Agreement (EULA) and pays the appropriate fee, that unlimited access to the licensed product is permitted. When adherence to the EULA was satisfied plaintiff will issue to the licensee a

COMPLAINT

**EXHIBIT 8 - PAGE 121**

1  license and provide a legitimate code enabling access to the copyrighted

2  program.

3

4      42.    The code is intended as a technological measure for the purpose of

5  protecting his proprietary program.  To gain access requires knowledge of the

6  25 digits issued by plaintiff.  It is intended to exclude those who sought to

7

8  circumvent the code.

9      43.    The true number of occasions of acts of circumvention is

10  unknown to plaintiff at this time, but at least twenty-seven occasions have

11  been detected.

12

13      44.    As a consequence of defendants' unlawful and unauthorized

14  circumvention of plaintiff's measures, plaintiff has sustained damages as

15  previously set forth herein.

16

17      45.    The use of the circumvention device to gain access is an

18  intentional and knowledgeable act by the defendants.  It is therefore willful

19  and subjects defendants jointly and severally liable for the maximum allowed

20  for Statutory Damages per act of circumvention or $67,500.00, which sum is

21  in addition to any damages awarded for infringement.

22

23

24      **WHEREFORE**, plaintiff prays that the Court issue the  following:

25      A.    Defendant be enjoined during the pendency of this action and

26

27

28

**COMPLAINT**

**EXHIBIT  8 - PAGE 122**

1   permanently thereafter from appropriating, using or otherwise benefitting

2   from plaintiff's copyrighted application software identified above without the

3

4   express written approval of plaintiff or his delegate;

5       B.      Defendants be ordered to identify, preserve, set aside and retain

6

7   any and all source code used by them in the infringement alleged above

8   pursuant to Federal Rule of Civil Procedure 34, which includes, but is

9   not limited to:(i) all electronically stored information which contains

10

11  any portion of plaintiff's copyrighted program; (ii) all writings as

12  defined in Federal Rule of Evidence 1001, which refer to or mention in

13  any manner plaintiff's program, except to those items based on

14

15  privilege;

16      C.      Pay any and all damages sustained by him as the result of their

17  unlawful acts, with prejudgment interest, as well as account for and pay

18

19  for all gains and profits they have enjoyed at plaintiff's expense.   In

20  particular, Plaintiff demands compensation of at least $300,000.00,

21  in Statutory Damages for infringement of each of his works; or, Actual

22

23  Damages of at least $996,876.00, plus profits attributable to the infringement,

24  both direct and indirect, according to law; and, $67,500.00 for violation of

25

26  Section 1201 of the Digital Millennium Copyright Act;

27      D.      Trial by jury;

28      E.      All costs of litigation, including, but not limited to costs of suit,

Page 14 of 15                                    **COMPLAINT**

**EXHIBIT 8 - PAGE 123**

1    reasonable attorney fees and interest on the judgment at legal rates; /

2

3        F.    Such other and further relief as the Court deems just.

4

5    DATED: August 4, 2009

6

7                          DONALD M. GINDY
                      PROFESSIONAL LAW CORPORATION
8

9              BY:    _____

10                          DONALD M. GINDY
                            Attorney for Plaintiff
11                          David A. Crook dba VB Conversions

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                    Page 15 of 15                        **COMPLAINT**

                                                   **EXHIBIT 8 - PAGE 124**

# EXHIBIT A

EXHIBIT  8 - PAGE 125

in accordance with title 17, United States Code,
identified below. The information on this certificate has
been made a part of the Copyright Office records.

UNITED STATES COPYRIGHT OFFICE

TX 6-285-849

*Marybeth Peters*

Register of Copyrights, United States of America

EFFECTIVE DATE OF REGISTRATION

Feb 13 2006
Month Day Year

---

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**1** TITLE OF THIS WORK ▼
VB.Net to C# Convertor 1.x

PREVIOUS OR ALTERNATIVE TITLES ▼

PUBLICATION AS A CONTRIBUTION If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared. Title of Collective Work ▼

If published in a periodical or serial give: Volume ▼    Number ▼    Issue Date ▼    On Pages ▼

---

**2**   **a**   NAME OF AUTHOR ▼
David Crook

DATES OF BIRTH AND DEATH
Year Born ▼ 1964    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☑ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶ USA
   Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous? ☐ Yes ☑ No
Pseudonymous? ☐ Yes ☑ No
If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed. ▼
Converts programs written in the Visual Basic.Net language to C#

**NOTE**
Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

**b** NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶
   Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous? ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed. ▼

**c** NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶
   Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous? ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed. ▼

---

**3**   **a**   YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED This information 2004 ◀ Year must be given in all cases.

**b** DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK
Complete this information Month ▶ July Day ▶ 1 Year ▶ 2004
ONLY if this work has been published.
USA ◀ Nation

---

**4** COPYRIGHT CLAIMANT(S) Name and address must be given even if the claimant is the same as the author given in space 2. ▼
David Crook
11184 Antioch #179
Overland Park, KS 66210

*See instructions before completing this space.*

TRANSFER If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

APPLICATION RECEIVED
FEB 13 2006
ONE DEPOSIT RECEIVED
FEB 13 2006
TWO DEPOSITS RECEIVED
FUNDS RECEIVED

DO NOT WRITE HERE
OFFICE USE ONLY

---

MORE ON BACK ▶ • Complete all applicable spaces (numbers 5-9) on the reverse side of this page.
• See detailed instructions. • Sign the form at line 8.

DO NOT WRITE HERE
Page 1 of ____ pages

EXHIBIT 8 - PAGE 126

CORRESPONDENCE [ ] Yes

FOR COPYRIGHT OFFICE USE ONLY

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?

[ ] Yes [✗] No If your answer is "Yes," why is another registration being sought? (Check appropriate box.) ▼

a. [ ] This is the first published edition of a work previously registered in unpublished form.

b. [ ] This is the first application submitted by this author as copyright claimant.

c. [ ] This is a changed version of the work, as shown by space 6 on this application.

If your answer is "Yes," give: Previous Registration Number ▶ _____ Year of Registration ▶

**5**

**DERIVATIVE WORK OR COMPILATION**

Preexisting Material Identify any preexisting work or works that this work is based on or incorporates. ▼

**6** a

See instructions before completing this space.

Material Added to This Work Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

b

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.

Name ▼ Account Number ▼

**7** a

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent. Name/Address/Apt/City/State/ZIP ▼

David Crook
11184 Antioch #179
Overland Park, KS 66210

b

Area code and daytime telephone number ▶ (913) 660-4664 Fax number ▶

Email ▶ admin@vbconversions.com

**CERTIFICATION** I, the undersigned, hereby certify that I am the

Check only one ▶

[✗] author
[ ] other copyright claimant
[ ] owner of exclusive right(s)
[ ] authorized agent of _____

Name of author or other copyright claimant, or owner of exclusive right(s) ▲

**8**

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.

David Crook Date ▶ 1/19/2006

Handwritten signature (X) ▼

X _David Crook_

Certificate will be mailed in window envelope to this address:

Name ▼
David Crook

Number/Street/Apt ▼
11184 Antioch #179

City/State/ZIP ▼
Overland Park, KS 66210

**9**

• Complete all necessary spaces
• Sign your application in space 8

1. Application form
2. Nonrefundable filing fee in check or money order payable to Register of Copyrights
3. Deposit material

Library of Congress
Copyright Office • TX
101 Independence Avenue, S.E.
Washington, D.C. 20559-6222

*17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

Rev: July 2003—xxx Web Rev: July 2003 ⊕ Printed on recycled paper

U.S. Government Printing Office: 2000-461-113/20,021

**EXHIBIT 8 - PAGE 127**

This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

**FORM TX**

TX 6–425–720

*Marybeth Peters*

Register of Copyrights, United States of America

EFFECTIVE DATE OF REGISTRATION

Jul 26 2006

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

**TITLE OF THIS WORK ▼**

VB.NET to C# CONVERTER, VERSION 2.0

**PREVIOUS OR ALTERNATIVE TITLES ▼**

**PUBLICATION AS A CONTRIBUTION** If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared.    Title of Collective Work ▼

If published in a periodical or serial give:    Volume ▼    Number ▼    Issue Date ▼    On Pages ▼

**NAME OF AUTHOR ▼**

DAVID CROOK

DATES OF BIRTH AND DEATH
Year Born ▼ 1964    Year Died ▼ N/A

Was this contribution to the work a "work made for hire"?
☐ Yes
☑ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
Citizen of ▶ UNITED STATES
OR
Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?    ☐ Yes ☐ No
Pseudonymous?    ☐ Yes ☑ No

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed. ▼
NEW AND REVISED COMPUTER PROGRAM TEXT

**NAME OF AUTHOR ▼**

DATES OF BIRTH AND DEATH
Year Born ▼    Year Died ▼

NOTE
Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
Citizen of ▶
OR
Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?    ☐ Yes ☐ No
Pseudonymous?    ☐ Yes ☐ No

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed. ▼

**NAME OF AUTHOR ▼**

DATES OF BIRTH AND DEATH
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
Citizen of ▶
OR
Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?    ☐ Yes ☐ No
Pseudonymous?    ☐ Yes ☐ No

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed. ▼

**YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED**    This information must be given    ONLY if this work has been published.
2006

**DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK**
Month ▶ JULY    Day ▶ 18    Year ▶ 2006
UNITED STATES    ◀ Nation

**COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2. ▼

DAVID CROOK
11184 Antioch #179
Overland Park, KS 66210

APPLICATION RECEIVED
JUL 26 2006
ONE DEPOSIT RECEIVED
JUL 26 2006
TWO DEPOSITS RECEIVED

FUNDS RECEIVED

**TRANSFER** If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

MORE ON BACK ▶    Complete all applicable spaces (numbers 5-9) on the reverse side of this page.    DO NOT WRITE HERE
See detailed instructions.    Sign the form at line 8.    Page 1 of _____ pages

**EXHIBIT 8 - PAGE 128**

CORRESPONDENCE
☑ Yes

FOR
COPYRIGHT
OFFICE
USE
ONLY

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

PREVIOUS REGISTRATION Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?
☑ Yes ☐ No If your answer is "Yes," why is another registration being sought? (Check appropriate box.) ▼

a. ☐ This is the first published edition of a work previously registered in unpublished form.
b. ☐ This is the first application submitted by this author as copyright claimant.
c. ☑ This is a changed version of the work, as shown by space 6 on this application.

If your answer is "Yes," give: Previous Registration Number ▶ TX 6-285-849    Year of Registration ▶ 2004

DERIVATIVE WORK OR COMPILATION
Preexisting Material Identify any preexisting work or works that this work is based on or incorporates. ▼

VB NET to C# CONVERTER, VERSION 1.0

Material Added to This Work Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

NEW AND REVISED COMPUTER PROGRAM TEXT

DEPOSIT ACCOUNT If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.
Name ▼                                           Account Number ▼

CORRESPONDENCE Give name and address to which correspondence about this application should be sent.   Name/Address/Apt/City/State/Zip ▼

DONALD M. GINDY
DONALD M. GINDY, PLC
1880 CENTURY PARK EAST, SUITE 615 LOS ANGELES, CA 90067

Area code and daytime telephone number ▶ (310) 772-0585          Fax number ▶ (310) 772-0018
Email ▶ don@gindylaw.com

CERTIFICATION* I, the undersigned, hereby certify that I am the
Check only one ▶
☐ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☑ authorized agent of

Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made
by me in this application are correct to the best of my knowledge.

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.
DAVID CROOK                                                         Date ▶ 7/18/2006

Handwritten signature (X) ▼
X David A. Crook

Certificate
will be
mailed in
window
envelope
to this
address

Name ▼
DAVID CROOK
Number/Street/Apt ▼
11124 Antioch #179
City/State/Zip ▼
Overland Park, KS 66210

*17 USC § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

US Government Printing Office: 2002—XXX-XXX/XXX

EXHIBIT 8 - PAGE 129

Case 2:13-cv-08306-PSG-JEM   Document 61   Filed 05/30/14   Page 138 of 163   Page ID
#:809
Case 2:09-cv-05899-AHM-E   Document 1   Filed 08/12/09   Page 21 of 40   Page ID #:21

# EXHIBIT B

EXHIBIT  8 - PAGE 130

## END USER LICENSE AGREEMENT FOR VBCONVERSIONS SOFTWARE.

**1. IMPORTANT-READ CAREFULLY:** This VBConversions End-User License Agreement ("EULA") is a legal agreement between you (either an individual person or a single legal entity, who will be referred to in this EULA as "You") and for the VBConversions software product that accompanies this EULA, including any associated media, printed materials and electronic documentation (the "Software Product"). The Software Product also includes any software updates, add-on components, web services and/or supplements that VBConversions may provide to You or make available to You after the date You obtain Your initial copy of the Software Product to the extent that such items are not accompanied by a separate license agreement or terms of use. By installing, copying, downloading, accessing or otherwise using the Software Product, You agree to be bound by the terms of this EULA. If You do not agree to the terms of this EULA, do not install, access or use the Software Product; instead, You should return it to Your place of purchase for a full refund.

This license shall be deemed to have been executed within the State of California, in the United States of America.  It shall be construed and enforced in accordance with and governed by the laws of the State of California.  The exclusive venue for resolution of any claim or dispute regarding this license shall be the County of Los Angeles.  In the event of a claim of copyright infringement, the proper venue is acknowledged to be the United States District Court for the State of California.

## SOFTWARE PRODUCT LICENSE

The Software Product is protected by intellectual property laws and treaties. The Software Product is licensed, not sold.

**1. GRANT OF LICENSE.** This Section of the EULA describes Your general rights to install and use the Software Product The license rights described in this Section are subject to all other terms and conditions of this EULA.

**General License Grant to Install and Use Software Product.** You may install and use one copy of the Software Product on a single computer, device, workstation, terminal, or other digital electronic or analog device ("Device"). A license for the Software Product may not be shared. This license may not be transferred to another user or company.

**Reservation of Rights.** All rights not expressly granted are reserved by VBConversions.

**2. DESCRIPTION OF OTHER RIGHTS AND LIMITATIONS.**

**Limitations on Reverse Engineering, Decompilation, and Disassembly.** You may not reverse engineer, decompile, or disassemble the Software Product, except and only to the extent that such activity is expressly permitted by applicable law notwithstanding this limitation.

**Trademarks.** This EULA does not grant You any rights in connection with any trademarks or service marks of VBConversions.

**No rental, leasing or conversion services.** You may not rent, lease, lend or provide conversion

**EXHIBIT 8 - PAGE 131**

services to third parties with the Software Product.

**Support Services.** VBConversions may provide You with support services related to the Software Product ("Support Services"). Any supplemental software code provided to You as part of the Support Services are considered part of the Software Product and subject to the terms and conditions of this EULA. You acknowledge and agree that VBConversions may use technical information You provide to VBConversions as part of the Support Services for its business purposes, including for product support and development. VBConversions will not utilize such technical information in a form that personally identifies You.

**Termination.** Without prejudice to any other rights, VBConversions may terminate this EULA if You fail to comply with the terms and conditions of this EULA. In such event, You must destroy all copies of the Software Product and all of its component parts.

## 3. UPGRADES.

**Standard Software Product.** If the Software Product is labeled as an upgrade, You must be properly licensed to use a product identified by VBConversions as being eligible for the upgrade in order to use the Software Product. A Software Product labeled as an upgrade replaces or supplements (and may disable) the product that formed the basis for Your eligibility for the upgrade. You may use the resulting upgraded product only in accordance with the terms of this EULA. If the Software Product is an upgrade of a component of a package of software programs that You licensed as a single product, the Software Product may be used and transferred only as part of that single product package and may not be separated for use on more than one Device.

## 4. INTELLECTUAL PROPERTY RIGHTS. All title and intellectual property rights in and to the Software Product (including but not limited to any images, photographs, animations, video, audio, music, text, and "applets" incorporated into the Software Product), the accompanying printed materials, and any copies of the Software Product are owned by VBConversions or its suppliers. All title and intellectual property rights in and to the content that is not contained in the Software Product, but may be accessed through use of the Software Product, is the property of the respective content owners and may be protected by applicable copyright or other intellectual property laws and treaties. This EULA grants You no rights to use such content. If this Software Product contains documentation that is provided only in electronic form, you may print one copy of such electronic documentation. You may not copy the printed materials accompanying the Software Product.

## 5. BACKUP COPY. After installation of one copy of the Software Product pursuant to this EULA, you may keep the original media on which the Software Product was provided by VBConversions solely for backup or archival purposes. If the original media is required to use the Software Product on the Device, you may make one copy of the Software Product solely for backup or archival purposes. Except as expressly provided in this EULA, you may not otherwise make copies of the Software Product or the printed materials accompanying the Software Product.

## 6. EXPORT RESTRICTIONS. You acknowledge that the Software Product is of U.S. origin. You agree to comply with all applicable international and national laws that apply to the Software

**EXHIBIT 8 - PAGE 132**

Product, including the U.S. Export Administration Regulations, as well as end-user, end-use and destination restrictions issued by U.S. and other governments

## 7. APPLICABLE LAW.

If you acquired this Software Product in the United States, this EULA is governed by the laws of the State of California. If this Software Product was acquired outside the United States, then local law may apply.

## 8. LIMITED WARRANTY

LIMITED WARRANTY FOR SOFTWARE PRODUCTS ACQUIRED IN THE US AND CANADA. VBConversions warrants that the SOFTWARE PRODUCT will perform substantially in accordance with the accompanying materials for a period of ninety (90) days from the date of receipt.

If an implied warranty or condition is created by your state/jurisdiction and federal or state/provincial law prohibits disclaimer of it, you also have an implied warranty or condition, BUT ONLY AS TO DEFECTS DISCOVERED DURING THE PERIOD OF THIS LIMITED WARRANTY (NINETY DAYS). AS TO ANY DEFECTS DISCOVERED AFTER THE NINETY (90) DAY PERIOD, THERE IS NO WARRANTY OR CONDITION OF ANY KIND. Some states/jurisdictions do not allow limitations on how long an implied warranty or condition lasts, so the above limitation may not apply to you.

Any supplements or updates to the SOFTWARE PRODUCT, including without limitation, any (if any) service packs or hot fixes provided to you after the expiration of the ninety (90) day Limited Warranty period are not covered by any warranty or condition, express, implied or statutory.

LIMITATION ON REMEDIES; NO CONSEQUENTIAL OR OTHER DAMAGES. Your exclusive remedy for any breach of this Limited Warranty is as set forth below. Except for any refund elected by VBConversions, YOU ARE NOT ENTITLED TO ANY DAMAGES, INCLUDING BUT NOT LIMITED TO CONSEQUENTIAL DAMAGES, if the Software Product does not meet VBConversions' Limited Warranty, and, to the maximum extent allowed by applicable law, even if any remedy fails of its essential purpose. The terms of Section 10 below ("Exclusion of Incidental, Consequential and Certain Other Damages") are also incorporated into this Limited Warranty. Some states/jurisdictions do not allow the exclusion or limitation of incidental or consequential damages, so the above limitation or exclusion may not apply to you. This Limited Warranty gives you specific legal rights. You may have others which vary from state/jurisdiction to state/jurisdiction.

YOUR EXCLUSIVE REMEDY. VBConversions' and its suppliers' entire liability and your exclusive remedy shall be, at VBConversions' option from time to time exercised subject to applicable law, (a) return of the price paid (if any) for the Software Product, or (b) repair or replacement of the Software Product, that does not meet this Limited Warranty and that is returned to VBConversions with a copy of your receipt. You will receive the remedy elected by VBConversions without charge, except that you are responsible for any expenses you may incur (e.g. cost of shipping the Software Product to VBConversions). This Limited Warranty is void if failure of the Software Product has resulted from accident, abuse, misapplication, abnormal use or

**EXHIBIT 8 - PAGE 133**

Case 2:13-cv-08306-PSG-JEM   Document 61   Filed 05/30/14   Page 142 of 163   Page ID
#:892
Case 2:09-cv-05899-AHM-E   Document 1   Filed 08/12/09   Page 25 of 40   Page ID #:25

a virus. Any replacement Software Product will be warranted for the remainder of the original
warranty period or thirty (30) days, whichever is longer. Outside the United States or Canada,
neither these remedies nor any product support services offered by VBConversions are available
without proof of purchase from an authorized international source

**9. DISCLAIMER OF WARRANTIES.** THE LIMITED WARRANTY THAT APPEARS
ABOVE IS THE ONLY EXPRESS WARRANTY MADE TO YOU AND IS PROVIDED IN
LIEU OF ANY OTHER EXPRESS WARRANTIES (IF ANY) CREATED BY ANY
DOCUMENTATION OR PACKAGING. EXCEPT FOR THE LIMITED WARRANTY AND
TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, VBCONVERSIONS
AND ITS SUPPLIERS PROVIDE THE SOFTWARE AND SUPPORT SERVICES (IF ANY)
*AS IS AND WITH ALL FAULTS*, AND HEREBY DISCLAIM ALL OTHER WARRANTIES
AND CONDITIONS, EITHER EXPRESS, IMPLIED OR STATUTORY, INCLUDING, BUT
NOT LIMITED TO, ANY (IF ANY) IMPLIED WARRANTIES, DUTIES OR CONDITIONS
OF MERCHANTABILITY, OF FITNESS FOR A PARTICULAR PURPOSE, OF ACCURACY
OR COMPLETENESS OR RESPONSES, OF RESULTS, OF WORKMANLIKE EFFORT, OF
LACK OF VIRUSES AND OF LACK OF NEGLIGENCE, ALL WITH REGARD TO THE
SOFTWARE, AND THE PROVISION OF OR FAILURE TO PROVIDE SUPPORT
SERVICES. ALSO, THERE IS NO WARRANTY OR CONDITION OF TITLE, QUIET
ENJOYMENT, QUIET POSSESSION, AND CORRESPONDENCE TO DESCRIPTION OR
NON-INFRINGEMENT WITH REGARD TO THE SOFTWARE.

**10. EXCLUSION OF INCIDENTAL, CONSEQUENTIAL AND CERTAIN OTHER
DAMAGES.** TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, IN NO
EVENT SHALL VBCONVERSIONS OR ITS SUPPLIERS BE LIABLE FOR ANY SPECIAL,
INCIDENTAL, INDIRECT, OR CONSEQUENTIAL DAMAGES WHATSOEVER
(INCLUDING, BUT NOT LIMITED TO, DAMAGES FOR LOSS OF PROFITS OR
CONFIDENTIAL OR OTHER INFORMATION, FOR BUSINESS INTERRUPTION, FOR
PERSONAL INJURY, FOR LOSS OF PRIVACY, FOR FAILURE TO MEET ANY DUTY
INCLUDING OF GOOD FAITH OR OF REASONABLE CARE, FOR NEGLIGENCE, AND
FOR ANY OTHER PECUNIARY OR OTHER LOSS WHATSOEVER) ARISING OUT OF
OR IN ANY WAY RELATED TO THE USE OF OR INABILITY TO USE THE SOFTWARE
PRODUCT, THE PROVISION OF OR FAILURE TO PROVIDE SUPPORT SERVICES, OR
OTHERWISE UNDER OR IN CONNECTION WITH ANY PROVISION OF THIS EULA,
EVEN IN THE EVENT OF THE FAULT, TORT (INCLUDING NEGLIGENCE), STRICT
LIABILITY, BREACH OF CONTRACT OR BREACH OF WARRANTY OF
VBCONVERSIONS OR ANY SUPPLIER, AND EVEN IF VBCONVERSIONS OR ANY
SUPPLIER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

**11. LIMITATION OF LIABILITY AND REMEDIES.** NOTWITHSTANDING ANY
DAMAGES THAT YOU MIGHT INCUR FOR ANY REASON WHATSOEVER
(INCLUDING, WITHOUT LIMITATION, ALL DAMAGES REFERENCED ABOVE AND
ALL DIRECT OR GENERAL DAMAGES), THE ENTIRE LIABILITY OF
VBCONVERSIONS AND ANY OF ITS SUPPLIERS UNDER ANY PROVISION OF THIS
EULA AND YOUR EXCLUSIVE REMEDY FOR ALL OF THE FOREGOING (EXCEPT
FOR ANY REMEDY OF REPAIR OR REPLACEMENT ELECTED BY VBCONVERSIONS

**EXHIBIT  8 - PAGE 134**

WITH RESPECT TO ANY BREACH OF THE LIMITED WARRANTY) SHAL BE LIMITED TO THE GREATER OF THE AMOUNT ACTUALLY PAID BY YOU FOR THE SOFTWARE OR U.S. $5.00. THE FOREGOING LIMITATIONS, EXCLUSIONS AND DISCLAIMERS (INCLUDING SECTIONS 6, 7, AND 8 ABOVE) SHALL APPLY TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, EVEN IF ANY REMEDY FAILS ITS ESSENTIAL PURPOSE.

**12. REGISTRATION / USAGE INFORMATION.** When you use this software, and also when you register this software, the following information about our software and your computer is recorded into the VBConversions and/or our 3rd party User Registration Tracking Company Database: Product Name, Version, Registration Key, Computer Name, Computers Internal IP address, Username logged onto Computer, Operating Systems Registered Owner, Operating Systems Registered Organization, Name, Organization Name, Email Address (as entered on the registration screen), total number of lines converted, and installation date. Additionally, your organizations public IP address, and hostname is recorded by VBConversions and/or the 3rd party Tracking database. The above information may also be posted to VBConversions and/or our 3rd party user registration database on a regular periodic basis in order to update our registered user usage records. After every project conversion, the project name, number of lines of original and converted code, CLR version number, number of lines with compiler errors, number of compiles, and conversion time may also be recorded by VBConversions and/or our 3rd party User Registration tracking company.

VBConversions assures the user, that the above information will be securely stored, and maintained with the utmost care by VBConversions and our 3rd party User Registration tracking company. By installing and/or registering and/or using this software, you agree that VBConversions or our 3rd party User Registration tracking company should not be held liable in any manner, if the security of this information is compromised in any manner. To the extent not prohibited by law, in no event will VBConversions or our 3rd party User Registration tracking company, and ours and its licensors be liable for any lost revenue, profit or data, or for special, indirect, consequential, incidental or punitive damages, however caused regardless of the theory of liability, arising if the security of this information is compromised in any manner, even if VBConversions and our 3rd party User Registration tracking company has been advised of the possibility of such damages. Only install this software, if you agree to have this information recorded by VBConversions to our 3rd party User Registration tracking company. By installing and/or registering and/or using this software, you agree that you grant VBConversions your full and unconditional permission to record this information itself and to our 3rd party User Registration tracking company.

**13. COPYRIGHT INFRINGEMENT:** You agree not to infringe on VBConversions copyright of this software. Copyright violation could be in the form of a) violating license counts, which you have purchased or b) using illegally generated registration keys to unlock the software, without purchasing a valid license(s). You agree to only use Regsitration keys generated online from our VBConversions website, or only use registration keys emailed to you by VBConversions or our third party order processing Company. You agree that any attempt to register this software, or unlock the software permanently, by using an illegal or fraudulent registration key makes this software copy an illegal and unauthorized copy, and violates VBConversions copyright of this

**EXHIBIT 8 - PAGE 135**

software.

**14. ENTIRE AGREEMENT.** This EULA (including any addendum or amendment to this EULA which is included with the Software Product) is the entire agreement between you and VBConversions relating to the Software Product and the support services (if any) and they supersede all prior or contemporaneous oral or written communications, proposals and representations with respect to the Software Product or any other subject matter covered by this EULA. To the extent the terms of any VBConversions policies or programs for support services conflict with the terms of this EULA, the terms of this EULA shall control.

**EXHIBIT  8 - PAGE 136**

# EXHIBIT C

**EXHIBIT 8 - PAGE 137**

Query — RIPE Database

Par— of 2

3/11/2009



# RIPE Database Search

you are here: home -> RIPE Database -> RIPE Database Search

About RIPE NCC | Contact | Search | Sitemap

**RIPE Database:**

- RIPE Database Info
- Update Database
- Advanced Search
- Simple Search
- Free Text Search
- Database Documentation
- Database Copyright
- RIPE Database Support

## Query the RIPE Database

Search for [217.8.202.90]                    [Search]    [Reset Form]

[Advanced Search Form]

Switch to the RIPE TEST Database

```
% This is the RIPE Whois query server #3.
% The objects are in RPSL format.
%
% Rights restricted by copyright.
% See http://www.ripe.net/db/copyright.html

% Note: This output has been filtered.
%       To receive output for a database update, use the "-B" flag.

% Information related to '217.8.202.80 - 217.8.202.95'

inetnum:      217.8.202.80 - 217.8.202.95
netname:      CH-EASYNET-HARCOURT
descr:        Harcourt Investment Consulting AG
descr:        8006 Zurich
country:      CH
admin-c:      SB5880-RIPE
tech-c:       SB5880-RIPE
status:       ASSIGNED PA  Definitions
mnt-by:       EASYNET-CH-MNT
```

... ... terminal.pl%3 query_string=&searchtext=217.8.202.90&submit.x=10&submit.y=9

EXHIBIT  8 - PAGE 138

Query - RIPE Database

Page 1 of 2

3/11/2009

```
source:          RIPE # Filtered

person:          Stefan Buechler
address:         Stampfenbachstrasse 48
address:         8006 Zurich
address:         CH
e-mail:          buechler@harcourt.ch
phone:           +41 1 365 10 19
fax-no:          +41 1 365 10 01
mnt-by:          EASYNET-CH-MNT
nic-hdl:         SB5880-RIPE
source:          RIPE # Filtered

% Information related to '217.8.192.0/19AS4589'

route:           217.8.192.0/19
descr:           Easynet AG
origin:          AS4589
mnt-by:          EASYNET-CH-MNT
source:          RIPE # Filtered
```

Legend
**Bold: Object type**
Underlined: Primary key
Hyperlink: Searchable attribute

3 objects found for '217.8.202.90'

Further Information
RIPE Whois Documentation
RIPE DB Free-text Search (Glimpse)

Other RIRs Database Search: AfriNIC | APNIC | ARIN | LACNIC

About RIPE NCC | Site Map | LIR Portal | About RIPE | Contact | © RIPE NCC. All rights reserved.

query string=&searchtext=217.8.202.90&submit.x=10&submit.y=9

**EXHIBIT 8 - PAGE 139**

Case 2:13-cv-08306-PSG-JEM   Document 61   Filed 05/30/14   Page 148 of 163   Page ID
#:899
Case 2:09-cv-05899-AHM-E   Document 1   Filed 08/12/09   Page 31 of 40   Page ID #:31

RIPE Database Search

you are here: home -> RIPE Database -> RIPE Database Search

RIPE Database:

- RIPE Database Info
- Update Database
- Advanced Search
- Simple Search
- Free Text Search
- Database Documentation
- Database Copyright
- RIPE Database Support

Click here for the RIPE NCC E-Learning Centre

# Query the RIPE Database

Search for 217.8.202.90          [ Search ]   [ Reset Form ]

[ Advanced Search Form ]

Switch to the RIPE TEST Database

```
% This is the RIPE Whois query server #2.
% The objects are in RPSL format.
%
% Rights restricted by copyright.
% See http://www.ripe.net/db/copyright.html

% Note: This output has been filtered.
%       To receive output for a database update, use the "-B" flag

% Information related to '217.8.202.80 - 217.8.202.95'

inetnum:        217.8.202.80 - 217.8.202.95
netname:        CH-EASYNET-HARCOURT
descr:          Harcourt Investment Consulting AG
descr:          8006 Zurich
country:        CH
admin-c:        SB5880-RIPE
tech-c:         SB5880-RIPE
status:         ASSIGNED PA
mnt-by:         EASYNET-CH-MNT
source:         RIPE # Filtered

person:         Stefan Buechler
address:        Stampfenbachstrasse 48
address:        8006 Zurich
address:        CH
e-mail:         buechler@harcourt.ch
phone:          +41 1 365 10 19
fax-no:         +41 1 365 10 01
mnt-by:         EASYNET-CH-MNT
nic-hdl:        SB5880-RIPE
source:         RIPE # Filtered

% Information related to '217.8.192.0/19AS4589'

route:          217.8.192.0/19
descr:          Easynet AG
origin:         AS4589
mnt-by:         EASYNET-CH-MNT
source:         RIPE # Filtered
```

Legend
Bold: Object type
Underlined: Primary key
Hyperlink: Searchable attribute

**3 objects found for '217.8.202.90'**

Further Information

RIPE Whois Documentation

**EXHIBIT  8 - PAGE 140**

About RIPE NCC | Site Map | LIR Portal | About RIPE | Contact | □ RIPE NCC. All rights reserved.

EXHIBIT  8 - PAGE 141

## VB Conversion

## Proof of illegal registration

**Computer Name**          NOTE-016XP

---------------------------------------------------------------

Server date              2008-05-08 10:15:29 EDT
Installed (user date)        08/05/2008 15:53
Program                  VB.Net to C# Converter
Program Version              2.17
Key                      TYWAW-RKB2W-AUPLH-DWX6R-N1QQF
Public IP                217.8.202.90
Host                     202.90.static-adsl.customer.ch.easynet.net
Private IP                172.21.13.58
Username                 koechlin
Domain                   HARCOURT
Owner                    IT-Infrastructure
Organization             Harcourt Investment Consulting AG

---------------------------------------------------------------

## Harcourt Investments

**EXHIBIT  8 - PAGE 142**

## VB Conversion

## Proof of illegal usage

| Computer Name | NOTE-016XP |
|---|---|

------------------------------------------------

| | |
|---|---|
| Server date | 2008-05-08 10:17:13 EDT |
| Installed (user date) | 08/05/2008 15:53 |
| Program | VB.Net to C# Converter |
| Program Version | 2.17 |
| Key | TYWAW-RKB2W-AUPLH-DWX6R-N1QQF |
| Public IP | 217.8.202.90 |
| Host | 202.90.static-adsl.customer.ch.easynet.net |
| Private IP | 172.21.13.58 |
| Username | koechlin |
| Domain | HARCOURT |
| Owner | IT-Infrastructure |
| Organization | Harcourt Investment Consulting AG |

------------------------------------------------

## Harcourt Investments

**EXHIBIT  8 - PAGE 143**

## VB Conversion

## Proof of illegal registration

**Computer Name**          PC-099XP

---------------------------------------------------------

| | |
|---|---|
| **Server date** | 2008-05-08 10:24:54 EDT |
| **Installed (user date)** | 08/05/2008 16:24 |
| **Program** | VB.Net to C# Converter |
| **Program Version** | 2.17 |
| **Key** | TYWAW-RKB2W-AUPLH-DWX6R-N1QQF |
| **Public IP** | 217.8.202.90 |
| **Host** | 202.90.static-adsl.customer.ch.easynet.net |
| **Private IP** | 172.21.13.48 |
| **Username** | koechlin |
| **Domain** | HARCOURT |
| **Owner** | IT-Infrastructure |
| **Organization** | Harcourt Investment Consulting AG |

---------------------------------------------------------

## Harcourt Investments

**EXHIBIT  8 - PAGE 144**

## VB Conversion

## Proof of illegal usage

Computer Name              PC-099XP

-------------------------------------------------

| | |
|---|---|
| Server date | 2008-05-08 10:36:40 EDT |
| Installed (user date) | 08/05/2008 16:24 |
| Program | VB.Net to C# Converter |
| Program Version | 2.17 |
| Key | TYWAW-RKB2W-AUPLH-DWX6R-N1QQF |
| Public IP | 217.8.202.90 |
| Host | 202.90.static-adsl.customer.ch.easynet.net |
| Private IP | 172.21.13.48 |
| Username | koechlin |
| Domain | HARCOURT |
| Owner | IT-Infrastructure |
| Organization | Harcourt Investment Consulting AG |

**EXHIBIT  8 - PAGE 145**

**Harcourt Investments**

EXHIBIT  8 - PAGE 146

## VB Conversion

## Proof of illegal Usage

Computer Name                    PC-117XP

-------------------------------------------------

Server date                      2008-05-08 12:57:04 EDT
Installed (user date)                 08/05/2008 16:24
Program                          VB.Net to C# Converter
Program Version                       2.17
Key                              TYWAW-RKB2W-AUPLH-DWX6R-N1QQF
Public IP                        217.8.202.90
Host                             202.90.static-adsl.customer.ch.easynet.net
Private IP                       172.21.13.48
Username                         koechlin
Domain                           HARCOURT
Owner                            IT-Infrastructure
Organization                     Harcourt Investment Consulting AG

-------------------------------------------------

## Harcourt Investments

**EXHIBIT 8 - PAGE 147**

| | |
|---|---|
| **Author** | David Crook |

| | |
|---|---|
| **Company** | Harcourt Investments |
| **Website** | http://www.harcourt.ch |
| **Address on web** | Harcourt Alternative Investments (US) LLC |
| | 712 Fifth Avenue, 28th Floor |
| | New York, NY 10019 |
| | United States of America |
| | P: +1  212 371 4340 |
| | F: +1  212 371 4342 |
| | www.harcourtalternative.com |
| | |
| **Contact person** | |
| **Whois points to** | RIPE- Harcourt Investment Consulting AG |
| **Address on Whois** | netname:      CH-EASYNET-HARCOURT |
| | descr:      Harcourt Investment Consulting AG |
| | descr:      8006 Zurich |
| | country:      CH |
| | |
| **Host points to** | |
| **Key** | |
| **Latest usage** | 2008-05-08 10:36:40.0 |
| **External_IP** | 217.8.202.90 |
| **Reg_usage_notes** | |
| **Notes** | |

**EXHIBIT  8 - PAGE 148**

Case 2:13-cv-08306-PSG-JEM   Document 61   Filed 05/30/14   Page 157 of 163   Page ID
Case 2:09-cv-05899-AHM-E   Document 1   Filed 08/12/09   Page 40 of 40   Page ID #:40
#:906

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge A. Howard Matz and the assigned discovery Magistrate Judge is Charles Eick.

The case number on all documents filed with the Court should read as follows:

## CV09- 5899 AHM (Ex)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[X] **Western Division**
312 N. Spring St., Rm. G-8
Los Angeles, CA 90012

[ ] **Southern Division**
411 West Fourth St., Rm. 1-053
Santa Ana, CA 92701-4516

[ ] **Eastern Division**
3470 Twelfth St., Rm. 134
Riverside, CA 92501

Failure to file at the proper location will result in your documents being returned to you.

---

CV-18 (03/06)        NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

**EXHIBIT 8 - PAGE 149**

# EXHIBIT "9"

EXHIBIT  9 - PAGE 150

 Have no legal fear

For Lawyers    Sign in    Register

Research Legal Advice    Ask a Lawyer    Find a Lawyer    Review Your Lawyer

Lawyer's name -OR- Practice area                    Philadelphia, PA    

Home > Copyright Infringement Attorneys > California > Los Angeles > Donald Melvyn Gindy

# Donald Melvyn Gindy

 **7.6**

Very Good

| | |
|---|---|
| Experience | ⚫⚫⚫⚫○ |
| Industry Recognition | ⚫⚫○○○ |
| Professional Conduct | ⚫⚫⚫⚫⚫ |

What is the Avvo Rating?

Lawyer's website    Send to a friend

**Client Reviews**
Not yet reviewed
Current or former
client? Write a review

**Contributor Level 1**
View contributions

SPONSORED LISTINGS

 **Stephen Gregory Stanton**
"20 + Years' Experience – From Solo Inventors To Mid-Size Companies. Call 610-816-6114"

Contact this lawyer:  Email  Website  Profile

**RELATED LAWYER SEARCHES**

- California Contracts lawyers
- California Copyright lawyers
- California Internet lawyers
- California Trademark lawyers
- Los Angeles Contracts lawyers
- Los Angeles Copyright lawyers
- Los Angeles County Contracts lawyers
- Los Angeles County Copyright lawyers
- Los Angeles County Internet lawyers
- Los Angeles County Trademark lawyers
- Los Angeles Internet lawyers
- Los Angeles Trademark lawyers

## OVERVIEW

PRACTICE AREAS



80% Copyright Infringement
13 years, 400 cases

10% Contracts / Agreements
50 cases

5% Trademark Infringement
16 years, 25 cases

5% Internet
30 cases

FEES AND
PAYMENT TYPES

**Payment types**
Check, Credit Card

CONTACT
INFORMATION

**Lewis Brisbois Bisgaard & Smith**
221 North Figueroa Street
Suite 1200
Los Angeles, CA 90012
Office: 213-580-7940
Office: 310-772-0585
Fax: 310-772-0018
View map | Edit this address

Visit lawyer's website

## REFERENCES

CLIENT REVIEWS

How would you rate this lawyer?

**EXHIBIT  9 – PAGE 151**

If you're a current or former client, share your thoughts (anonymously, if you prefer). Would you recommend this lawyer to other clients?

Review this lawyer

PEER
ENDORSEMENTS

**Endorse a fellow lawyer, get more visits to your profile**
In addition to providing a simple way to express your gratitude to fellow lawyers, any time you add an endorsement to a peer's profile, a link to your profile will appear on it.

Endorse this lawyer

## RÉSUMÉ

### LICENSE

44 years since Donald Melvyn Gindy was first licensed to practice law.

| State | License status | Year acquired | Last updated by Avvo |
|-------|----------------|---------------|----------------------|
| California | Active | 1970 | 03/17/2014 |

### PROFESSIONAL MISCONDUCT

✔ We have not found any instances of professional misconduct for this lawyer.

### EDUCATION

| School | Major | Degree | Graduated |
|--------|-------|--------|-----------|
| University of San Diego School of Law | Law | JD - Juris Doctor | 1969 |
| University of Califonia, Berkeley | | BA - Bachelor of Arts | 1966 |

### ASSOCIATIONS

| Position | Association Name | Duration |
|----------|------------------|----------|
| | Copyright Society of the USA | 2005–present |
| Member | American Intellectual Property Law Association | |

See all 5 association entries ⌄

**EXHIBIT 9 - PAGE 152**

**PORTFOLIO**

PUBLICATIONS

| Article | Publication | Date |
| --- | --- | --- |
| Federal Law Trumps Domain Dispute-Resolution Policy | Los Angeles Daily Journal | 2002 |
| Alteration Issue Trademark Owners Often Can Refute the First-Sale Doctrine | Los Angeles Daily Journal | 2002 |

See all 5 publications ⌄

 Avvo Have no legal fear

**Explore Avvo**
Ask a Lawyer
Find a Lawyer
Free Legal Advice
Review a Lawyer

**For Lawyers**
Lawyer Advertising
Claim Your Profile
For Law Firms
Marketing Management Software
Lawyernomics Blog

**Company Info**
About Us
Support
Press Room
Partner With Us
Careers
Avvo Blog
NakedLaw Blog

©2014 Avvo, Inc. All Rights Reserved    Terms of Use | Privacy Policy | Community Guidelines    Follow us on

EXHIBIT  9 - PAGE 153



People   Law Firms & Organizations   Groups & Topics   Jobs

Find people by name, practice area, geography, etc.

Advanced search

**Search**

Get Connected | Communities | Search Tools | Professional Development | Market Your Firm

Sign In/Register

Home > Lawyer Profile

**Lawyers & Law Firms**

Home

Find Lawyers & Law Firms

Browse Law Firms

Browse Lawyers

Top 10 Lists

## Donald M. Gindy - Lawyer Profile

Donald M. Gindy
*Member*

**Donald M. Gindy, PLC**
1880 Century Park E., Ste. 200
Los Angeles, California
(Los Angeles Co.)

Update this Profile

- New Search
- E-mail This Page
- Printer Friendly Version

**Profile Visibility** ⓘ
**#506** in weekly profile views out of 29,634 lawyers in Los Angeles, California
**#21,875** in weekly profile views out of 1,515,653 total lawyers Overall

**⁰Experience & Credentials**

| | |
|---|---|
| **Practice Areas** | Trademarks; Copyright; Internet Law; Civil Litigation; Personal Injury |
| **University** | University of California, B.A. |
| **Law School** | University of San Diego, J.D. |
| **Admitted** | 1970 |
| **ISLN** | 907084394 |

**Complete a Client Review**

Have you recently worked with this lawyer? Share your experience as a Client of this lawyer and complete a Client Review to help others make an informed choice when hiring legal counsel.

Learn more→

Review as a Client

**Professional Networking for Legal Professionals Only**

Quickly and easily expand your professional network -- join the premier global network for legal professionals only. It's powered by the Martindale-Hubbell database – over 1,000,000 lawyers strong.

Learn more→

Join Now

**Compare this Lawyer**
Compare this lawyer to other lawyers in your Favorites.

Compare Lawyers

**Add lawyer to Favorites**

As a registered user of *martindale.com* Connected, you can add lawyers to your list of Favorites. You can securely add comments and compare the lawyers in your Favorites.

Learn More→

Add to Favorites

| **Featured Services** | **About Us** | **LexisNexis® Digital Network** | **Follow Us** |
|---|---|---|---|
| Law Firm Marketing Solutions | About Martindale-Hubbell | Lawyers.com™ | |
| Law Firm Websites | Advertising opportunities | attorneys.com™ | |

**EXHIBIT 9 - PAGE 154**

| Profile Services | martindale.com blog | LexisNexis Store |
| Martindale-Hubbell Ratings | FAQs & tutorials | Martindale-Hubbell UK |
| Browse lawyers | Testimonials | Martindale-Hubbell Canada |
| Browse law firms | Follow us | Martindale-Hubbell global sites |
| | Contact us | |
| | Site map | |

Terms & Conditions | Privacy | Copyright © 2014 Internet Brands, Inc. All rights reserved.

**EXHIBIT 9 - PAGE 155**